**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| 1030 15th Street NW, B255 | ) | |
| Washington, DC 20005, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 25-1251 |
| | ) | |
| U.S. DEPARTMENT OF GOVERNMENT | ) | |
| EFFICIENCY, | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| U.S. DOGE SERVICE, | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| U.S. DOGE SERVICE TEMPORARY | ) | |
| ORGANIZATION, | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| ELON MUSK, in his official capacity as head | ) | |
| of the Department of Government Efficiency | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| STEVEN DAVIS, in his official capacity as | ) | |
| head of the Department of Government | ) | |
| Efficiency | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| AMY GLEASON, in her official capacity as | ) | |
| Acting Administrator of the U.S. DOGE | ) | |
| Service, | ) | |
| 736 Jackson Place NW | ) | |
| Washington, DC 20503 | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacity as | ) | |
| Acting Archivist of the United States, | ) | |
| 700 Pennsylvania Ave. NW | ) | |

Washington, DC 20408,                          )
                                               )
and                                            )
                                               )
NATIONAL ARCHIVES AND RECORDS                  )
ADMINISTRATION,                                )
700 Pennsylvania Ave. NW                       )
Washington, DC 20408,                          )
                                               )
                                  *Defendants.* )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Since January 20, 2025, the Elon Musk-led Department of Government Efficiency has operated at breakneck speed to overhaul and diminish the Executive Branch of the federal government, all while operating largely in secrecy.

2.      The new agency, commonly referred to as DOGE, has spread its influence and embedded staff across the executive branch, dismantling entire agencies, canceling previously approved grants and contracts, overruling instructions from Senate-confirmed Cabinet members, directing the termination of tens of thousands of federal employees, and more.

3.      Despite, or perhaps because of, DOGE's unprecedented scope and scale, the agency has obfuscated even the most basic information about its internal operations, up to and including the identity of the person in charge of its efforts.

4.      This obfuscation features prominently in DOGE's repeated, systemic failures to preserve and produce records pursuant to the Federal Records Act ("FRA") and Freedom of Information Act ("FOIA").  DOGE uses nongovernmental, ephemeral messaging and document systems like Signal and Google Docs, which lack the safeguards necessary to ensure that public records are not being wrongfully destroyed.

5.      This action is necessary to redress Defendants' failures to meet their obligations under the FRA and FOIA. Specifically, DOGE's use of Signal and Google Docs to conduct official government business violates its record-keeping obligations because DOGE has not established mechanisms that ensure federal records created on these platforms are fully preserved on government recordkeeping systems. Signal is frequently used for its ephemeral messaging

capabilities, and Google Docs automatically deletes chats conducted through its internal messaging system and may not preserve all circulated drafts of a document.

6.     Plaintiff American Oversight brings this action under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., to prevent the unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover federal records created through unauthorized use of Signal and Google Docs, and under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA in connection with FOIA requests for key records regarding Defendants' activities.

## JURISDICTION AND VENUE

7.     This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701, et seq., the FRA, 44 U.S.C. §§ 3301, et seq., FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.     Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and FOIA requests, American Oversight uses the information it gathers, and its

analysis of that information, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases and other media.

10.    In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to the Defendants the Department of Government Efficiency, U.S. DOGE Service, and U.S. DOGE Temporary Service Organization (collectively, "DOGE Defendants" or "DOGE"), and will continue to seek records from the DOGE Defendants in the future.[1]

11.    In the regular course of its work and in furtherance of its core mission and function, American Oversight has sent more than two dozen FOIA requests to DOGE. In the regular course of its work and in furtherance of its core mission and function, American Oversight intends to continue to send FOIA requests to DOGE and make available to the public any records it receives in response.

12.    Defendant U.S. Department of Government Efficiency is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1). *See Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

13.    Defendant U.S. DOGE Service ("USDS") is an establishment in the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal

---

[1] For purposes of this suit, American Oversight uses the acronym "DOGE" to refer collectively to Defendants Department of Government Efficiency, U.S. DOGE Service, and U.S. DOGE Service Temporary Organization because it is the acronym used publicly by Elon Musk, President Trump, and other White House officials when referring to actions taken by USDS and/or agency heads operating on directives from Musk and other DOGE officials.

government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1). *See id.*

14.     Defendant U.S. DOGE Service Temporary Organization is an establishment in the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1). *See id.*

15.     Defendant Elon Musk is one of the functional heads of DOGE, and is sued in his official capacity.

16.     In that capacity, he is the agency head of the U.S. Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization, and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

17.     Defendant Steven ("Steve") Davis is one of the functional heads of DOGE, and is sued in his official capacity.

18.     In that capacity, he is the agency head of the U.S. Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization, and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

19.     Defendant Amy Gleason is the Acting Administrator of USDS, and is sued in her official capacity.

20.     In that capacity, she is the agency head of the USDS and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

21.    Defendant Marco Rubio is the Acting Archivist of the United States, and is sued in his official capacity.  As Acting Archivist of the United States, Defendant Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

22.    Defendant National Archives and Records Administration ("NARA") is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and the APA, 5 U.S.C. §§ 551(1), 552(f)(1), and is headquartered in Washington, D.C.

23.    As further demonstrated below, because Defendants Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization each have duties and authority that go beyond simply advising the President, they are all subject to FOIA and the FRA.

24.    Upon information and belief, Defendant Department of Government Efficiency has possession, custody, and control of records responsive to American Oversight's FOIA requests.

25.    Upon information and belief, Defendant USDS has possession, custody, and control of records responsive to American Oversight's requests.

26.    Upon information and belief, Defendant U.S. DOGE Service Temporary Organization has possession, custody, and control of records responsive to American Oversight's requests.

## LEGAL FRAMEWORK

### *Federal Records Act*

27.    The FRA governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. § 3301, et seq; *see also* 44 U.S.C. Chs., 21, 29, and 31..

28.    The FRA defines "records" to include:

all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions,

procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

29.     The FRA further specifies that "the term 'recorded information' includes all traditional forms of records, regardless of physical form or characteristics, including information created, manipulated, communicated, or stored in digital or electronic form." *Id.* § 3301(a)(2).

30.     The FRA provides that the Archivist's determination about whether recorded information is a federal record is "binding on all Federal agencies," *id.* § 3301(b), and NARA's regulations provide that: "[w]orking files, such as preliminary drafts and rough notes, and other similar materials, are records that must be maintained to ensure adequate and proper documentation if":

(1) They were circulated or made available to employees, other than the creator, for official purposes such as approval, comment, action, recommendation, follow-up, or to communicate with agency staff about agency business; and
(2) They contain unique information, such as substantive annotations or comments that adds to a proper understanding of the agency's formulation and execution of basic policies, decisions, actions, or responsibilities.

36 C.F.R. § 1222.12(c).

31.     As applied to the operations of DOGE, the FRA imposes duties on the heads of the agency and the Archivist of the United States.

32.     To comply with the statute, the agency head "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

33.    An agency head is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

34.    Under the FRA, "[a]n officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee (1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." *Id.* § 2911(a).

35.    When records are handled in a manner that contravenes the FRA or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency . . . ." 44 U.S.C. § 3106(a).

36.    The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency . . . ." *Id.*

37.    If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time after being notified of any such unlawful action, or is participating in, or believed to be participating in any such unlawful action," the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b).

38.    The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to the discretion of the agency head nor the Archivist. *See Armstrong v. Bush*, 924 F.2d 282, 295–96 (D.C. Cir. 1991).

39.    Where both the agency head and the Archivist have "failed to initiate remedial action in a timely manner, private litigants may sue under the APA to require them to do so." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

40.    Thus, "the APA authorizes judicial review of a claim—properly pleaded, of course—that the [agency's] recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA." *Id.* at 111.

41.    "The APA also authorizes the Court to entertain a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *Id.*

### *Freedom of Information Act*

42.    Under FOIA, any document is an agency record subject to FOIA if it was "create[d] or obtaine[d]" by the agency and the agency is "in control of the requested materials at the time the FOIA request is made." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-45 (1989).

43.    FOIA requires all federal agencies to make agency records available to the public unless one of its specified exemptions applies. *See id*. at 150-51; 5 U.S.C. § 552(b).

44.    Within 20 working days of receiving a FOIA request, agencies are required to tell the requestor the scope of records that will be produced or withheld, and the reasons for such withholdings.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

45.    Agencies are further required to make such records "promptly available to any person" who reasonably describes the records they seek.  *Id.* § 552(a)(3)(A).

46.    An agency may not "destroy[] a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009).

### *Presidential Records Act*

47.    Protections under the Presidential Records Act ("PRA") are limited to documents "created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2).

48.    The PRA provides the President broad discretion over the preservation or disposal of presidential records.

49.    In comparing the FRA with the PRA, the D.C. Circuit emphasized that "[w]hereas federal records are subject to a strict document management regime supervised by the Archivist, . . . the PRA 'accords the President virtually complete control over his records during his term of office.' . . . . Neither the Archivist nor an agency head can initiate any action through the Attorney General to effect recovery or ensure preservation of presidential records." *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1290–91 (D.C. Cir. 1993) (internal quotation and citation omitted).

50.     Although the Archivist may "request congressional advice regarding the President's intention to dispose of presidential records . . . , neither the Archivist nor the Congress has the authority to veto the President's disposal decision." *Id.* at 1291 (internal quotation omitted).

