UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN OVERSIGHT,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF GOVERNMENT<br>EFFICIENCY, et al.,<br><br>        Defendants. | Civil Action No. 25-1251 (RC) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

BACKGROUND .................................................................................................. 1

LEGAL STANDARD.......................................................................................... 8

ARGUMENTS...................................................................................................... 9

    I.      Plaintiff Fails to Plausibly Allege that USDS is an "Agency" .............................. 9

          A.      EOP Units that Lack Substantial Authority to Act Independently of the President, Whose Sole Purpose Is Instead to Advise or Assist the President, Are Not "Agencies" ................................................................. 10

          B.      USDS's Charter Documents Do Not Demonstrate Intent to Delegate the President's Own Authority to USDS ....................................................... 12

    II.     Counts I, II and III Fail to State A Claim Upon Which Relief Can Be Granted .. 20

          A.      Plaintiff Is Barred from Bringing a Broad Programmatic Attack on USDS's Recordkeeping Practices............................................................. 20

          B.      Plaintiff Fails to State a Claim Against NARA and Defendant Rubio related to the FRA's Referral Obligation.................................................... 22

          C.      Two of Plaintiff's FRA Claims Are Barred Under 5 U.S.C. § 704 Because FOIA Provides an Adequate Remedy ......................................................... 23

    III.    Defendants Musk and Davis Should Be Dismissed.............................................. 26

CONCLUSION...................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007) .......................................................................... 9

*AFL-CIO, Local 1592 v. Fed. Labor Rels. Auth.*,
   288 F.3d 1238 (10th Cir. 2002) ........................................................................ 26

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dep't of Labor*,
   766 F. Supp. 3d 105 (D.D.C. 2025) ................................................................ 19

*Animal Legal Def. Fund, Inc. v. Vilsack*,
   111 F.4th 1219 (D.C. Cir. 2024) ...................................................................... 21

*Armstrong v. Bush,* ("*Armstrong I*"),
   924 F.2d 282 (D.C. Cir. 1991) .............................................................. 1, 21, 24

*Armstrong v. EOP* ("*Armstrong II*"),
   1 F.3d 1274 (D.C. Cir. 1993) ............................................................................ 9

*Armstrong v. EOP* ("*Armstrong III*"),
   90 F.3d 553 (D.C. Cir. 1996) .......................................................... 11, 13, 14, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 8, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 8

*Bond v. United States*,
   572 U.S. 844 (2014) ........................................................................................ 11

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) .......................................................................... 8

*Cause of Action Inst. v. OMB*,
   10 F.4th 849 (D.C. Cir. 2021) ......................................................................... 10

*CEI v. Off. of Science & Tech. Policy*,
   82 F. Supp. 3d 228 (D.D.C. 2015) ................................................................. 24

*Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Office of Admin.*,
   566 F.3d 219 (D.C. Cir. 2009) .......................................... 12, 13, 16, 17, 25

*Citizens for Resp. & Ethics in Wash. v. Pruitt,*
 319 F. Supp. 3d 252 (D.D.C. 2018) ....................................................... 26

*Competitive Enter. Inst. v. Podesta,*
 643 F. Supp. 3d 121 (D.D.C. 2022) ............................................... 9, 14, 27

*Cotton v. Heyman,*
 63 F.3d 1115 (D.C. Cir. 1995) ......................................................... 13, 19

*CREW v. DHS*
 387 F. Supp. 3d 33 (D.D.C. 2019) ......................................................... 20

*CREW v. U.S. DOGE Serv.,*
 769 F. Supp. 3d 8 (D.D.C. 2025) ..................................................... 18, 19

*Democracy Forward Found. v. White House Off. of Am. Innovation,*
 356 F. Supp. 3d 61 (D.D.C. 2019) ......................................................... 25

*Democracy Forward Found. v. Pompeo,*
 474 F. Supp. 3d 138 (D.D.C. 2020) ................................................... 24, 26

*Feinman v. FBI,*
 713 F. Supp. 2d 70 (D.D.C. 2010) ......................................................... 24

*Hemphill v. Dep't of Treasury,*
 Civ. A. No. 21-0673 (TJK), 2021 WL 5038655 (D.D.C. Oct. 29, 2021) ............................ 3, 9

*Indiana v. Biden,*
 652 F. Supp. 3d 995 (S.D. Ind. 2023) ..................................................... 25

*Isasi v. Office of the Att'y Gen.,*
 594 F. Supp. 2d 12 (D.D.C. 2009) ......................................................... 27

*Jones v. U.S. Secret Serv.,*
 701 F. Supp. 3d 4 (D.D.C. 2023) ......................................................... 21

*Jud. Watch, Inc. v. Kerry,*
 844 F.3d 952 (D.C. Cir. 2016) ........................................................... 20

*Kissinger v. Reps. Comm. for Freedom of the Press,*
 445 U.S. 136 (1980) ................................................................ 9, 11, 20

*Legal Eagle, LLC v. Nat'l Sec. Council Records Access & Info. Sec. Mgmt. Directorate,*
 Civ. A. No. 20-1732 (RC), 2021 WL 1061222 (D.D.C. Mar. 18, 2021) ............................ 9, 10

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council,*
    811 F.3d 542 (2d Cir. 2016)................................................................. 10, 12, 25

*Marin Audubon Soc'y v. FAA,*
    121 F.4th 902 (D.C. Cir. 2024)........................................................... 17

*Martinez v. Bureau of Prisons,*
    444 F.3d 620 (D.C. Cir. 2006)............................................................ 27

*Metro. Council of NAACP Branches v. FCC,*
    46 F.3d 1154 (D.C. Cir. 1995)............................................................ 26

*Meyer v. Bush,*
    981 F.2d 1288 (D.C. Cir. 1993).......................................................... 11-15

*Pac. Legal Found. v. Council on Env't Quality,*
    636 F.2d 1259 (D.C. Cir. 1980).......................................................... 17, 25

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.,*
    758 F.3d 296 (D.C. Cir. 2014)............................................................ 12

*Rushforth v. Council of Econ. Advisers,*
    762 F.2d 1038 (D.C. Cir. 1985).......................................................... 12, 16, 25

*Sanders v. Kerry,*
    180 F. Supp. 3d 35 (D.D.C. 2016)....................................................... 3, 9

*Sanders v. U.S. Dep't of Just.,*
    No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011)...................... 27

*Sierra Club v. Andrus,*
    581 F.2d 895 (D.C. Cir. 1978)............................................................ 17, 18

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.,*
    264 F. Supp. 3d 262 (D.D.C. 2017)...................................................... 9

*Soucie v. David,*
    448 F.2d 1067 (D.C. Cir. 1971).......................................................... 11, 14, 17, 25

*U.S. Dep't of Just. v. Tax Analysts,*
    492 U.S. 136 (1989)......................................................................... 9

*U.S Doge Serv. v. CREW,*
    No. 24-1246, 2025 U.S. LEXIS 2202 (S. Ct. June 6, 2025).................... 13, 18

*Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ...................................................................... 9

*Wash. v. United States Doge Serv.*,
   Civ. A. No. 25-0511 (CRC), 2025 U.S. Dist. LEXIS 93437 (D.D.C. Apr. 15, 2025) .............. 21

Statutes

5 U.S.C. § 552 ................................................................................................... 1, 9
5 U.S.C. § 552(a)(4)(B) ............................................................................................ 10
5 U.S.C. § 552(f) ................................................................................................... 11
5 U.S.C. § 704 ..................................................................................................... i, 24
5 U.S.C. § 706 ................................................................................................. 20, 24
5 U.S.C. § 3161 ...................................................................................................... 3
42 U.S.C. § 4342 .................................................................................................... 18
42 U.S.C. § 6612 .................................................................................................... 18
44 U.S.C. § 2201(2)(B) ............................................................................................. 10
44 U.S.C. § 2209 .................................................................................................... 23
44 U.S.C. § 2911 .................................................................................................... 23
44 U.S.C. § 2902 ..................................................................................................... 1
44 U.S.C. § 3106 ................................................................................................ 22, 26
44 U.S.C. § 3101 ................................................................................................. 1, 2

**Rules**

Federal Rules of Civil Procedure 12(b)(1) ...................................................................... 1
Rule 12(b)(6) ............................................................................................... 8, 9, 20, 28

**Regulations**

36 C.F.R. § 1230.3 ................................................................................................. 24

**Other Authorities**

1974 U.S.C.C.A.N. 6285 ........................................................................................... 11

Executive Order 14,158 ............................................................................................. 3

Executive Order 14,170 ......................................................................................... 4, 16

Executive Order 14,210 ......................................................................................... 5, 16

Executive Order 14,218 ......................................................................................... 5, 16

Executive Order 14,219 ............................................................................................. 6

Executive Order 14,222 ....................................................................................... 6, 7, 16

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), the United States DOGE Service, United States DOGE Service Temporary Organization, Elon Musk, Steven Davis, Amy Gleason, Marco A. Rubio, and National Archives and Records Administration (collectively, the "Defendants"), by and through undersigned counsel, respectfully move to dismiss Plaintiff American Oversight's Complaint.[1]

Plaintiff's Complaint purports to bring challenges that fit into two buckets. First, Plaintiff argues that Defendants' use of certain media violates the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq. Second, Plaintiff brings claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel Defendants to respond to Plaintiff's FOIA request. However, Plaintiff's claims uniformly fail because the United States DOGE Service ("USDS") and its affiliated Defendants are not "agencies" subject to FOIA or the FRA. And even if USDS were an agency, two of Plaintiff's FRA claims fail to state a claim. As such, this Court should dismiss Plaintiffs' Complaint with prejudice.

## BACKGROUND

### I.   The Federal Records Act and the Presidential Records Act

The Federal Records Act ("FRA") "governs the creation, management and disposal of federal records." *Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282, 284 (D.C. Cir. 1991). To ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government" while "prevent[ing] the creation of unnecessary records," 44 U.S.C. § 2902, the FRA defines federal records as "all recorded information, regardless of form or characteristics, made or

---

[1]     Plaintiff also purports to sue the "United States Department of Government Efficiency." There is no institution by that name. The United States Department of Government Efficiency refers to a political initiative created by the President that is advanced by the United States DOGE Service in the Executive Office of the President and agency DOGE teams selected by agency leadership and comprised by agency personnel.

received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them." *Id.* § 3301(a)(1)(A). Under the FRA, agencies must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." *Id.* § 3101. It also requires that agencies "establish safeguards against the removal or loss of records." *Id.* § 3105.

The Presidential Records Act ("PRA") imposes recordkeeping requirements on the President and Vice President rather than on agencies. *Id.* § 2201(2)(B)(i). The PRA defines presidential records as "documentary materials . . . created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201(2). It excludes records that are of "purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201(2)(B)(ii), (3). The PRA requires the President to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records." *Id.* § 2203(a).

## II.     The Establishment of USDS and Its Limited Advisory Responsibilities

Shortly after President Trump took office on January 20, 2025, he signed a series of Executive Orders and a presidential memorandum concerning USDS. Because the Executive Orders and memorandum are dispositive of USDS's FOIA status, Defendants discuss a representative sampling of them individually here.[2]

***Executive Order 14,158:*** On January 20, 2025, President Trump signed Executive Order 14,158, which redesignated the previously established United States Digital Service as the U.S. DOGE Service and charges it with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems."  90 Fed. Reg. 8441 (Jan. 20, 2025), §§ 3(a), 4 ("EO" or "Order"); *see* Compl. (ECF 1) ¶ 58.  The USDS sits within the Executive Office of the President ("EOP").  *See* EO 14,158, § 3(a).  The EO further establishes a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026.  *Id.* § 3(b); *see* Compl. ¶ 59.  "The U.S. DOGE Service Temporary Organization shall be headed by the USDS Administrator and shall be dedicated to advancing the President's 18-month DOGE agenda."  EO 14,158, § 3(b); *see* Compl. ¶ 59.

EO 14,158 expressly distinguishes between USDS and other EOP components, on the one hand, and "Agencies" on the other.  The term "Agency" in the EO explicitly excludes "the Executive Office of the President or any components thereof," including USDS.  EO 14,158, §§ 2(a), 3(a).  However, "[i]n consultation with USDS, each Agency Head shall establish *within*

---

[2]     The Court may consider these materials with this Rule 12(b)(6) motion because they: (i) are referenced in the Complaint and central to Plaintiff's claims; and/or (ii) are "public documents of which a court may take judicial notice."  *Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016) (cleaned up); *see Hemphill v. Dep't of Treasury*, Civ. A. No. 21-0673 (TJK), 2021 WL 5038655, at *3 (D.D.C. Oct. 29, 2021), *aff'd*, No. 21-5261, 2022 WL 1701529 (D.C. Cir. May 25, 2022).

their respective Agencies a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days" of the EO to "implement[]" the President's agenda. *Id.* §§ 1, 3(c) (emphasis added); *see* Compl. ¶ 60. The EO directs Agency Heads to select the DOGE Team members "in consultation with the USDS Administrator" and to "ensure that DOGE Team Leads coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." EO 14,158, § 3(c).

Section 4 of the EO tasks the USDS Administrator with "commenc[ing] a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." *Id.* § 4(a); *see* Compl. ¶ 58. The EO directs Agency Heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems," while also directing that "USDS shall adhere to rigorous data protection standards." EO 14,158, § 4(b). In other words, agency DOGE Teams composed of agency personnel who are selected by agency leadership and report up agency supervisory chains "take all necessary steps" within their agencies and "coordinat[e]" with USDS on the President's "DOGE Agenda." *Id.* §§ 1, 3(c), 4(b).