## STATEMENT OF FACTS

### *DOGE's Formation*

51.     In November 2024, a week after the presidential election, then President-elect Donald Trump announced that Elon Musk would be named the head of the newly created Department of Government Efficiency, which Trump referred to as "DOGE."[2]

52.     The acronym appears to reference the Musk-backed cryptocurrency DOGE coin.[3]

53.     DOGE's structure and function were initially unclear, including whether it would be housed within the federal government or as an external entity.[4]

54.     During the presidential transition period, the DOGE team operated out of the Washington, D.C. office of Tesla, Inc.[5]

55.     Musk is Tesla's Chief Executive Officer and largest shareholder.[6]

---

[2] Elena Moore *et al.*, *Trump Taps Musk to Lead a 'Department of Government Efficiency' with Ramaswamy*, NPR (Nov. 12, 2024, 9:03 PM), https://www.npr.org/2024/11/12/g-s1-33972/trump-elon-musk-vivek-ramaswamy-doge-government-efficiency-deep-state.
[3] *Id.*
[4] Moore *et al.*, *supra* note 1.
[5] Eric Katz, *DOGE Agency Deployments Raise Ethical and Influence Concerns*, Gov't Exec., (Jan. 15, 2025), https://www.govexec.com/management/2025/01/doge-agency-deployments-raise-ethical-and-influence-concerns/402204/.
[6] Theo Leggett, *Tesla's Challenges Run Deeper Than 'Toxic' Controversy Around Elon Musk*, BBC (Mar. 19, 2025), https://www.bbc.com/news/articles/cz61vwjel2zo.

56.     During the presidential transition period, Musk and DOGE representatives communicated with federal agencies concerning DOGE's plans for those agencies in the new administration.[7]

57.     These communications reportedly happened via Signal in at least some instances.[8]

58.     Upon taking office, Trump issued an executive order "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), available at https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

59.     This first DOGE executive order renames the U.S. Digital Service as the U.S. DOGE Service and creates a temporary organization within it called the "U.S. DOGE Service Temporary Organization," "headed by the USDS Administrator" and "dedicated to advancing the President's 18-month DOGE agenda." *Id*. Under the executive order, the U.S. DOGE Service Temporary Organization sunsets on July 4, 2026. *See id*.

60.     The first DOGE executive order further requires each "Agency Head" to establish a DOGE Team within each agency of the executive branch. *See id*.[9]

61.     Whereas the legacy U.S. Digital Service was a component within the Office of Management and Budget ("OMB")—a standalone entity within the Executive Office of the

---

[7] Faiz Siddiqui *et al*., *DOGE is Dispatching Agents Across U.S. Government*, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-doge-federal-agencies/.

[8] *See* Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times, Jan. 12, 2025 (updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html.

[9] "Agency Head" is defined as "the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director." *Id.* § 2(b).

President ("EOP") that is subject to the FRA and FOIA—the first executive order moved the U.S. DOGE Service out of OMB to make it a separate entity within EOP. *See id.*

62.    Trump issued a second DOGE executive order on February 11, 2025, that directs Agency Heads to develop "a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas," and requires that new career appointment hiring decisions "be made in consultation with the agency's DOGE Team Lead." *See Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, Exec. Order No. 14,210 at § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-02-14/pdf/2025-02762.pdf ("Second DOGE EO").

63.    As U.S. District Judge John D. Bates in this District recently noted, based on Supreme Court precedent, the first two DOGE executive orders, sworn statements by Agency officials, and the DOGE defendants in that case, "USDS appears to do much more than advise and assist the President," and its actions as an entity reflect those of an "agency" as defined under the FOIA, the Privacy Act, the Administrative Procedures Act, and the Economy Act. *AFL-CIO v. Dep't of Lab.*, No. 25-cv-339 (JDB), 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025).[10]

64.    Trump's third DOGE-related executive order, issued February 26, 2025, provides further evidence of DOGE's agency status. *See Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Exec. Order No. 14,222, 90 Fed. Reg. 11095 (Feb. 26, 2025) (available at https://www.govinfo.gov/content/pkg/FR-2025-03-03/pdf/2025-

---

[10] Noting that USDS's "strong claim" to agency status under statutory definitions was contradicted by its attorneys' insistence that it is *not* an agency under FOIA, the Privacy Act or the APA, but *is* an agency under the Economy Act, Judge Bates observed that "USDS becomes, in defendants' view, a Goldilocks entity: not an agency when it is burdensome but an agency when it is convenient." *Id.*

03527.pdf).  It requires each Agency Head to work with their embedded DOGE Team Leads to: "build a centralized technological system" with the capability to "pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification"; review existing contracts and terminate or modify them "to promote efficiency and advance the policies of [the] Administration"; provide monthly reports to the USDS Administrator justifying "non-essential travel" expenditures; and freeze all credit cards held by agency employees for 30 days. It also requires each DOGE Team Lead to report monthly to the USDS Administrator on "contracting activities," including "all payment justifications." *Id.*

### *Leadership of DOGE*

65.    On information and belief, the Administration has purposefully obscured the leadership structure of DOGE.

66.    As described more fully below, there are at least three individuals who may be the functional head of DOGE or share responsibilities for co-leading DOGE:  Elon Musk, who has been the public face of DOGE since its announcement in November 2024; Amy Gleason, who the Administration has named as the Acting Administrator of the U.S. DOGE Service; and Steve Davis, a longtime aide to Musk and the person reportedly running DOGE's day-to-day operations.

67.    Elon Musk was named as head of DOGE at its inception prior to Trump's inauguration.

68.    Musk directed DOGE's work upon Trump's inauguration.

69.    On information and belief, Musk continues to direct at least some of DOGE's work and is responsible for overseeing the President's "DOGE Agenda."

70.    Trump, White House officials, and Musk himself have repeatedly and publicly emphasized Musk's control over DOGE.

13

71.    On February 5, 2025, White House Press Secretary Karoline Leavitt stated that Trump "was elected with a mandate from the American people to make this government more efficient.  He campaigned across this country with Elon Musk vowing that Elon was going to head up the Department of Government Efficiency."[11]

72.    In the same February 5 press conference, Leavitt, when asked about Musk's potential conflicts of interest, stated that "if Elon Musk comes across a conflict of interest with the contracts and the funding that DOGE is overseeing, then Elon will excuse himself from those contracts."[12]

73.    The White House told U.S. District Judge Tanya S. Chutkan on February 17, 2025, that Musk is neither the DOGE Administrator nor a DOGE employee and "has no actual or formal authority to make government decisions himself—including personnel decisions at individual agencies."[13]

74.    However, that statement is contradicted by Musk's public statements and other evidence, including that Musk directed mass "What did you do last week?" emails to federal employees requiring them to respond or face termination.[14]

75.    The White House's representation on February 17 is also contradicted by Trump's own public statements.

---

[11] White House, *Press Secretary Karoline Leavitt Briefs Members of the Media*, YouTube (Feb. 5, 2025), https://www.youtube.com/live/0QJrwxIZGW8?t=1450s [24:10 – 24:21].
[12] *Id.*
[13] Notice by Elon Musk *et al*. at 1, and Decl. of Joshua Fisher, *State of New Mexico et al. v. Elon Musk et al*., D.D.C. Case No. 1:25-cv-00429-TSC, Feb. 17, 2025, ECF 24.
[14] Andrea Hsu, *A Pattern Emerges in Elon Musk's Federal Shakeup: 'Break First, Ask Questions Later'*, NPR (Feb. 26, 2025), https://www.npr.org/2025/02/26/nx-s1-5308659/federal-employees-musk-trump-chaos.

76.     Just three days after the White House's representations to Judge Chutkan, Trump told an audience of investors and company executives in Miami, "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge."[15]

77.     President Trump and Press Secretary Leavitt have repeatedly talked about Musk as the functional leader of DOGE.

78.     On February 22, 2025, Trump posted on the site Truth Social, "ELON IS DOING A GREAT JOB, BUT I WOULD LIKE TO SEE HIM GET MORE AGGRESSIVE."[16]

79.     Musk responded on X (formerly Twitter) by posting a screenshot of Trump's message and adding, "Will do, Mr. President!"[17]

80.     On February 25, 2025, Leavitt reiterated Trump's desire for Musk to be "more aggressive," explaining that this was "because DOGE thus far has proven incredibly successful in making our government more efficient."[18]

81.     In the same February 25 briefing, when asked to identify the USDS Administrator, Leavitt stated that "the President tasked Elon Musk to oversee the DOGE effort."[19]

---

[15] Andrea Shalal and Nandita Bose, *Trump Appears to Contradict White House, Says Elon Musk in Charge of DOGE*, REUTERS (Feb. 20, 2025 12:27 PM), https://www.reuters.com/world/us/trump-appears-contradict-white-house-says-elon-musk-charge-doge-2025-02-20/.

[16] Rachel Wolf, *Trump Says Elon Musk Should Be 'More Aggressive' on DOGE Cuts, Musk Responds*, FOX BUSINESS (Feb. 22, 2025 11:32 AM), https://www.foxbusiness.com/politics/trump-says-elon-musk-should-more-aggressive-doge-cuts.

[17] *Id.*; *see also* Elon Musk (@elonmusk), X (formerly Twitter) (Feb. 22, 2025 11:08 AM), https://x.com/elonmusk/status/1893332118752706661.