***Executive Order 14,170:*** Also on January 20, President Trump signed EO 14,170, *Reforming the Federal Hiring Process and Restoring Merit to Government Service*, 90 Fed. Reg. 8621 (Jan. 20, 2025). That EO directs the Assistant to the President for Domestic Policy, "in consultation with the Director of the Office of Management and Budget ["OMB"], the Director of the Office of Personnel Management ["OPM"], and the Administrator of" USDS to "develop and send to agency heads a Federal Hiring Plan that brings to the Federal workforce only highly skilled Americans dedicated to the furtherance of American ideals, values, and interests." *Id.* § 2(a). The

EO further states that the resulting federal hiring plan "shall provide specific best practices for the human resources function in each agency, which each agency head shall implement, with advice and recommendations as appropriate from" USDS. *Id.* § 2(d).

*Executive Order 14,210:* On February 11, 2025, the President issued EO 14,210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669 (Feb. 11, 2025); *see* Compl. ¶ 62. EO 14,210 directs OMB to submit a plan to reduce the size of the Federal Government workforce, EO 14,210, § 3(a), and directs Agency Heads to, among other things, "promptly undertake preparations to initiate large-scale reductions in force." *Id.* § 3(c). It further tasks each "DOGE Team Lead"—defined as "the leader of the Department of Government Efficiency (DOGE) Team at each agency, as defined in EO 14158," *id.* § 2(c)—with several limited responsibilities. First, a DOGE Team Lead consults with each Agency Head on establishing a hiring plan. *See id.* § 3(b) ("Each Agency Head shall develop a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas."). Second, under such hiring plan, "new career appointment hiring decisions shall be made in consultation with the agency's DOGE Team Lead, consistent with applicable law." *Id.* § 3(b)(i). Third, "[t]he agency shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." *Id.* § 3(b)(ii). Fourth, "[e]ach DOGE Team Lead shall provide the" USDS Administrator "with a monthly hiring report for the agency." *Id.* § 3(b)(iii).

*Executive Order 14,218:* On February 19, 2025, President Trump issued EO 14,218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025). EO 14,218 directs the Director of OMB and the Administrator of USDS, in coordination with the Assistant to the President for Domestic Policy, to "identify all other sources of Federal funding for illegal

aliens[,]" and "recommend additional agency actions to align Federal spending with the purposes of this order, and, where relevant, enhance eligibility verification systems." *Id.* § 2(b)(i)–(ii).

**Executive Order 14,219:** Also on February 19, President Trump issued EO 14,219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, 90 Fed. Reg. 10583 (Feb. 19, 2025). Under this EO, "Agency heads shall, in coordination with their DOGE Team Leads and the Director of [OMB], initiate a process to review all regulations subject to their sole or joint jurisdiction for consistency with law and Administration policy" and lists certain classes of regulations that Agency Heads must identify. *Id.* § 2. "Additionally, agency heads shall consult with their DOGE Team Leads and the Administrator of [the Office of Information and Regulatory Affairs] on potential new regulations as soon as practicable." *Id.* § 4. EO 14,219 does not mention USDS or assign any duties to it.

**Executive Order 14,222:** Executive Order 14,222, *Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, 90 Fed. Reg. 11095 (Feb. 26, 2025), states that "[e]ach Agency Head shall, with assistance as requested from the agency's DOGE Team Lead," among other steps "build a centralized technological system within the agency to seamlessly record every payment issued by the agency." *Id.* § 3(a); *see also id.* §§ 3(a)(i), (3)(b), 3(c), 3(d)(i) (identifying additional steps to be taken by agency heads in consultation with the agency's DOGE Team Lead). The EO also directs each DOGE Team Lead to provide the Administrator with "a monthly informational report on contracting activities[,]" *id.* § 3(d)(ii), and "to the extent consistent with law, provide the Administrator with a monthly informational report listing each agency's justifications for non- essential travel[,]" *id.* § 3(e).

**Hiring Freeze Presidential Memorandum:** In addition to these Executive Orders, a January 20, 2025, presidential memorandum directs the OMB Director, "in consultation with" the

Office of Personnel Management ("OPM") Director and USDS Administrator, to "submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition." *Hiring Freeze*, The White House (Jan. 20, 2025), *available at* https://www.whitehouse. gov/presidentialactions/2025/01/hiring-freeze/. The memorandum further states that the hiring freeze directed by the memorandum remains in place for the Internal Revenue Service ("IRS") "until the Secretary of the Treasury, in consultation with the Director of OMB and the Administrator of USDS, determines that it is in the national interest to lift the freeze." *Id.*

### III.    This Litigation

Plaintiff filed this matter on April 23, 2025, and purports to sue: (1) U.S. Department of Government Efficiency ("DOGE"); (2) U.S. DOGE Service ("USDS"); (3) U.S. DOGE Service Temporary Organization ("USDSTO"); (4) Elon Musk in his official capacity as head of the Department of Government Efficiency; (5) Steven Davis in his official capacity as head of the Department of Governmental Efficiency; (6) Amy Gleason in her official capacity as Acting Administrator of the U.S. DOGE Service, (7) Marco A. Rubio in his official capacity as Acting Archivist of the United States; and (8) National Archives and Records Administration ("NARA") (collectively "Defendants"). *See* Compl. ¶¶ 12-22. The case concerns three FOIA requests that Plaintiff has made, as well as Plaintiff's concerns about Defendants' record keeping.

On January 22, 2025, Plaintiff sent letters to Elon Musk and various executive branch agencies to remind them about preserving federal records relating to DOGE. *See* Compl. ¶ 188. Since January 20, 2025, Plaintiff submitted at least thirty FOIA requests to DOGE. *See id.* ¶ 199. Plaintiff has requested records including communications from USDS officials, internal memoranda, and informal policy guidelines. *See id.* ¶¶ 204, 207, 211, 213. Plaintiff "will continue

to submit FOIA requests to DOGE." *Id.* ¶ 200. Plaintiff complains that Defendants have failed to respond to their FOIA requests. *Id.* Counts IV-V.

Plaintiff also alleges that "DOGE's use of Signal and Google Docs to conduct official government business violates its record-keeping obligations because DOGE has not established mechanisms that ensure federal records created on these platforms are fully preserved on government recordkeeping systems." Compl. ¶ 5. Plaintiff seeks "to prevent the unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover federal records created through unauthorized use of Signal and Google Docs." *Id.* ¶ 5.

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move for dismissal on the ground that the complaint has failed "to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint containing only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Id.* In addition, the presumption of truth accorded factual allegations at this stage does not apply to legal conclusions in a complaint, including those "couched" as factual allegations. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

On a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by

the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); *accord Hemphill*, 2021 WL 5038655, at *3. A court may also consider judicially noticeable documents or facts without converting the motion to dismiss into a motion for summary judgment. *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 264 (D.D.C. 2017); *Sanders*, 180 F. Supp. 3d at 41; *see also Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." (citation omitted)).