[18] White House, *Press Secretary Karoline Leavitt Briefs Members of the Media*, YouTube (Feb. 25, 2025), https://www.youtube.com/live/Vl-_9pOiAl0?feature=shared&t=1000 [16:40-16:45].

[19] *Id.*

82.    On February 26, 2025, Musk attended and spoke at length at the first Cabinet meeting of the new administration.[20]

83.    In explaining Musk's attendance at the Cabinet meeting, Leavitt stated that "Elon is working with the Cabinet secretaries and their staff every single day to identify waste and fraud and abuse at these respective agencies. All of the Cabinet secretaries take the advice and direction of DOGE."[21]

84.    On March 4, 2025, President Trump in an address to Congress confirmed that Musk leads DOGE, stating ". . . I have created the brand new Department of Government Efficiency . . . [w]hich is headed by Elon Musk, who is in the gallery tonight."[22]

85.    On March 5, the *Washington Post* reported that some Republican senators were given Musk's phone number so they could have direct access to seek his help getting "problematic cuts" made by DOGE "quickly reversed."[23]

86.    However, in late February, the White House announced that Amy Gleason is the Acting Administrator of USDS.[24]

---

[20] Katherine Doyle, *Trump and Elon Musk Dominate His First Cabinet Meeting*, NBC News (Feb. 26, 2025, 1:04 PM), https://www.nbcnews.com/politics/trump-administration/trump-elon-musk-dominate-first-cabinet-meeting-rcna193836.

[21] Caitlyn Frolo, *5 Things to Know about Trump's First Cabinet Meeting*, ABC 4 News (updated Feb. 26, 2025 11:38 PM), https://abcnews4.com/news/nation-world/trump-holds-first-cabinet-meeting-of-second-term-with-elon-musk-in-attendance-doge-politics-email-waste-policy-administration.

[22] *Full Speech: President Trump's Joint Address to Congress*, YouTube (Mar. 4, 2025), https://www.youtube.com/watch?v=WVOvmHUu8Vw (highlighting DOGE and Musk's role from 22:26-22:49); *see also Full Transcript of President Trump's Speech to Congress*, NY Times (Mar. 5, 2025, 4:08 AM), https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html.

[23] Liz Goodwin et al., *Musk Promises Better Communication Between Republican Lawmakers, DOGE*, Wash. Post (updated Mar. 5, 2025), https://www.washingtonpost.com/politics/2025/03/05/musk-congress-anger-doge/.

[24] Joe Hernandez, *Amy Gleason is the Acting Administrator of DOGE, the White House Says. Who is She?*, NPR (Feb. 26, 2025, 8:07 PM)

87.    Gleason filed a sworn declaration in another action in this District on March 14, 2025, stating that she "serve[s] as the Acting Administrator of USDS" and is "full-time, government employee at USDS," and as such, she "oversee[s] all of USDS's employees and detailees to USDS from other agencies."[25]

88.    In a message to a 300-person group chat obtained by the *San Francisco Chronicle*, Gleason attempted to explain that she "currently serve[s] as acting administrator of the U.S. Doge Service (formerly U.S. Digital Service)," which is separate from the Agency DOGE Teams, and is also separate from "the broader Doge [sic] policy agenda that Elon Musk advises the President on."[26]

89.    However, a sworn declaration in a different case—which the Government initially sought to file under seal and is dated three days prior to Gleason's March 14 declaration—states that Gleason was detailed from USDS to the Department of Health and Human Services ("HHS") in February 2025 and then converted to a direct, presumably full-time HHS hire on March 4, 2025.[27]

---

[25] Decl. of Amy Gleason ¶¶ 2-4, *Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv.*, No. 25-CV-511 (D.D.C. March 14, 2025), ECF No. 20-2, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277646/gov.uscourts.dcd.277646.20.2_1.pdf.

[26] Shira Stein, *DOGE Head Denies Responsibility for Mass Firings in Private Group Chat Message*, San Francisco Chronicle (Apr. 8, 2025), https://www.sfchronicle.com/politics/article/doge-amy-gleason-group-chat-20258581.php.

[27] *See* Decl. of Garey Rice ¶¶ 6-8, Principal Deputy Assistant Secretary of HHS, *Am. Fed'n of Lab. & Cong. of Indus. Organizations* [hereinafter *AFL-CIO*], *v. Dep't of Lab.*, No. CV 25-0339 (D.D.C. March 11, 2025) ECF No. 51-3, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.51.3_2.pdf; Appointment Affidavit (OPM Form SF-61) of Amy Gleason, *AFL-CIO v. Dep't of Lab.* (D.D.C March 18, 2025), ECF No. 65-1, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.65.1_1.pdf; Order, *AFL-CIO v. Dep't of Lab.* (D.D.C March 17, 2025), ECF No. 59, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.59.0.p

90.    The third candidate for leader of DOGE is Musk's longtime aide Steve Davis, who the *New York Times* reported has "effectively become the day-to-day leader of DOGE," and wields "more power than Amy Gleason," who has "sometimes been in the dark about Mr. Davis's decisions."[28]

91.    Davis has, *inter alia*, called the leaders of the Social Security Administration ("SSA") to demand that a DOGE programmer be given access to databases containing sensitive information, "slashed diversity initiatives," met with lawmakers, and pushed Trump administration officials to let him email all government employees simultaneously, leading to "a January email blast known as the 'Fork in the Road,' which included a governmentwide resignation offer."[29]

92.    *ProPublica* has similarly reported that "[t]he exact chain of command at DOGE is not clear to most federal employees who brush up against the team," but that Gleason "does not appear to be running the budget-slashing group," and that day-to-day operations are run by Davis and sometimes "Musk himself," who "issues commands from inside the Secretary of War Suite in the Eisenhower Executive Office Building."[30]

93.    In a 30(b)(6) deposition of DOGE, its representative admitted that between February 5 and February 18, "there was not a formal acting administrator," but that "at the time, Steve Davis was the senior-most political advisor," so Davis made decisions that "Gleason later

---

df (denying government's motion to seal the SF-61s or redact from the SF-61s the affiants' names).
[28] Ryan Mac et al., *Meet Elon Musk's Top Lieutenant Who Oversees DOGE*, N.Y. Times (updated Mar. 21, 2025), https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html.
[29] *Id.*
[30] Christopher Bing et al., *Who's Running the Doge Wrecking Machine: The World's Richest Man or a Little-Know Bureaucrat?*, ProPublica (Mar. 14, 2025, 1:30 p.m. EDT), https://www.propublica.org/article/doge-leadership-elon-musk-amy-gleason-trump-ethics-conflict-of-interest.

ratified."[31]  DOGE also claimed in this deposition, however, that Davis now reports to Gleason.

94.     Thus, the leadership structure of DOGE—like much about its operations—continues to be shrouded in mystery.

### DOGE Wields Substantial Independent Authority Across the Executive Branch

95.     As alleged more fully below, DOGE's authority extends across the executive branch.

96.     Musk and DOGE enjoy substantial free rein to implement the "DOGE agenda" as they see fit, issuing commands to entities and persons within the executive branch—commands that agency officials and Cabinet secretaries treat as legally authoritative.

97.     DOGE exercises this authority independent of the President and senior White House officials, who often are unaware of DOGE's actions until they are made public.[32]

98.     For instance, even after the White House Chief of Staff Susie Wiles instructed Musk to keep her informed of his plans, Musk used Office of Personnel Management ("OPM") systems

---

[31] Dep. Of DOGE through Kendall Lindemann at 14:18-15:23, *AFL-CIO v. Dep't of Labor*, No. 25-cv-0339 (JDB) (D.D.C. Apr. 7, 2025), ECF No. 80-4, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.80.4.pdf.

[32] *See* Gabriel Sherman, *Is Donald Trump Afraid of Elon Musk?*, Vanity Fair (Feb. 7, 2025), https://www.vanityfair.com/news/story/is-donald-trump-afraid-of-elon-musk ("According to one Trump ally, Musk is not fully briefing White House chief of staff Susie Wiles about his plans and the White House is effectively in the dark."); Katherine Faulders & Will Steakin, *Musk's Whirlwind Approach Sparks Rift in the White House and in Trump's Orbit: Sources*, ABC News (Feb. 25, 2025, 3:50 PM), https://abcnews.go.com/Politics/musks-whirlwind-approach-sparks-rift-white-house-trumps/story?id=119179219 ("When billionaire Elon Musk posted on X last weekend that all federal employees would soon receive an email demanding details of their work from the past week, senior White House officials -- who had not been fully briefed on the plan -- were initially caught off guard.")

to send an email to 2.3 million federal employees without clearing his plan through any White House officials.[33]

99.     The message instructed federal employees to send an email documenting their accomplishments for the previous week and said that any nonresponse would be considered a resignation.[34]

100.     In just the first three weeks of the new administration, DOGE staffers reportedly accessed the offices of at least 15 executive branch agencies.[35]

101.     They have since accessed the offices and/or computer systems of many more agencies.

102.     With respect to these agencies, DOGE staff have reportedly (a) gained access to computer systems previously available only to agency employees, (b) rendered decisions related to agency payments or agency personnel, and (c) ordered agency supervisors or staff to take various actions.