## ARGUMENTS

### I.    Plaintiff Fails to Plausibly Allege that USDS is an "Agency"

FOIA's record disclosure requirements apply only to federal "agencies." *Legal Eagle, LLC v. Nat'l Sec. Council Records Access & Info. Sec. Mgmt. Directorate*, Civ. A. No. 20-1732 (RC), 2021 WL 1061222, at *3 (D.D.C. Mar. 18, 2021), *aff'd*, No. 24-5230, 2025 WL 350040 (D.C. Cir. Jan. 30, 2025); *accord Competitive Enter. Inst. v. Podesta*, 643 F. Supp. 3d 121, 126 (D.D.C. 2022). That is, FOIA requires "[e]ach agency" to make available to the public non-exempt agency records, 5 U.S.C. § 552, and "confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)); *see also Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("federal jurisdiction [under FOIA] is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records'" (quoting 5 U.S.C. § 552(a)(4)(B)). If a document is not a federal record created by an agency, and is instead a presidential record covered by the PRA, that document is not subject to FOIA. *Armstrong v. EOP ("Armstrong II")*, 1 F.3d

1274, 1292 (D.C. Cir. 1993). The PRA specifies that its definition of official records of an agency is the same as that used in FOIA and that the statutes are mutually exclusive. *See* 44 U.S.C. § 2201(2)(B). Put simply, if a record is not an official record of an agency, it is not subject to the FRA or FOIA.

Whether an entity is an "agency" is properly resolved on a motion to dismiss pursuant to Rule 12(b)(6). *See Legal Eagle*, 2021 WL 1061222, at \*3–4; *Cause of Action Inst. v. OMB*, 10 F.4th 849, 854 (D.C. Cir. 2021). "Where, as here, the defendant is a unit within the Executive Office of the President," a plaintiff's "conclusory pleading of agency status [i]s insufficient." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016); *see Iqbal*, 556 U.S. at 681 ("conclusory" allegations and "bare assertions" "not entitled to be assumed true"). Instead, "[t]o state a claim for relief under 5 U.S.C. § 552(a)(4)(B), a plaintiff must plausibly allege, among other things, that the defendant is an agency subject to the FOIA." *Main St. Legal Servs.*, 811 F.3d at 567. Plaintiff fails to meet that burden here.

### A. EOP Units that Lack Substantial Authority to Act Independently of the President, Whose Sole Purpose Is Instead to Advise or Assist the President, Are Not "Agencies"

As amended in 1974, FOIA defines the term "agency" to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). Although the text references the "Executive Office of the President," the term "agency" does not include every component in that office, but only components that fall within the specified list items ("department," "corporation," or "other establishment"). An EOP component that does not qualify as a department, corporation, or establishment is not subject to FOIA. That understanding is consistent with the term being defined ("agency"), which does not naturally refer to entities that

lack formal structure or independent authority, such as the White House Office, the National Security Council, or the Office of Administration. *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 861 (2014) (noting that it is reasonable to consider the ordinary meaning of a defined term in interpreting the scope of a statutorily provided definition).

Accordingly, the Conference Committee Report accompanying the 1974 amendments to FOIA, which added the reference to the "Executive Office of the President," explains that the term "Executive Office of the President" is "not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." S. Rep. No. 93-1200, at 15 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6293; H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.) (same). Citing this "unambiguous" legislative history, the Supreme Court held that the "'Executive Office' does not include the Office of the President," and that "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency' under the FOIA." *Kissinger*, 445 U.S. at 156 (quoting H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.)); *see also Meyer v. Bush*, 981 F.2d 1288, 1293 n.3 (D.C. Cir. 1993) (FOIA excludes "at least those approximately 400 individuals employed in the White House Office" who are the President's immediate personal staff).

The legislative history also makes clear that Congress intended to codify the D.C. Circuit's decision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). *See* 1974 U.S.C.C.A.N. at 6293 ("[w]ith respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067"); *Armstrong v. EOP ("Armstrong III")*, 90 F.3d 553, 558 (D.C. Cir. 1996) ("That the Congress intended to codify *Soucie* is clear enough."); *accord Meyer*, 981 F.2d at 1291. *Soucie* considered whether the Office of Science and Technology

("OST"), an EOP component now known as the Office of Science and Technology Policy ("OSTP"), was an "agency" subject to FOIA. The D.C. Circuit held that it was, because, beyond its duties of advising the President, OSTP also had the "independent function of evaluating federal [scientific] programs." 448 F.2d at 1075. When OSTP inherited that function from one of its predecessor organizations, the court noted, both Congress and the President contemplated that Congress would "retain control over information on federal programs accumulated by the OST, despite any confidential relation between the Director of the OST and the President." *Id.* OSTP was found to be a FOIA agency because it did not have the "sole function" of advising and assisting the President and instead had "substantial independent authority in the exercise of specific functions." *Id.* at 1073. Namely, OSTP had "independent authority to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *Citizens for Resp. & Ethics in Wash. ("CREW") v. Office of Admin.*, 566 F.3d 219, 223 (D.C. Cir. 2009); *see also Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1041 (D.C. Cir. 1985) ("OST could take direct action and thus was deemed to be an administrative agency"); *Meyer*, 981 F.2d at 1292 ("OST was a FOIA agency precisely because it could act directly and independently beyond advising and assisting the President.").

### B.    USDS's Charter Documents Do Not Demonstrate Intent to Delegate the President's Own Authority to USDS

Plaintiff's conclusory allegations regarding USDS's status (Compl. ¶¶ 2-3, 12-14), cannot state a claim. *Main St. Legal Servs.*, 811 F.3d at 567; *see also, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (courts "do not accept as true . . . the plaintiff's legal conclusions"). Instead, the Court should evaluate whether USDS "lacks substantial independent authority and is therefore not an agency under FOIA." *CREW*, 566 F.3d at 224. Courts answer that question by discerning an entity's (here, USDS's) legal authority under the governing

statutes, regulations, or executive orders and thereby identifying the functions that the USDS "[i]s authorized" to perform. *Cotton v. Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995); *see id.* at 1122 (the "important consideration regarding agency status" is "whether the relevant entity had 'any authority in law to make decisions'" (citation omitted)). The authority must be formal, as "any inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." *U.S. Doge Serv. v. CREW*, No. 24-1246, 2025 U.S. LEXIS 2202, *1 (S. Ct. June 6, 2025).

In certain contexts, the D.C. Circuit has applied a three-factor test to determine whether an entity wields "substantial independent authority," which looks at: (1) "how close operationally [the entity] is to the President," (2) "whether it has a self-contained structure," and (3) "the nature of its delegated authority." *CREW*, 566 F.3d at 222 (cleaned up). The test was first articulated in *Meyer*, where the D.C. Circuit held that a group of senior advisers to the President working within the EOP as the Task Force on Regulatory Relief did not constitute an "agency" under FOIA, even though the group "evaluated agency regulatory efforts and had authority to provide some direction over agency rulemaking." 981 F.2d at 1292. The D.C. Circuit later applied the test to hold that the National Security Council, which is headed by the President and is authorized to provide guidance and policy direction for national security issues, is not an "agency" subject to FOIA. *Armstrong III*, 90 F.3d at 567; *id.* at 558 ("These three factors are not necessarily to be weighed equally; rather, each factor warrants consideration insofar as it is illuminating in the particular case.").