103.     For example, on or around February 1, 2025, DOGE personnel reportedly insisted that they be granted access to systems at USAID, threatening to call law enforcement when officials at USAID refused.[36]

---

[33] *See* Nandita Bose et al., *Ultimatum to Federal Workers Raises Tensions Between Musk, White House Staff*, Reuters (Feb. 27, 2025 6:09 AM), https://www.reuters.com/world/us/ultimatum-federal-workers-raises-tensions-between-musk-white-house-staff-2025-02-27/.
[34] *See id.*
[35] *See, e.g*, Wash. Post staff, *Elon Musk's DOGE Has Swept into 15 Federal Agencies. Here's What to Know*, Wash. Post, (Feb. 8, 2025), https://www.washingtonpost.com/business/2025/02/08/elon-musk-doge-federal-agencies-cuts-employees/.
[36] *See, e.g.,* Jennifer Hansler et al., *Elon Musk Said Donald Trump Agreed USAID Needs to be 'Shut Down'*, CNN (Feb. 3, 2025, 7:48 AM), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge/index.html.

104.    DOGE staffers reportedly did subsequently gain access to USAID systems, including those containing classified information.[37]

105.    DOGE personnel reportedly halted certain agency payments, overruling Secretary of State Marco Rubio, who has also been serving as the Acting USAID Administrator.

106.    On January 28, Rubio issued an "Emergency Humanitarian Waiver to Foreign Assistance Pause," to allow continued payments for "life-saving humanitarian assistance programs."[38]

107.    But despite Rubio's—as well as USAID managers' and the White House's—express authorization for these payments, DOGE personnel reportedly blocked the payments.[39]

108.    Musk then publicly boasted about the independent power DOGE exerted over USAID.

109.    On Monday, February 3, 2025, at 1:54 AM, Musk posted on X (formerly Twitter), "We spent the weekend feeding USAID into the wood chipper. Could gone [sic] to some great parties. Did that instead."[40]

110.    As his X post indicates, Musk, as head of DOGE, and by his own admission, directed the reduction of USAID's workforce and freezing of funds.

---

[37] *See id.*

[38] Secretary Marco Rubio, Dep't of State, *Emergency Humanitarian Waiver to Foreign Assistance Pause* (Jan. 28, 2025), https://www.state.gov/wp-content/uploads/2025/01/Final-Signed-Emergency-Humanitarian-Waiver.pdf

[39] Matt Bai, *The blinding contempt of the DOGE bros,* Wash. Post, Feb. 24, 2025, http://wapo.st/3XrTgyn.

[40] Elon Musk (@elonmusk), X (formerly Twitter) (Feb. 3, 2025 1:54 AM), https://x.com/elonmusk/status/1886307316804263979.

111.    DOGE members have also reportedly gained access to sensitive systems at the U.S. Department of the Treasury, including the Payment Automation Manager and Secure Payment System, which process over $5 trillion annually.[41]

112.    According to media reports, the payment system "handles tax refunds, Social Security benefits, veterans' benefits and much more," and includes "an expansive network of Americans' personal and financial data."[42]

113.    A threat intelligence team at the Treasury Department reportedly recommended that DOGE staffers' access to these systems be monitored as an "insider threat," urging that their access be suspended because, according to the threat assessment team's email, "[t]here is reporting at other federal agencies indicating that DOGE members have performed unauthorized changes and locked civil servants out of the sensitive systems they gained access to."[43]

114.    DOGE staff have also reportedly gained editor access to systems at the National Oceanic and Atmospheric Administration.[44]

115.    Similarly, DOGE staff have reportedly gained access to systems at the Consumer Financial Protection Bureau ("CFPB") that "manage the agency's human resources, procurement,

---

[41] Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html; Vittoria Elliott et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025, 1:02 AM), https://www.wired.com/story/elon-musk-associate-bfs-federal-payment-system/.

[42] Assoc. Press, *Federal Judge Blocks DOGE from Accessing Sensitive U.S. Treasury Department Material*, NPR (updated Feb 8, 2025, 2:01 AM), https://www.npr.org/2025/02/08/g-s1-47350/states-sue-to-stop-doge-accessing-personal-data.

[43] Vittoria Elliott & Leah Feiger, *A US Treasury Threat Intelligence Analysis Designates DOGE Staff as 'Insider Threat'*, WIRED (Feb. 7, 2025, 2:47 PM), https://www.wired.com/story/treasury-bfs-doge-insider-threat/.

[44] *See, e.g.*, Tim Marchman & Matt Giles, *This DOGE Engineer Has Access to the National Oceanic and Atmospheric Administration*, WIRED (Feb. 5, 2025, 2:58 PM), https://www.wired.com/story/doge-engineer-noaa-data-google-musk-climate-project-2025/.

and finance systems" and they have "taken control of the bureau's social media accounts, locking out career staff."[45]

116.    Three "Musk deputies" were reportedly added to CFPB's internal staff directory.[46]

117.    DOGE has effectively dismantled USAID and reportedly seeks to dismantle the CFPB and the Department of Education, as well.[47]

118.    At least two DOGE staffers, Edward Coristine and Kyle Schutt, were reportedly embedded at the Cybersecurity and Infrastructure Security Agency ("CISA").[48]

119.    At least four DOGE staffers, Luke Farritor, Rachel Riley, Jeremy Lewin, and Clark Minor, have reportedly been put on staff at the National Institutes of Health ("NIH").[49]

120.    Three of the DOGE staff at NIH "are employed in the department that controls the NIH's central electronic business system, which includes finance, budget, procurement, a property-management system, and a grant-tracking system."[50]

---

[45] Bobby Allyn et al., *Musk's Team Takes Control of Key Systems at Consumer Financial Protection Bureau*, NPR (Feb 7, 2025, 11:48 PM), https://www.npr.org/2025/02/07/g-s1-47322/musks-team-takes-control-of-key-systems-at-consumer-financial-protection-bureau.
[46] *Id.*
[47] *See, e.g.,* Laurel Wamsley, *New CFPB Chief Closes Headquarters, Tells All Staff They Must Not Do 'Any Work Tasks'*, NPR (Feb. 10, 2025, 10:47 AM), https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk; Tierney Sneed, *DOGE's Efforts to Dismantle Consumer Finance Agency Have Slowed, Official Testifies*, CNN (Mar. 10, 2025, 6:48 PM EDT), https://www.cnn.com/2025/03/10/politics/doge-cfpb/index.html.
[48] *See* Kim Zetter, *DOGE Now Has Access to the Top US Cybersecurity Agency*, WIRED (Feb. 19, 2025, 8:59 PM), https://www.wired.com/story/doge-cisa-coristine-cybersecurity/.
[49] *See* Matt Reynolds, *DOGE is Inside the National Institutes of Health's Finance System*, WIRED (Feb. 24, 2025 1:36 PM), https://www.wired.com/story/doge-is-inside-the-national-institutes-of-health-nih/.
[50] *Id.*

121.     DOGE reportedly directed the mass layoffs of employees at the U.S. Department of Agriculture ("USDA"), including employees working on the federal government's response to H5N1 avian flu.[51]

122.     The USDA subsequently described some of those layoffs as "accidental," and tried to rescind those terminations.[52]

123.     DOGE staffers at OMB are reportedly working on software called "AutoRIF" that will automate the mass firing of federal workers across the federal government.[53]

124.     DOGE staff reportedly have gained access to Social Security Administration ("SSA") databases that contain the private financial information of hundreds of millions of people; fewer than 50 people have access to this database.[54]

125.     The *Washington Post* reported that in a closed-door meeting, the Trump Administration's Acting SSA commissioner Leland Dudek told a group of attorneys and advocates for the disabled and elderly that he was "receiving decisions that are made without my input. I have to effectuate those decisions," and that "DOGE people are learning and they will make mistakes, but we have to let them see what is going on at SSA."[55]

---

[51] *See, e.g.*, Allan Smith et al., *USDA Says It Accidentally Fired Officials Working on Bird Flu and Is Now Trying to Rehire Them*, NBC News (updated Feb. 18, 2025 6:31 PM), https://www.nbcnews.com/politics/doge/usda-accidentally-fired-officials-bird-flu-rehire-rcna192716.

[52] *Id.*

[53] *See, e.g.*, Makena Kelly, *DOGE Is Working on Software That Automates the Firing of Government Workers*, WIRED (Feb. 25, 2025, 12:02 PM), https://www.wired.com/story/doge-autorif-mass-firing-government-workers/.

[54] *See, e.g.*, Stephen Fowler & Jenna McLaughlin, *DOGE Says It Needs to Know the Government's Most Sensitive Data, But Can't Say Why*, NPR (Mar. 26, 2025, 9:00am ET), https://www.npr.org/2025/03/26/nx-s1-5339842/doge-data-access-privacy-act-social-security-treasury-opm-lawsuit.

[55] Lisa Rein et al., *DOGE is Driving Social Security Cuts and Will Make Mistakes, Acting Head Says Privately*, Wash. Post (Mar. 6, 2025),

126.    In other words, the nominal head of the SSA is ostensibly receiving instructions from DOGE that he is obliged to, and does, follow.