To be clear, the Court is not required to apply the three-factor test in resolving USDS's agency status. This is because "common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President." *CREW*, 566 F.3d at 222 (quotations omitted) (not analyzing

*Meyer* factors); *see also Competitive Enter.*, 643 F. Supp. 3d at 127 (the "lodestar" of the Court's analysis remains whether the entity in question exercises "'substantial independent authority'" (quoting *Armstrong III*, 90 F.3d at 557–58)).[3] In any case, whether considered individually or "conglomerated," *Competitive Enter.*, 643 F. Supp. 3d at 127 n.2, the three factors underscore that USDS lacks substantial independent authority and is thus not an "agency" subject to FOIA.

     i.  *Operational Proximity*

   The January 20, 2025, Executive Order establishing USDS makes clear that USDS is operationally close to the President. EO 14,158 reorganized and renamed the United States Digital Service "as the United States DOGE Service (USDS)," and established it "in the Executive Office of the President." EO 14,158, § 3(a). The EO further establishes "a USDS Administrator in the Executive Office of the President who shall report to the White House Chief of Staff." *Id.* § 3(b). The EO explicitly distinguishes USDS and the USDS Administrator, on the one hand, from "Agencies" (which are defined not to include the EOP or components thereof) and "DOGE Teams" within the respective Agencies, on the other. *Id.* §§ 2(a), 3(c).

     ii.  *Lack of Self-Contained Structure*

   Although least important of the three factors, the second factor also favors the conclusion that USDS is not an "agency" because it is a non-statutory entity that would not be able to exercise independent authority if so delegated. *See Armstrong III*, 90 F.3d at 558-560 ("[W]hile a definite structure may be a prerequisite to qualify as an establishment within the executive branch . . . not

---

[3]   The D.C. Circuit has suggested the test need be applied only where the entity at issue supervises other Executive Branch components. *See Armstrong III*, 90 F.3d at 558 (test is "relevant to determining whether those who both advise the President *and supervise others in the Executive Branch* exercise 'substantial independent authority' and hence should be deemed an agency subject to the FOIA" (emphasis added)); *Meyer*, 981 F.2d at 1293 ("when we apply *Soucie* to those who help the President *supervise others in the executive branch*, we think it is necessary to focus on three interrelated factors" (emphasis added)). USDS lacks such supervisory authority.

every establishment is an agency under the FOIA."; even if an office "has a structure sufficiently self-contained that the entity *could* exercise substantial independent authority . . . [t]he remaining question is whether the [entity] does *in fact* exercise such authority." (cleaned up and citations omitted)); *see also Meyer*, 981 F.2d at 1296 ("FOIA, by declaring that only 'establishments in the executive branch' are covered, 5 U.S.C. § 552(e), requires a definite structure for agency status.").

    *iii.*       *Nature of Delegated Authority*

Concerning the third factor (nature of the delegation), as the Executive Orders and presidential memorandum collectively demonstrate, USDS has a limited set of advisory responsibilities, none of which even arguably involves the authority to direct agencies or other components of the executive branch. Specifically, according to its charter documents, USDS has the following tasks and responsibilities, *inter alia*:

- The USDS Administrator is to commence a software modernization initiative and "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." EO 14,158, § 4(a).

- The USDS Administrator should, "to the maximum extent consistent with law," have "full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b).

- USDS may provide "advice and recommendations as appropriate" concerning implementation of the federal hiring plan developed by the Assistant to the President for Domestic Policy. EO 14,170, § 2(d).

- The Administrator of USDS, with the OMB Director and in coordination with the Assistant to the President for Domestic Policy, is directed to identify sources of federal funding for illegal aliens and make various recommendations. EO 14,218, § 2(b)(i)–(ii).

In addition, according to the charter documents, agencies and other entities are directed to "coordinate" or "consult" with USDS as follows, *inter alia*:

- Agency Heads are directed to establish an Agency DOGE Team within their respective Agencies "in consultation with USDS," and to select DOGE Team members "in consultation with the USDS Administrator." EO 14,158, § 3(c).

- Agency DOGE Teams—which are employees of the respective agencies—are tasked generally with "coordinat[ing] their work with USDS," while "advis[ing] their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* § 3(c).

- USDS receives from each Agency DOGE Team Lead "a monthly informational report on contracting activities," EO 14,222, § 3(d)(ii), as well as "to the extent consistent with law," "a monthly informational report listing each agency's justifications for nonessential travel," *id.* § 3(e).

- The Assistant to the President for Domestic Policy is directed to develop a federal hiring plan "in consultation with" the USDS Administrator (as well as the Directors of OMB and OPM). EO 14,170, § 2(a).

- USDS receives monthly hiring reports from each DOGE Team Lead. EO 14,210, § 3(b)(iii).

- The OMB Director is directed to "consult[]" with the USDS Administrator (as well as the OPM Director) to submit a plan to reduce the size of the federal workforce. *See Hiring Freeze*, The White House (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/hiring-freeze/.

- The Secretary of the Treasury is directed to "consult[]" with the USDS Administrator (as well as the OMB Director) in determining whether it is in the national interest to lift the current IRS hiring freeze. *Id.*

None of the limited responsibilities assigned to USDS—which are purely advisory and consultative in nature—can plausibly be characterized as "authority" delegated to USDS, let alone authority that is independent of the President. *Accord, e.g.*, *CREW*, 566 F.3d at 224 (Office of Administration not agency under FOIA because "everything the Office of Administration does is directly related to the operational and administrative support of the work of the President and his EOP staff"); *Armstrong III*, 90 F.3d at 553 (National Security Council ("NSC") not a FOIA agency because neither the President nor Congress delegated any function to the NSC other than that of advising and assisting President); *Rushforth*, 762 F.2d at 1043 (Council of Economic Advisers ("CEA") not a FOIA agency for, while CEA has duties prescribed by statute (unlike USDS), each of its enumerated statutory duties is directed at providing advice and assistance to the President,

and neither the governing statute nor any executive order gives CEA any regulatory power); *CREW*, 2025 U.S. LEXIS 2202, at *1 ("any inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade").

USDS's status as a non-agency is even more clear when one contrasts the EOP components that the D.C. Circuit has held to be FOIA agencies. In *Soucie*, as discussed, the D.C. Circuit held that OSTP was a FOIA agency because it had independent authority "to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships." *CREW*, 566 F.3d at 223 (discussing *Soucie*, 448 F.2d at 1073–75). OMB is a FOIA agency because of its statutory duty to provide budget information to Congress, along with "numerous other statutory duties." *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979); *see also id*. at 902 n.25 (noting OMB's authority to "assemble, correlate, revise, reduce, or increase the requests for appropriations of the several departments or establishments"). And the Council on Environmental Quality ("CEQ") has been deemed a FOIA agency based on the determination that it had independent authority to coordinate federal environmental regulatory programs, issue guidelines for preparing environmental impact statements, and promulgate regulations—legally binding on the agencies[4]—for implementing procedural provisions of the National Environmental Policy Act. *See Pac. Legal Found. v. Council on Env't Quality*, 636 F.2d 1259, 1262–63 (D.C. Cir. 1980).