127.    DOGE staff reportedly planned to eliminate or significantly reduce telephone service and identity verification for Social Security recipients, which could cause processing delays and prevent many Americans from receiving benefits.[56]

128.    DOGE staff have gained access to data systems containing highly sensitive data at many more agencies.  For example, DOGE staff are now alleged to have access to the Department of Health and Human Services' Unaccompanied Alien Children portal, which includes detailed information about minor children who enter the United States without a parent or guardian, and which contains mental health and therapy records, reports of trauma such as physical or sexual abuse, immigration records, photos, and addresses of family members.[57]

129.    DOGE staff have also accessed sensitive systems at the Department of Labor.[58]

130.    DOGE staff have also gained access to 12 sensitive HHS systems that include the Medicare and Medicaid payment databases, contracts, acquisitions, and grants both at NIH and HHS more broadly.[59]

---

https://www.washingtonpost.com/politics/2025/03/06/doge-is-driving-social-security-cuts-will-make-mistakes-acting-head-says-privately/.

[56] *See* Judd Legum, *Exclusive: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Information (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[57] *See, e.g.,* Nick Robins-Early, *Doge Gained Access to Sensitive Data of Migrant Children, Including Reports of Abuse*, The Guardian (Apr. 3, 2025, 11:00 AM EDT), https://www.theguardian.com/us-news/2025/apr/03/doge-data-migrant-children.

[58] *See* Stephen Fowler & Jenna McLaughlin, *DOGE Staffer Who Shared Treasury Data Now Has More Access to Government Systems*, NPR (Mar. 31, 2025, 12:30 PM ET), https://www.npr.org/2025/03/31/nx-s1-5345708/doge-data-access-labor-cfpb-hhs.

[59] *See, e.g.*, *id.*; Kyle Cheney & Josh Gerstein, *DOGE's Marko Elez is back on the U.S. Payroll*, Politico (Mar. 29, 2025, 6:29 PM EDT), https://www.politico.com/news/2025/03/29/doge-marko-elez-software-engineer-us-payroll-00259303.

131.    Additionally, DOGE staff have gained access to data systems at the U.S. Citizenship and Immigration Services that include asylee and refugee data, data on naturalization applicants, U.S. citizens sponsoring immigrants' applications, and more.[60]

132.    DOGE is also reportedly using artificial intelligence to surveil federal workers in at least one agency, the Environmental Protection Agency, where employees were told that DOGE would be using AI to monitor workers for language suggesting hostility towards Trump, Musk, or the administration's priorities.[61]

133.    Secretary of Defense Pete Hegseth has credited DOGE with cutting $6 billion in spending from the Department of Defense.[62]

134.    In sum, DOGE's far-reaching activities across dozens of federal agencies demonstrate its substantial authority independent of the President.

### DOGE's Deployment of the Same Staffers to Multiple Agencies Demonstrates that its Work is a Coordinated, Centralized Effort

135.    Individual DOGE staffers have access to data systems at multiple agencies and are detailed to or on staff at multiple agencies simultaneously or sequentially.

136.    The fact that individual DOGE staffers are employed by and detailed to multiple agencies simultaneously demonstrates that DOGE's work is a coordinated, central effort.

---

[60] *See, e.g.*, Rebecca Heilweil, *DOGE Granted Access to Naturalization-Related IT systems, Memo Shows*, FedScoop (Apr. 2, 2025), https://fedscoop.com/doge-granted-access-to-naturalization-immigration-it-systems/.

[61] *See* Alexandra Ulmer et al., *Exclusive: Musk's DOGE using AI to snoop on U.S. Federal Workers, Sources Say*, Reuters (Apr. 8, 2025, 11:36 AM EDT), https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/.

[62] *See* Khaleda Rahman, *DOGE Cuts Update: Pete Hegseth Announces $5.1 Billion DOD Contract Cuts*, Newsweek (Apr. 11, 2025, 10:12 AM EDT), https://www.newsweek.com/doge-cuts-pete-hegseth-dod-contracts-2058508.

137.    For example, Marko Elez is an employee of the Department of Labor, who is detailed to HHS and to USDS.

138.    In a sworn filing, the Department of Labor stated that it is "aware of four other agencies at which Mr. Elez is concurrently detailed to or otherwise employed, other than USDS."[63]

139.    Luke Farritor is an employee of the General Services Administration ("GSA"), who is detailed to HHS as well as USDS.

140.    Farritor has been granted access to at least a dozen sensitive data systems at HHS.[64] He was previously also detailed to the CFPB.[65]

141.    Farritor has also been granted access to the Department of Energy's IT system, over the objections of the department's general counsel and chief information offices.[66]

142.    Kyle Schutt is an employee of the GSA, who has also been detailed to HHS and USDS.[67]

143.    Jordan Wick was a USDS employee detailed to CFPB; at some point this status reversed, and he became a CFPB employee detailed to USDS. CFPB states further that "Wick is an employee at one other agency and detailed to at least six agencies besides CFPB and USDS."[68]

---

[63] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 13, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[64] *Id.* at 9.

[65] *Id.* at 14.

[66] Ella Nilsen & Sean Lyngaas, *Trump Energy Secretary Allowed 23-Year-Old DOGE Rep to Access IT Systems Over Objections from General Counsel*, CNN (updated Feb. 7, 2025, 2:54 PM), https://www.cnn.com/2025/02/06/climate/doge-energy-department-trump/index.html.

[67] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 11, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[68] *Id.* at 13, 19.

144.    Edward Coristine is an employee of the GSA, who has also been detailed to both HHS and USDS.[69]  Coristine has also reportedly gained physical access to CISA and has an email address from the Department of Homeland Security.[70]

145.    Elez, Farritor, Schutt, Coristine, and Wick are all, in reality, core staffers of DOGE itself and part of Musk's key DOGE team.[71]

### DOGE's Funding

146.    The Trump Administration  funded DOGE by invoking the Economy Act.[72]

147.    As of February 20, 2025, DOGE received nearly $40 million in funding that was transferred from other agencies.[73]

148.    The Economy Act may only be invoked by "[t]he head of an agency or major organizational unit within an agency." 31 U.S.C. § 1535(a); *see also* 48 C.F.R. § 17.502-2(a) ("The Economy Act (31 U.S.C. 1535) authorizes agencies to enter into agreements to obtain supplies or services from another agency. . . . The Economy Act also provides authority for placement of orders between major organizational units within an agency[.]").

---

[69] *Id.* at 9.

[70] David DiMolfetta, *DOGE Employee Edward Coristine Lands at CISA with DHS Email*, NextGov (Feb. 19, 2025), https://www.nextgov.com/cybersecurity/2025/02/doge-employee-edward-coristine-lands-cisa-dhs-email/403126/. Coristine sometimes uses the online alias "Big Balls." *See, e.g.,* Raphael Satter, *Exclusive: DOGE Staffer, 'Big Balls', Provided Tech Support to Cybercrime Ring, Records Show*, USA Today (Mar. 26, 2025), https://www.usatoday.com/story/news/politics/2025/03/26/doge-staffer-big-balls-edward-coristine/82667607007/.

[71] James Bickerton, *Who Is Helping DOGE? List of Staff Revealed*, Newsweek (updated Feb. 14, 2025, 6:14 PM EST), https://www.newsweek.com/doge-list-staff-revealed-2029965; *see also* Vittoria Elliott, *The Young, Inexperienced Engineers Aiding Elon Musks's Government Takeover*, WIRED (Feb. 2, 2025, 2:02 PM), https://www.wired.com/story/elon-musk-government-young-engineers/.

[72] Avi Asher-Schapiro et al., *DOGE's Millions: As Musk and Trump Gut Government, Their Ax-Cutting Agency Gets Cash Infusion*, ProPublica (Feb. 20, 2025, 3:55 PM), https://www.propublica.org/article/doge-trump-musk-funding-foia-congress-transparency.

[73] *Id.*

### *DOGE's Use of Non-Governmental Ephemeral Messaging Systems*

149.    On information and belief, the former U.S. Digital Service set up a Slack system that was configured to ensure that the agency was able to comply with its records preservation obligations under FOIA and the FRA.

150.    In February 2025, however, DOGE employees were instructed to stop using Slack in order to migrate communications to a system that would be administered within the Executive Office of the President.[74]

151.    Instead, DOGE has used ephemeral messaging systems such as Signal and Mattermost, an open-source alternative to Slack.

152.    Signal is an open-source, encrypted messaging service that allows users to send text, audio, video, and picture messages to other users.

153.    Signal includes a function that allows users to set time limits by which their sent messages will disappear and be deleted from both the sender's and recipient's devices.[75]

154.    Upon information and belief, Signal messages are stored only on an individual's device, with no copy or back-up of the messages retained on the Signal system or servers; this means that Signal messages can be preserved by the individual users through screenshots or other

---

[74] Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025, 11:49 AM), https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/.

[75] For an explanation of ephemeral messaging, *see*, *e.g.*, Set and Manage Disappearing Messages, SIGNAL, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages; Stories, Signal, https://support.signal.org/hc/en-us/articles/5008009166234-Stories; Disappearing Messages with a Linked Device, Signal, https://support.signal.org/hc/en-us/articles/5532268300186-Disappearing-Messages-with-a-Linked-Device.

means, but, once deleted, messages cannot be restored or retrieved.[76]

155.    Upon information and belief, Signal lacks the technical capability to copy an official electronic messaging account of an officer or employee in the original creation or transmission of a record.

156.    Upon information and belief, Signal lacks the technical capability to forward a complete copy of a record to an official electronic messaging account of an officer or employee.

157.    Upon information and belief, DOGE has not established any system to ensure that messages sent on Signal concerning official government business are forwarded to and preserved in a federal recordkeeping system.