USDS is nothing like the EOP components found to have agency status. Unlike OMB's significant statutory responsibilities, USDS has no statutory responsibilities (and indeed, no

---

[4]    *But see Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 908 (D.C. Cir. 2024) (holding that the "CEQ regulations, which purport to govern how all federal agencies must comply with the National Environmental Policy Act, are *ultra vires*"), *reh'g en banc denied*, 2025 WL 374897 (D.C. Cir. Jan. 31, 2025), *mandate stayed by* 129 F.4th 869 (Feb. 28, 2025). Defendants do not address the merits of that decision here.

specific statutory recognition). And unlike the heads of OMB, CEQ, and OSTP, the USDS Administrator is not a position that requires Senate confirmation; indeed, it is not even a statutorily created position. *Compare Sierra Club*, 581 F.2d at 902 (noting that "Congress signified the importance of OMB's power and function, over and above its role as presidential advisor, when it provided, also by amendment in 1974, for Senate confirmation of the Director and Deputy Director of the OMB"); *see also* 42 U.S.C. § 4342 (Senate confirmation of the head of CEQ); 42 U.S.C. § 6612 (same for head of OSTP). USDS has no power (unlike CEQ) to issue regulations, let alone regulations that apply throughout the executive branch. Nor does USDS have powers analogous to those OSTP has over research projects, scholarships, and scientific research programs.

Defendants recognize that another Judge in this District found that USDS "likely" had agency status under FOIA—at least, as the Court emphasized, "on th[e] preliminary record" before it when issuing a preservation order pending litigation. *CREW v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 23 (D.D.C. 2025) ("*CREW FOIA* case"), *reconsideration denied*, 2025 WL 863947 (Mar. 19, 2025). That decision, as it acknowledged, relied heavily on hearsay media reports referring to "DOGE" generally, not USDS in particular. *Id.* at 26. The decision also placed substantial weight on the phrasing of EO 14,158 in describing the purpose of "the President's 'Department of Government Efficiency'" as to "implement the President's DOGE agenda." *Id.* at 23. But that verbiage appears in prefatory language in the EO, and the "Department of Government Efficiency" includes both USDS *and* agency DOGE Teams, the latter of which are comprised of agency personnel reporting up agency chains and responsible for implementing the President's DOGE agenda within their respective agencies. This decision was further undermined when the Supreme Court granted the government's application for a stay. *CREW*, 2025 U.S. LEXIS 2202 (S. Ct. June 6, 2025). And in any event, the abstract notion of "implement[ing]" a policy "agenda" does not

equate to wielding substantial independent authority, particularly where the more specific responsibilities attributed to USDS are all advisory and consultative in nature. *See id*.; *see also Cotton*, 63 F.3d at 1121, 1122.

In addition, EO 14,158 makes clear that its stated purpose is to be carried out by the totality of the "DOGE Structure," which includes not only USDS and USDSTO, but also the DOGE Teams that are in agencies and are comprised of agency personnel. EO 14158, § 3(a)–(c). To the extent any part of the "DOGE Structure" plays an implementation role, the EOs indicate that it is the agency DOGE Teams that do so, advising and consulting with agency heads on implementation actions within agencies, as discussed above. The opinion in the *CREW FOIA* case failed to appreciate this distinction. *E.g.*, 769 F. Supp. 3d at 24 (describing EO that "grants the USDS Team Lead the power to keep vacant career positions open unless an agency overrides their decision"); *id.* at 25 (including "DOGE teams" as part of USDS's "defined staff" rather than part of an agency's staff). The authorities or activities of DOGE Teams are  irrelevant to the question of whether USDS itself is an "agency." The fact that DOGE Teams are already part of the agencies where they are embedded means that their records are already governed by the agencies' FRA requirements and are subject to FOIA to the same extent any other records within those agencies might be. In sum, this Court should not follow the *CREW FOIA* decision.[5] Because Plaintiff has

---

[5]     Plaintiff cites a preliminary ruling of another Judge in this District on a motion for temporary restraining order to restrain the Department of Labor, the Department of Health and Human Services, the Consumer Financial Protection Bureau, and the USDS entities from providing any person outside the three agencies—namely, DOGE personnel—with access to records systems containing personal information or data. Compl. ¶ 63 (citing *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dep't of Labor*, 766 F. Supp. 3d 105, 112-13 (D.D.C. 2025) (concluding that "[P]laintiffs have not shown a substantial likelihood that USDS is not an agency" for purposes of the Economy Act of 1932 and therefore not permitted consistent with the Privacy Act to access agency's record systems)). But that court, which addressed the issue in an expedited posture, in a different substantive context, misinterpreted the Order establishing USDS, similar to the Court in the *CREW FOIA* case. *Id.*

not met its burden to plausibly allege that USDS is an agency, the Court should dismiss Plaintiff's

Complaint against the USDS Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Counts I, II and III Fail to State A Claim Upon Which Relief Can Be Granted

### A.    Plaintiff Is Barred from Bringing a Broad Programmatic Attack on USDS's Recordkeeping Practices

As stated above, USDS is not subject to the FRA, and the entire Complaint should be

dismissed on that basis. However, Counts I and II can also be dismissed to the extent they challenge

USDS's recordkeeping practices as a whole because that is not a permissible FRA claim. The D.C.

Circuit has held that the FRA "does not contain an express or implied private right of action."

*Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (citing *Kissinger*, 445 U.S. at 148-

50). Accordingly, a plaintiff seeking to assert a violation of the FRA must rely on the causes of

action set forth in the APA, 5 U.S.C. § 706. And the APA limits a plaintiff to challenging a  final

"discrete agency action"; it cannot simply mount a "'broad programmatic attack' on an agency's

compliance with a statutory scheme." *CREW v. DHS*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019),

*amended*, Civ. A. No. 18-2473 (RC), 2019 WL 11307644 (D.D.C. July 22, 2019).

The upshot of these limitations is that the only permissible challenges are those challenging

a specific recordkeeping guideline or directive as somehow inadequate under the FRA or that

claim that agency heads or NARA violated their non-discretionary duties to initiate an enforcement

action through the Attorney General. For example, in *Armstrong I*, the court allowed an APA

claim that an agency's "recordkeeping guidelines and directives do  not  adequately  describe  the

material  that  must  be  retained  as  'records'  under  the  FRA." *Armstrong I*, 924 F.2d at 292.