158.    Mattermost is another nongovernmental, open-source messaging platform.

159.    Mattermost can be configured to auto-delete messages after a certain period of time.[77]

160.    On information and belief, DOGE staff, including Musk, have used non-governmental messaging systems such as Signal to communicate regarding official matters since at least December 2024.[78]

---

[76] *See Backup and Restore Messages*, Signal (last visited Apr. 16, 2025), https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages.

[77] *See* Data Retention Policy, Mattermost, https://docs.mattermost.com/comply/data-retention-policy.html (discussing the ability of Mattermost Enterprise customers to set custom retention policies); *see also* How to Delete Old Messages Automatically in a Channel?, Mattermost Discussion Forums, https://forum.mattermost.com/t/how-to-delete-old-messages-automatically-in-a-channel/13397; Disappearing Messages, Mattermost Discussion Forums, https://forum.mattermost.com/t/disappearing-messages/15091.

[78] *See, e.g.*, Ken Thomas et al., *Inside the Early Days of DOGE,* Wall St. J. (Jan. 17, 2025, 5:00 AM), https://www.wsj.com/politics/policy/doge-federal-reform-musk-ramaswamy-118a3833?reflink=desktopwebshare_permalink; Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html?partner=slack&smid=sl-share; *see also* Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not*

161.    On information and belief, DOGE staff, including Musk, have continued to use Signal since January 20 to send messages regarding official government matters that were only visible to the recipients and/or were automatically deleted after hours, days, or weeks.[79]

162.    On information and belief, DOGE also uses the messaging platform Mattermost for some communications.[80]

163.    Upon information and belief, DOGE has not established any system to ensure that messages sent on Mattermost concerning official government business are forwarded to and preserved in a federal recordkeeping system.

164.    On information and belief, federal records responsive to Plaintiff's FOIA requests—including Signal and Slack communications—have already been removed or destroyed or may soon be.

### *DOGE's Use of Google Docs*

165.    On April 8, Reuters reported that DOGE staffers are "bypassing . . . chains of custody for official government documents by working simultaneously out of Google Docs instead

---

*Subject to FOIA*, 404 Media (Feb. 5, 2025, 11:49 AM), https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/.

[79] *See* Schleifer & Ngo, *supra* note 78; Alexandra Ulmer et al., *Exclusive: Musk's DOGE Using AI to Snoop on U.S. Federal Workers, Sources Say*, Reuters (Apr. 8, 2025, 11:36 AM), https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-to-snoop-us-federal-workers-sources-say-2025-04-08/.

[80] DOGE attached a document dated March 25, 2025, and titled United States DOGE Service Records Retention Policy, as an exhibit in *American Oversight v. Department of Government Efficiency*, 25-cv-0409 (BAH) (D.D.C. Mar. 27, 2025), ECF No. 13-2.  This policy references Mattermost as a type of electronic communication that is subject to the retention policy. Mattermost is used at Elon Musk-controlled companies like Tesla.  *See, e.g.*, Casey Newton & Zoë Schiffer, *Twitter Shut Off its Internal Slack, and Now 'Everyone is Barely Working'*, The Verge (Feb. 24, 2023, 9:00 A.M.), https://www.theverge.com/2023/2/24/23613288/twitter-slack-jira-outages-performance-degradation.

of circulating single copies of drafts," with "multiple people in one Google Doc editing things simultaneously."[81]

166.    Work product created by DOGE staffers on Google Docs and all drafts thereof are federal records that must be preserved under the FRA.  The FRA requires working drafts to be individually preserved where they were "circulated or made available to employees, other than the creator" for "approval, comment, action, recommendation, follow-up, or to communicate with agency staff about agency business," and "contain unique information, such as substantive annotations or comments." 36 C.F.R. § 1222.12(c).

167.    The nature of Google Docs, and the fact that multiple DOGE staffers work in a single document simultaneously, means that draft documents are necessarily circulated or made available to employees.

168.    Furthermore, on information and belief, many draft Google Docs contain unique information, such as substantive annotations or comments.

169.    Other uses of Google Docs include using a single shared document as a shared message pad—like a physical whiteboard on which people write notes to one another, erasing previous notes along the way—as an alternative to email.

170.    However, only certain paid Google suites have the ability to show who edited which part of a document.[82]

---

[81] *See* Ulmer et al., *supra* note 79.

[82] Google Docs Editors Help, *Find what's changed in a file*, https://support.google.com/docs/answer/190843 (stating that seeing "who changed a part of a document in Google Docs" is "available to only Google Workspace Business Standard, Business Plus, Enterprise Standard, Enterprise Plus, and Education Plus customers") (last visited Apr. 16, 2025).

171.    Moreover, Google Docs does not necessarily save all prior versions of a document, but may instead "merge [previous versions] to save storage space."[83]

172.    On information and belief, DOGE has not established systems within its version of Google Docs to ensure that all federal records are captured and preserved.

173.    Accordingly, DOGE's use of Google Docs runs a substantial risk that federal records have been wrongfully disposed of already, because prior drafts have likely been lost, along with records showing which staffers contributed which sections to drafts of documents and commentary included in comment bubbles or other annotations.

174.    For the same reasons, DOGE's use of Google Docs also threatens the imminent wrongful destruction of additional federal records.

175.    Google Docs threatens the imminent and wrongful destruction for a second, independent reason.

176.    Google Docs contains an internal chat feature.  This allows all users working simultaneously on a document to chat directly within the document itself.[84]

177.    However, Google clearly states both in its instructions and directly within these chats themselves (sample screenshot below) that they are not saved:[85]



---

[83] *Id.*
[84] Google Docs Editors Help, Chat with others in a file, https://support.google.com/docs/answer/2494891.
[85] *Id.*

178.    On information and belief, DOGE is using Google Docs internal chats.

179.    On information and belief, DOGE has not established systems within its instance of Google Docs to preserve Google Docs internal chats in federal record-keeping systems.

180.    Google Docs internal chats are "recorded information . . . made or received by [DOGE] in connection with the transaction of public business." *See* 44 U.S.C. § 3301.

181.    Chats within a Google Doc are federal records that must be preserved.

182.    Because Google Docs chats are not being preserved on official government recordkeeping systems, any use by DOGE of the Google Docs chat feature is a violation of the FRA.

### *DOGE's Records Retention Policy*

183.    In a separate FOIA action brought by American Oversight in this District against DOGE, DOGE produced a Records Retention Policy. *See* United States DOGE Service Records Retention Policy, *Am. Oversight v. Dept. of Govt. Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Mar. 27, 2025), ECF No. 13-2.

184.    The Records Retention Policy is dated March 25, 2025.

185.    March 25 is one day after American Oversight filed a Motion for a Preservation Order that asked the court to order DOGE to preserve all records responsive to the FOIA requests at issue in that lawsuit.  Pl.'s Mot. for Preservation Order, *Am. Oversight v. Dept. of Govt. Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Mar. 24, 2025), ECF No. 12.

186.    The Records Retention Policy purports to be in accord with the PRA, not the FRA or FOIA.

187.    The Records Retention Policy advises, but does not require, that DOGE employees, "disabl[e] auto-delete features" on messaging services like Signal.

*American Oversight Puts DOGE and NARA on Notice of FRA Violations*

188.    On January 22, 2025, American Oversight sent a letter to Elon Musk in his capacity as DOGE's apparent leader, reminding him of the agency's obligations to preserve federal records pursuant to the FRA.[86] That same day, American Oversight sent similar letters to the Departments of Defense, Health and Human Services, Homeland Security, Treasury, Veterans Affairs, OMB, and NARA, warning them of the consequences of potential destruction or removal of DOGE communications.[87]

189.    To date, American Oversight has received no response from Musk or anyone else associated with DOGE to the letter sent January 22.

190.    American Oversight received a response to one of the January 22 letters from William Fischer, Chief Records Officer of NARA.  This letter stated only that "[t]he issues raised in your letter are now before the United States District Court for the District of Columbia Circuit, *see CREW v. U.S. DOGE Service*, 1:25-cv-00511.   The National Archives and Records Administration (NARA) is a party to that litigation, and will work closely with the Department of Justice to respond appropriately through that process."  A true and correct copy of this letter is attached as Exhibit 1.

---

[86] Letter from Ron Fein, Chief Counsel, American Oversight, to Elon Musk, DOGE, *Potential Unlawful Destruction or Removal of DOGE Communications* (Jan. 22, 2025), https://americanoversight.org/featureddocument/american-oversight-letters-to-elon-musk-and-multiple-federal-agencies-warning-against-the-unlawful-destruction-or-removal-of-doge-communications/.