Here, Plaintiff's FRA-related claims are generally challenging Defendant's recordkeeping,

none of which is sufficiently limited to comport with the restrictions of *Armstrong* or the APA.

Rather than challenging a discrete written guideline, Plaintiff purports to challenge the entire record

management practice[6] as "inadequate, arbitrary, [and] capricious," because USDS uses "ephemeral messaging systems," Compl. ¶¶ 232, 249, and due to the alleged wholesale failure to "preserve and recover records" under the FRA, *id.* ¶¶ 238, 254; Plaintiff seeks generally to compel USDS to comply with the FRA's and FOIA's statutory schemes. Per Plaintiff's request for relief, it asks the Court to declare that "Defendants have maintained an inadequate recordkeeping system under the FRA" and seeks an order for "preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed materials to the extent possible." *Id.*

Such broad, programmatic relief, which calls on the Court to undertake an ongoing oversight role to implement wholesale improvement of government practices, is prohibited under the APA and far outside the scope of the limited review that *Armstrong I* permits. *See, e.g., Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1232 (D.C. Cir. 2024) (Katsas, J., concurring) (APA requires plaintiffs "to focus their claims on 'discrete' as opposed to ' programmatic' agency actions"); *Jones v. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023) (dismissing claim alleging "ongoing 'failure to properly train' officers," because APA did not allow programmatic challenge seeking "wholesale improvement" by court decree of an alleged "ongoing unlawful practice").

---

[6]     USDS has continually emphasized their preservation efforts. USDS considers themselves subject to the PRA, as reflected in Defendant Gleason's declaration in prior litigation, *CREW v. U.S. Doge Serv.*, Civ. A. No. 25-0511 (CRC), 2025 U.S. Dist. LEXIS 93437 (D.D.C. Apr. 15, 2025), ECF No. 24-2, and its records retention policy, *see Am. Oversight v. Dept. of Govt. Efficiency*, Civ. A. No. 25-0409 (BAH), ECF No. 13-2 (USDS Records Retention Policy); Compl. ¶¶ 183, 186. USDS's Records Retention Policy instructs employees to preserve all work-related records and communications regardless of format, including communications exchanged on private messaging platforms such as Signal. *See* USDS Records Retention Policy. Employees are instructed to "[d]isabl[e] auto-delete features on any such messaging services" to "help with retention and compliance." *Id.* Employees are advised to use government-issued devices for work-related communications and forward to their government accounts any work-related messages that they receive on personal email or other personal messaging accounts. *Id.*

Plaintiff does not ask the Court to review a specific recordkeeping guideline or directive. It asks the Court to say that the use of messaging systems Plaintiff apparently does not trust falls under the FRA and that Defendants must follow the FRA. An order compelling such relief would involve ongoing programmatic oversight—the very type of claim that is prohibited under the APA.

### B.    Plaintiff Fails to State a Claim Against NARA and Defendant Rubio related to the FRA's Referral Obligation.

Count III alleges that NARA and Acting Archivist Rubio violated their non-discretionary duty to initiate an enforcement action through the Attorney General for the unlawful removal of records. Compl. at 50. However, Plaintiff fails to plausibly allege an essential element of that claim. NARA's non-discretionary referral duty arises only if the Archivist knows or has reason to know about the unlawful removal of records by USDS officials. *See* 44 U.S.C. § 3106. The Complaint alleges in conclusory terms that NARA and Archivist Rubio were on such notice of unlawful removals, Compl. ¶ 261, but the January 22, 2025, letter from Plaintiff on which the Complaint relies as evidence of such notice contradicts this claim.

Curiously, the Complaint attaches only NARA's response to the January 22, 2025, letter, but the letter itself, which the Complaint incorporates by reference, *see* Compl. ¶ 188, provides the only textual evidence of what Plaintiff stated to NARA. *See* Defs.' Ex. A. Fatal to Plaintiff's FRA enforcement claim, the January 22, 2025, letter relies exclusively on reports that DOGE officials use Signal to communicate without asserting any evidence that the platform was used unlawfully. *Id.* The letter mentions that Signal has automatic deletion capabilities but does not provide any evidence stating that such functionality had been engaged by government officials. *Id.* Rather, Plaintiff's letter speaks in terms of "concerns" that the Signal records "may not have been" appropriately preserved and the "possibility" that USDS was using ephemeral messaging applications in violation of the FRA. *Id.* Further underscoring the speculative nature of those

concerns, the letter concludes that "[i]f there is any reason to believe that such records have been unlawfully removed, American Oversight urges you to undertake an enforcement action." *Id.* The letter does not mention Google Docs or Mattermost.

NARA did not initiate an enforcement action because none was warranted. Assuming, for the sake of argument, that DOGE is a federal agency subject to the FRA, the use of Signal to conduct official business, without more, does not violate that law. Some executive branch officials use Signal because of the enhanced security features it offers, or because it allows inter-executive branch coordination in real time. Signal often comes pre-installed on government-issued cell phones and even desktop computers, in which case the records never leave agency custody. *See* 36 C.F.R. § 1230.3 (defining "removal" as records "leav[ing] the custody of a Federal agency without the permission of the Archivist of the United States"). And federal employees may send or receive messages on unofficial accounts, such as those connected with personal devices, if they copy an official account at the time of transmission or forward the message to their account within 20 days. *See* 44 U.S.C. § 2911. The same is true for White House employees subject to the PRA. 44 U.S.C. § 2209. Thus, neither Plaintiff's January 22, 2025, letter to NARA, nor the media reports it cites, placed NARA on notice that DOGE officials used Signal unlawfully on personal devices (with the auto-delete function enabled, and failure to copy an official account at the time of transmission or forward the messages on to an official account). Because Plaintiff has failed to plausibly allege that NARA had any knowledge that USDS used Signal to violate the FRA, it has failed to state a claim upon which relief can be granted for Count III.

### C. Two of Plaintiff's FRA Claims Are Barred Under 5 U.S.C. § 704 Because FOIA Provides an Adequate Remedy

Even if the Court were to construe Plaintiff's Counts I and II narrowly to avoid a broad programmatic attack, and instead view them as seeking nothing more than a ruling that USDS is

an "agency" under the FRA and FOIA (thus leaving it to USDS to take any further appropriate actions in conformity with that ruling), that remedy is also barred under the circumstances here. As described above, Plaintiff's claims invoke the APA's cause of action in 5 U.S.C. § 706. Compl. ¶¶ 242, 258. However, that cause of action is unavailable where there exists another "adequate remedy in a court." 5 U.S.C. § 704. Thus, where FOIA provides a remedy, a plaintiff cannot seek such relief through a separate APA claim that alleges an FRA violation. *CEI v. Off. of Science & Tech. Policy*, 82 F. Supp. 3d 228, 234 (D.D.C. 2015) (dismissing APA claim "[b]ecause FOIA provides its own remedial scheme"), *reversed on other grounds*, 827 F.3d 145 (D.C. Cir. 2016); *cf. Feinman v. FBI*, 713 F. Supp. 2d 70, 76–77 (D.D.C. 2010) (recognizing that FOIA claims allow for challenges to agency policies as well as an agency's response to a specific FOIA request).