[87] *Id.*

### *DOGE's Evasion of Access Logging Systems at the NLRB*

191.    In early March 2025, a DOGE team accessed confidential data on the computer systems of the National Labor Relations Board ("NLRB").[88]

192.    Based on these events, a whistleblower, Daniel Berulis, a technical expert at the NLRB, submitted an official disclosure to Congress and the Office of Special Counsel.[89]

193.    Reportedly, the DOGE team demanded the highest level of access to NLRB computer systems—"tenant owner level" accounts "with essentially unrestricted permission to read, copy and alter data." But the DOGE team rebuffed NLRB staff's offer to grant such access in a manner that would log DOGE activity consistent with the NLRB's cybersecurity policies.[90]

194.    DOGE programmer Jordan Wick wrote code to access NLRB's internal case management system, NxGen.[91]

195.    Reportedly, DOGE programmers insisted that their activities not be logged.[92]

196.    Reportedly, while DOGE programmers were accessing the NLRB's systems, an unusually large amount of data exited the NLRB's network. NLRB technical staff were sufficiently concerned that they launched a formal breach investigation and sought assistance from CISA.[93]

197.    Reportedly, DOGE programmers deleted access logs, records of the data exfiltration, and other records of their activities from the NLRB's computer systems.[94]

---

[88] *See* Jenna McLaughlin, *A Whistleblower's Disclosure Details How DOGE May Have Taken Sensitive Labor Data*, NPR (Apr. 15, 2025, 5:00 AM), https://www.npr.org/2025/04/15/nx-s1-5355896/doge-nlrb-elon-musk-spacex-security.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

198.    Deleting access logs from a government computer system in this manner violates the FRA.[95]

### American Oversight's FOIA Requests

199.    American Oversight has submitted 30 FOIA requests to DOGE since January 20, 2025.

200.    American Oversight will continue to submit FOIA requests to DOGE.

201.    American Oversight has already filed one previous lawsuit against DOGE seeking to compel DOGE to produce records responsive to American Oversight's FOIA requests. *Am. Oversight v. Dep't of Gov't Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Feb. 11, 2025).

202.    DOGE's use of Google Docs means that records responsive to a number of American Oversight's FOIA requests have already or may imminently be disposed of unlawfully.

203.    Likewise, DOGE's use of Signal and Mattermost separately mean that records responsive to American Oversight's FOIA requests have already or may imminently be disposed of unlawfully.

#### Agency Dismantling FOIA Request

204.    On February 24, 2025, American Oversight submitted a FOIA request to USDS@omb.eop.gov,[96] bearing internal tracking number USDS-25-0491 ("Agency Dismantling Request"), seeking the following records from January 29, 2025 through the date the search is conducted for part 1, and from January 20, 2025 through the date the search is conducted for part 2:

---

[95] *Id.*

[96] This email address, historically, was the government's preferred method to submit FOIA requests to the former U.S. Digital Service, which was restructured into the U.S. DOGE Service. DOGE has not published new instructions for how to contact the agency or submit records requests.

1. **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) <u>sent or received</u> by any of the USDS officials listed below <u>and</u> containing any of the following key terms, also listed below.

   <u>USDS Officials</u>:
   i.   Elon Musk
   ii.  Anyone serving as Elon Musk's chief of staff, secretary, scheduler, assistant, senior adviser, and/or special adviser

   <u>Key Terms</u>:
   a. "clean house"
   b. Gemini
   c. "shut down"
   d. shutter
   e. resign*
   f. dismantl*
   g. eliminat*
   h. freez*
   i. froz*
   j. reduc*
   k. separat*
   l. gut
   m. death
   n. die
   o. pause
   p. RIP
   q. RIF
   r. "admin leave"
   s. "admin. leave"
   t. "administrative leave"
   u. Rubio
   v. Bessent
   w. USAID
   x. U.S.A.I.D.
   y. "Agency for International Development"
   z. CFPB
   aa. "Consumer Financial Protection"
   bb. Benz
   cc. "foreign aid"
   dd. "foreign assistance"
   ee. Humanitarian
   ff. Education
   gg. "stop work"
   hh. "stop-work"
   ii. Rohit
   jj. Chopra
   kk. cessation
   ll. Vought

2. **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) <u>sent or received</u> by any of the USDS officials listed below <u>and</u> containing any of the following key terms, also listed below.

<u>USDS Officials</u>:
i.       Steve Davis
ii.      Brad Smith
iii.     Katie Miller
iv.      Riccardo Biasini
v.       Akash Bobba
vi.      Edward Coristine
vii.     Luke Farritor
viii.    Gautier "Cole" Killian
ix.      Gavin Kliger
x.       Nikhil Rajpal
xi.      Anthony Armstrong
xii.     Stephanie Holmes

<u>Key Terms</u>:
a.   "clean house"
b.   Gemini
c.   "shut down"
d.   shutter
e.   resign*
f.   dismantl*
g.   eliminat*
h.   freez*
i.   froz*
j.   reduc*
k.   separat*
l.   gut
m.   death
n.   die
o.   pause
p.   RIP
q.   RIF
r.   "admin leave"
s.   "admin. leave"
t.   "administrative leave"
u.   Rubio
v.   Bessent
w.   USAID
x.   U.S.A.I.D.
y.   "Agency for International Development"
z.   CFPB
aa.  "Consumer Financial Protection"
bb.  Benz
cc.  "foreign aid"
dd.  "foreign assistance"
ee.  Humanitarian
ff.  Education
gg.  "stop work"
hh.  "stop-work"
ii.  Rohit
jj.  Chopra
kk.  cessation
ll.  Vought
mm.      purg*
nn.  remov*
oo.  terminat*
pp.  dismiss*
qq.  fir*

*See* Exhibit 2.

205.    DOGE has not acknowledged receipt of this request nor otherwise communicated about this request with American Oversight.

2

206.    Google Docs chats and Signal messages that included the listed keywords are responsive to this request.

*Gleason Communications Request*

207.    On March 7, 2025, American Oversight submitted a FOIA request to USDS@omb.eop.gov, bearing internal tracking number USDS-25-0607 ("Gleason Communications Request"), seeking the following records from January 20, 2025 through the date the search is conducted:

1.  All records reflecting communications (including emails, email attachments, text messages, messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler), telephone call logs, calendar invitations, calendar entries, meeting notices, meeting agendas, informational material, draft legislation, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) received by Amy Gleason notifying her of her appointment to serve as the Acting Administrator of USDS.

2.  All calendars or calendar entries for Amy Gleason, including any calendars maintained on her behalf, from January 20, 2025, through the date the search is conducted.

    American Oversight requests that the calendars be produced in a format that includes all invitees, any notes, and all attachments.

    Please do not limit your search to electronic calendars; we request the production of any calendar — paper or electronic, whether on government-issued or personal devices — used to track or coordinate how Gleason allocates her time on agency business.

    This search should include any calendars associated with Gleason's email accounts, as well as any official calendars maintained for him, including by an aide, assistant, or scheduler.

3.  All text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) sent or received by Amy Gleason.

4.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> Amy Gleason — and/or anyone communicating on her behalf, including a chief of staff, assistant, and/or secretary — to any email address ending in .com, .co, .us, .net, .org, .mail, .edu, .law, .ch, and/or .me.

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part four of this request to emails <u>sent</u> by Amy Gleason — and/or anyone communicating on her behalf, including a chief of staff, assistant, and/or secretary. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both Gleason's response to an email from an email address ending in .com and the initial received message are responsive to this request and should be produced.

5.  All records reflecting guidance — including directives, instructions, directions, memoranda, and/or any other written guidance — issued by Amy Gleason in her role as Acting Administrator of USDS.

*See* Exhibit 3.

208.    DOGE has not acknowledged receipt of this request nor otherwise communicated about this request with American Oversight.

209.    Google Docs chats and Signal messages are responsive to parts 1 and 3 of the Gleason Communications Request.

210.    Prior versions and drafts of any guidance documents referenced in Part 5 of the Gleason Communications Request are responsive to this request.

*Oversight Guidance Request*

211.    On March 11, 2025, American Oversight sent a FOIA request to USDS@omb.eop.gov, bearing internal tracking number USDS-25-0610 ("Oversight Guidance Request"), seeking the following records from January 20, 2025, through the date the search is conducted:

All records reflecting guidance — including directives, instructions, directions, memoranda, informal email guidance, and/or any other informal written guidance — created and/or issued by U.S. DOGE Service regarding oversight of the executive branch – including congressional oversight (both specific congressional oversight of specific matters and general policies, concerns, and considerations related to congressional oversight of the executive branch), requests from agency's Inspectors General, requests from the Governmental Accountability Office (GAO), and/or FOIA requests.

*See* Exhibit 4.

212.    DOGE has not acknowledged receipt of this request nor otherwise communicated about this request with American Oversight.

*Probationary Employee Firing Request*

213.    On March 11, 2025, American Oversight sent another request to USDS@omb.eop.gov, bearing internal tracking number USDS-25-0636 ("Probationary Employee Firings Request"), seeking the following records from February 1, 2025, through the date the search is conducted:

1.    All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) between (a) the U.S. DOGE Service (USDS) officials listed below, and (b) the external individuals listed below.

USDS Officials:
1.    Elon Musk
2.    Amy Gleason
3.    Steve Davis
4.    Brad Smith
5.    Katie Miller
6.    Stephanie Holmes
7.    Chris Young
8.    Amanda Scales
9.    Kendall Lindemann
10.    Stephanie Holmes
11.    Christina Hanna
12.    Stephen Duarte
13.    Bryanne-Michelle Mlodzianowksi

External Individuals:

a.  Linda McMahon, Department of Education Secretary
b.  Denise Carter, Department of Education Former Acting Secretary
c.  James Bergeron, Department of Education Deputy Under Secretary
d.  Anyone serving in the capacity of Department of Education General Counsel
e.  Candice Jackson, Department of Education Deputy General Counsel
f.  Rachel Oglesby, Department of Education Chief of Staff
g.  Steve Warzoha, Department of Education White House Liaison
h.  Doug Burgum, Department of the Interior Secretary
i.  Walter Cruickshank, Department of the Interior Former Acting Secretary
j.  Bivan Patnaik, Department of the Interior Director of the Office of the Executive Secretariat and Regulatory Affairs
k.  Preston Heard, Department of the Interior Deputy Director of Secretarial Correspondence
l.  Kelly Loeffler, Small Business Administration Administrator
m.  Wesley Coopersmith, Small Business Administration Chief of Staff
n.  Tyler Teresa, Small Business Administration White House Liaison
o.  Wendell Davis, Small Business Administration General Counsel
p.  Julie Brill, Small Business Administration Acting Chief Human Capital Officer
q.  Charles Ezell, Office of Personnel Management Acting Director
r.  Amanda Scales, Office of Personnel Management Chief of Staff
s.  Riccardo Biasini, Office of Personnel Management Senior Advisor
t.  Noah Peters, Office of Personnel Management Senior Advisor

2.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent</u> by the USDS officials listed above in part 1, <u>and</u> containing any of the key terms listed below.