Four of Plaintiff's five claims here all seek the same determination from the Court—that USDS is an "agency" for purposes of the FRA and FOIA and is therefore subject to FRA rather than PRA recordkeeping requirements as well as FOIA's framework for making nonexempt agency records publicly available. *See* Compl. ¶¶ 228, 244, 251, 269-71, 275-80. Those counts do not invoke unique FRA remedies by, for example, seeking to compel those statutes' administrative enforcement mechanisms to recover removed records or avoid their destruction. *Cf. Armstrong I*, 924 F.2d at 295-96 (describing challenge to agency's or Archivist's decision not to initiate enforcement action); *See Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 144 (D.D.C. 2020) (claim sought to compel administrative enforcement action). Nor do any of Plaintiff's claims seek to correct supposed defects in USDS's Records Policy or challenge the scope of the policy. Instead, Plaintiff seeks a ruling that USDS is an "agency." Indeed, as discussed above, that is the only relief this Court could grant regarding Counts I and II without becoming enmeshed in impermissible oversight of the development and implementation of an entire FRA

24

recordkeeping scheme. But that remedy is already available through the FOIA causes of action raised in both the *CREW FOIA* case and Plaintiff's FOIA case in front of Judge Howell, *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, Civ. A. No. 25-0409 (BAH). Thus far, the *CREW FOIA* case has proceeded furthest in adjudicating the issue, and the issue is likely to be resolved, one way or another, through that case.

Indeed, the issue of whether an entity qualifies as an "agency" has typically been adjudicated through FOIA, not through the FRA. *See, e.g.*, *Main St. Legal Servs.*, 811 F.3d at 543–44 (FOIA case affirming district court's decision that NSC was not an agency subject to FOIA and recognizing "the FOIA's agency requirement to relate to the court's remedial power"); *CREW*, 566 F.3d at 220-21 (FOIA case affirming district court's determination that Office of Administration is not an agency subject to FOIA); *Meyer*, 981 F.2d at 1298 (FOIA case holding President's Task Force on Regulatory Relief was not an agency); *Rushforth*, 762 F.2d at 1038–40, 1043 (FOIA case affirming district court's conclusion that Council of Economic Advisers is not an agency); *Soucie*, 448 F.2d at 1070 (FOIA case holding that Office of Science and Technology was an agency); *Indiana v. Biden*, 652 F. Supp. 3d 995, 1006-07 (S.D. Ind. 2023) (FOIA case holding Domestic Policy Council was not an agency); *Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 62 (D.D.C. 2019) (FOIA case holding that defendant was not an agency); *see also Pac. Legal Found.*, 636 F.2d at 1261 (on claim brought pursuant to Sunshine Act's right of action, holding Council on Environmental Quality is an agency).

The remedy available through FOIA is thus undoubtedly adequate. A final ruling on the plaintiff's FOIA claim in the *CREW FOIA* case will determine whether or not USDS is an agency for FRA and FOIA purposes. If the final ruling is that USDS is an agency, USDS presumably will take the necessary steps to conform its recordkeeping and FOIA response protocols accordingly.

And regardless of the outcome, that ruling will render two of Plaintiff's claims here moot. Accordingly, under § 704, the APA's cause of action is not available in this circumstance.

**III.     Defendants Musk and Davis Should Be Dismissed**

Finally, even if the Court finds that USDS is an agency under the FRA and that the documents requested are agency records, the Court should dismiss Defendants Musk and Davis.

For Plaintiff's FRA claims, Defendants Musk and Davis should be dismissed because they are not agency heads. Under the FRA, only an agency head and the Archivist can be sued to compel an enforcement action against an agency. *See* 44 U.S.C. § 3106; *see also CREW v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018). Courts have stated that an "agency head" is the highest-ranking official at the agency. *See AFGE, AFL-CIO, Local 1592 v. Fed. Labor Rels. Auth.*, 288 F.3d 1238, 1241 (10th Cir. 2002) (holding that the Secretary of Defense was determined to be the Air Force "agency head" for service requirements).

While Plaintiff asserts that Defendants Musk and Davis are "functional heads" of USDS, Compl. ¶¶ 17, 66, there is nothing more than hearsay news articles to back this information up, none of which would give the Court a basis to deem either Musk or Davis to be the agency head. *See Democracy Forward Found.*, 474 F. Supp. 3d at 150 (rejecting hearsay in newspaper articles as inadmissible when offered by plaintiff asserting FRA violation); *see also Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a New York Times article is admissible evidence of the truthfulness of its contents."). The only other piece of information Plaintiff uses to support its proposition is a deposition where USDS stated that "Davis made decisions that 'Gleason later ratified'" and that Davis reports to Gleason. Compl. ¶ 93. However, as reflected by Defendant Gleason's declaration in the *CREW FOIA* case, Civ. A. No. 25-0511, ECF No. 24-2, she is the Acting Administrator of USDS. Thus, neither Defendant Musk nor Davis is an agency head, and they should be dismissed.

Similarly, Defendants Musk and Davis should also be dismissed from this case because people are not subject to FOIA—only "agencies" are. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under . . . FOIA."; FOIA "concern[s] the obligations of agencies as distinct from individual employees in those agencies"); *Competitive Enter.*, 643 F. Supp. 3d at 126 ("Needless to say, individuals are not agencies."); *see also Sanders v. Dep't of Just.*, No. 10-5273, 2011 WL 1769099, at *1 (D.C. Cir. Apr. 21, 2011) (claims against individual defendants are not cognizable under FOIA); *Isasi v. Office of the Att'y Gen.*, 594 F. Supp. 2d 12, 14 (D.D.C. 2009) (dismissing claim against individual defendant because "a *Bivens* action is not viable as a remedy for FOIA violations, and the FOIA does not permit claims against individual federal officers"), *aff'd*, No. 09-5122, 2010 WL 2574048 (D.C. Cir. June 2, 2010).

Plaintiff's decision to sue Mr. Musk and Ms. Gleason in their purported "official" capacities does not change the outcome. *Competitive Enter.*, 643 F. Supp. 3d at 126–27 (suing a person in an official capacity "does not morph an individual into an agency"). Claims against Defendants Musk and Davis arising out of FOIA should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for this additional reason.

\*    \*    \*

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss this case with prejudice.

Dated: July 1, 2025                Respectfully submitted,

                                   JEANINE FERRIS PIRRO
                                   United States Attorney

                                   By: _____ /s/ *Kaitlin K. Eckrote* _____
                                         KAITLIN K. ECKROTE
                                         D.C. Bar #1670899
                                         Assistant United States Attorney
                                         601 D Street, NW
                                         Washington, DC 20530
                                         (202) 252–2485
                                         Kaitlin.Eckrote@usdoj.gov

                                   *Attorneys for the United States of America*

28