        <u>Key Terms</u>:
a.  "SF-50"
b.  Probationary
c.  "further employment"

In an effort to accommodate your agency and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited its request to emails sent by the listed officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both a listed official's response to an email containing any of the key terms listed above and the initial received message are responsive to this request and should be produced.

3.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by,

issued to, or otherwise provided to your agency regarding the termination
of probationary employees.

*See* Exhibit 5.

214.     DOGE has not acknowledged receipt of this request nor otherwise communicated

about this request with American Oversight.

### *DOGE's Use of Signal, Mattermost, and Google Docs Violates FOIA and the FRA*

215.     Defendants' use of Signal suggests that they have used Signal to communicate

about matters that may otherwise have been discussed via email, thereby avoiding creating records

responsive to American Oversight's FOIA requests for emails.

216.     Defendants' use of Mattermost suggests that they have used Mattermost to

communicate about matters that may otherwise have been discussed via email, thereby avoiding

creating records responsive to American Oversight's FOIA requests for emails.

217.     Defendants' use of Google Docs suggests that they have used Google Docs to

communicate about matters that may otherwise have been discussed via email, thereby avoiding

creating records responsive to American Oversight's FOIA requests for emails.

218.     Defendants' use of Google Docs suggests that they have used Google Docs to avoid

creating and separately preserving individual drafts of documents with commentary and that reflect

which individuals created which sections, thereby avoiding creating records responsive to

American Oversight's FOIA requests.

219.     Upon information and belief, Defendants Musk, Davies, and Gleason (the

"Individual Defendants"), in their capacities as heads of DOGE, have not taken steps to preserve

messages sent or received in Signal chats or to recover any that have been lost or deleted.

220.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve messages sent or received in Mattermost chats or to recover any that have been lost or deleted.

221.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve messages sent or received in Google Docs chats or to recover any that have been lost or deleted.

222.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve all prior drafts of federal records produced in Google Docs with their commentary and reflecting which individuals contributed which sections to documents, nor taken steps to recover any prior drafts that have been lost or deleted.

223.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve records in other electronic communication systems that permit ephemeral messaging or can be configured or used not to preserve records.

### *Exhaustion of Administrative Remedies*

224.    As of the date of this Complaint, Defendants have failed to: (a) notify American Oversight of a final determination regarding any of the requests at issue here, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

225.    More than 20 working days have passed since all FOIA requests at issue in this lawsuit were filed.

226.    Through Defendants' failures to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

## CLAIMS FOR RELIEF

### Count I – as to Defendants Musk, Davies, and Gleason
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
### for declaratory and injunctive relief

227.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

228.    Messages in Signal chats, Mattermost, Google Docs chats, or other ephemeral messaging systems responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1), 2911, and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

229.    Defendants, in their capacities as agency heads, know or reasonably should know that the communications in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats constitute "records" under the FRA.

230.    Defendants have failed and continue to fail to implement measures to prevent the automatic deletion of messages in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats, which violates their obligations under the FRA.

231.    By permitting and engaging in the use of Signal, Mattermost, Google Docs chats or other ephemeral messaging systems to communicate regarding agency business, Defendants

have failed to establish a records management program providing "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

232.    The recordkeeping practices Defendants have in place at DOGE are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

233.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

234.    Upon information and belief, messages in Signal, Mattermost, Google Docs chats or other ephemeral messaging system chats have not and are not being maintained in accordance with the FRA.

235.    Upon information and belief, messages in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats responsive to American Oversight's FOIA requests are being or will imminently be destroyed in contravention of the FRA.

236.    Each Defendant is on notice of the unlawful removal or destruction of agency records, at minimum because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein.  *See supra* ¶ 188.

237.    Where, as here, this violation is known to Defendants, each Defendant, in their respective capacities as agency heads, has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

238.    Defendants have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

239.    Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

240.    Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

241.    Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

242.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### Count II – as to Defendants Musk, Davies, and Gleason
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief**

243.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

244.    Prior versions of documents created in Google Docs responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105. Federal records may only be alienated or

destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

245.    Defendants, in their capacities as agency heads, know or reasonably should know that prior versions of documents created in Google Docs constitute "records" under the FRA.

246.    Defendants have failed and continue to fail to implement measures to prevent the deletion or conflation of prior versions of Google Docs. This violates their obligations under the FRA.

247.    Defendants have failed and continue to fail to implement measures to prevent the use of Google Docs as a shared transient message pad. This violates their obligations under the FRA.

248.    By permitting and engaging in the use of Google Docs to create records in the course of agency business, Defendants have failed to establish a records management program providing "effective control over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

249.    The recordkeeping practices Defendants have in place at DOGE are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

250.    Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

251.    Upon information and belief, documents and drafts created in Google Docs responsive to American Oversight's FOIA requests are being or will imminently be destroyed in contravention of the FRA.

252.    Each Defendant is on notice of the unlawful removal or destruction of agency records, at minimum because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein. *See supra* ¶ 188.

253.    Where, as here, this violation is known to Defendants, each Defendant, in their capacity as an agency head, has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

254.    Defendants have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

255.    Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

256.    Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

257.    Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

258.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count III – as to Defendants NARA and Acting Archivist Rubio**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief**

259.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

260.    Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so.

261.    Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein, which was acknowledged by NARA on March 27, 2025. *See supra* ¶ 190; Ex. 1.

262.    Defendants NARA and Rubio have also been made aware of the unlawfully alienated agency records because of the widespread public reporting of this alienation.

263.    Defendant Rubio, as Acting Archivist, knows or reasonably should know that Defendants Musk, Davies, and Gleason failed to take appropriate action to preserve and recover records from the Signal chat.

264.    However, Defendant Rubio has also failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

265.    This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count IV – as to the DOGE Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

266.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

267.    American Oversight properly requested records within Defendants' possession, custody, and control.

268.    Defendant Department of Government Efficiency has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA Requests.

269.    Defendant USDS has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA Requests.

270.    Defendant U.S. DOGE Service Temporary Organization has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA Requests.

271.    Each Defendant's failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

272.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly search for and produce records responsive to American Oversight's FOIA Requests.

**Count V – as to the DOGE Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

273.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

51

274.    American Oversight properly requested records within Defendants' possession, custody, and control.

275.    Defendant Department of Government Efficiency is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

276.    Defendant USDS is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

277.    Defendant U.S. DOGE Service Temporary Organization is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

278.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to American Oversight's FOIA Requests.

279.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA Requests.

280.    Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

281.    Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to American

Oversight's FOIA Requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    Declare that messages and communications sent through the Signal and Mattermost applications in the course of conducting agency business are agency records subject to the FRA;

(2)    Declare that messages and communications sent through the Google Docs chat feature in the course of conducting agency business are agency records subject to the FRA;

(3)    Declare that prior drafts of documents created in Google Docs in the course of conducting agency business are agency records subject to the FRA;

(4)    Declare that the failure to ensure such messages and communications are preserved, as required by 44 U.S.C. § 2911, comprises an unlawful removal of federal records in violation of the FRA;

(5)    Declare that Defendants have maintained an inadequate recordkeeping system under the FRA;

(6)    Declare that Defendants have violated their respective duties under the FRA and APA;

(7)    Order Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA, preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed materials to the extent possible;

(8)    Order Defendants to preserve all materials relating to Plaintiff's claims under the FRA;

(9)    Order Defendants to conduct a search reasonably calculated to uncover all records responsive to American Oversight's FOIA Requests;

(10)    Order Defendants to produce, within 20 days of the Court's order, any and all non-exempt records responsive to American Oversight's FOIA Requests, and *Vaughn* indexes of any responsive records withheld under claim of exemption;

(11)    Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA Requests;

(12)    Order Defendants to preserve all records potentially responsive to American Oversight's FOIA requests;

(13)    Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

(14)    Grant Plaintiff any other relief this Court deems appropriate.


Dated: April 23, 2025                              Respectfully submitted,

                                                   */s/ David Kronig*
                                                   David Kronig
                                                   D.C. Bar No. 1030649
                                                   Elizabeth Haddix
                                                   D.C. Bar No. 90019750
                                                   Joanna Swomley*
                                                   N.Y. Bar No. 1989763
                                                   AMERICAN OVERSIGHT
                                                   1030 15th Street NW, B255
                                                   Washington, DC 20005
                                                   (202) 897-3915
                                                   david.kronig@americanoversight.org

                                                   *Counsel for Plaintiff*

                                                   **Pro hac vice* application forthcoming*