**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005 | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Case No. 25-1251-RC |
| U.S. DEPARTMENT OF GOVERNMENT<br>EFFICIENCY,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) ) | |
| U.S. DOGE SERVICE,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) | |
| U.S. DOGE SERVICE TEMPORARY<br>ORGANIZATION,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) ) | |
| ELON MUSK, in his official capacity as head<br>of the Department of Government Efficiency,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) ) | |
| STEVEN DAVIS, in his official capacity as<br>head of the Department of Government<br>Efficiency,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) ) ) | |
| AMY GLEASON, in her official capacity as<br>Acting Administrator of the U.S. DOGE<br>Service,<br>736 Jackson Place NW<br>Washington, DC 20503 | ) ) ) ) ) ) | |
| MARCO A. RUBIO, in his official capacity as<br>Acting Archivist of the United States,<br>700 Pennsylvania Ave. NW | ) ) ) | |

Washington, DC 20408                    )
                                        )
and                                     )
                                        )
NATIONAL ARCHIVES AND RECORDS           )
ADMINISTRATION,                         )
700 Pennsylvania Ave. NW                )
Washington, DC 20408                    )
                                        )
                        *Defendants.*   )
                                        )
_____ )

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    Since January 20, 2025, the Elon Musk-led Department of Government Efficiency has operated at breakneck speed to overhaul and diminish the Executive Branch of the federal government, all while operating largely in secrecy.

2.    The new agency, commonly referred to as DOGE, has spread its influence and embedded staff across the executive branch, dismantling entire agencies, canceling previously approved grants and contracts, overruling instructions from Senate-confirmed Cabinet members, directing the termination of tens of thousands of federal employees, and more.

3.    Despite, or perhaps because of, DOGE's unprecedented scope and scale, the agency has obfuscated even the most basic information about its internal operations, up to and including the identity of the person in charge of its efforts.

4.    This obfuscation features prominently in DOGE's repeated, systemic failures to preserve and produce records pursuant to the Federal Records Act ("FRA") and Freedom of Information Act ("FOIA"). DOGE uses nongovernmental, ephemeral messaging platforms like Signal and electronic document collaboration platforms like Google Docs, which lack the effective controls or safeguards necessary to ensure that public records are not being wrongfully destroyed.

5.    This action is necessary to redress Defendants' failures to meet their obligations under the FRA and FOIA. Specifically, DOGE's use of ephemeral messaging platforms and electronic document collaboration platforms to conduct official government business without adequate policies, whether formal or informal, in place to preserve agency records violates its record-keeping obligations.

6.    Plaintiff American Oversight brings this action under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., to prevent the unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover federal records created through unauthorized or noncompliant use of ephemeral messaging platforms and electronic document platforms, and under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA in connection with FOIA requests for key records regarding Defendants' activities.

**JURISDICTION AND VENUE**

7.    This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701 et seq., the FRA, 44 U.S.C. §§ 3301 et seq., FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.    Venue is proper in this district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.      Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and FOIA requests, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases and other media.

10.      In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to Defendants Department of Government Efficiency, U.S. DOGE Service, and U.S. DOGE Temporary Service Organization (collectively, "DOGE Defendants" or "DOGE"), and will continue to seek records from the DOGE Defendants in the future.[1]

11.      In the regular course of its work and in furtherance of its core mission and function, American Oversight has sent more than two dozen FOIA requests to DOGE, and intends to continue to send FOIA requests to DOGE and make available to the public any records it receives in response.

12.      Defendant U.S. Department of Government Efficiency is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. §

---

[1] For purposes of this suit, American Oversight uses the acronym "DOGE" to refer collectively to Defendants Department of Government Efficiency, U.S. DOGE Service, and U.S. DOGE Service Temporary Organization because it is the acronym used publicly by Elon Musk, President Trump, and other White House officials when referring to actions taken by USDS and/or agency heads operating on directives from Musk and other DOGE officials.

551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1). *See Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

13.     Defendant U.S. DOGE Service ("USDS") is an establishment in the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1).  *See id.*

14.     Defendant U.S. DOGE Service Temporary Organization is an establishment in the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. §§ 551(1), 552(f)(1).  *See id.*

15.     Defendant Elon Musk is or was one of the functional heads of DOGE and is sued in his official capacity.

16.     In that capacity, he is or was the agency head of the U.S. Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization, and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

17.     Defendant Steven ("Steve") Davis is or was one of the functional heads of DOGE and is sued in his official capacity.

18.     In that capacity, he is or was the agency head of the U.S. Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization, and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

19.     Defendant Amy Gleason is the Acting Administrator of USDS and is sued in her official capacity.

20.     In that capacity, she is the agency head of the USDS and obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

21.     Defendant Marco Rubio is the Acting Archivist of the United States and is sued in his official capacity. As Acting Archivist of the United States, Defendant Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

22.     Defendant National Archives and Records Administration ("NARA") is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and the APA, 5 U.S.C. §§ 551(1), 552(f)(1), and is headquartered in Washington, D.C.

23.     As further demonstrated below, because Defendants Department of Government Efficiency, USDS, and U.S. DOGE Service Temporary Organization each have duties and authority that go beyond simply advising the President, they are all subject to FOIA and the FRA.

24.     Upon information and belief, Defendant Department of Government Efficiency has possession, custody, and control of records responsive to American Oversight's FOIA requests.

25.     Upon information and belief, Defendant USDS has possession, custody, and control of records responsive to American Oversight's FOIA requests.

26.     Upon information and belief, Defendant U.S. DOGE Service Temporary Organization has possession, custody, and control of records responsive to American Oversight's FOIA requests.

## LEGAL FRAMEWORK

### *Federal Records Act*

27.     The FRA governs the creation, management, and disposal of "records" by federal

agencies. *See generally* 44 U.S.C. § 3301 et seq; *see also* 44 U.S.C. Chs. 21, 29, and 31.

28.     The FRA defines "records" to include:

[A]ll recorded information, regardless of form or characteristics, made or received
by a Federal agency under Federal law or in connection with the transaction of
public business and preserved or appropriate for preservation by that agency or its
legitimate successor as evidence of the organization, functions, policies, decisions,
procedures, operations, or other activities of the United States Government or
because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

29.     The FRA further specifies that "the term 'recorded information' includes all

traditional forms of records, regardless of physical form or characteristics, including information

created, manipulated, communicated, or stored in digital or electronic form." *Id.* § 3301(a)(2).

30.     The FRA provides that the Archivist's determination about whether recorded

information is a federal record is "binding on all Federal agencies," *id.* § 3301(b), and NARA's

regulations provide that "[w]orking files, such as preliminary drafts and rough notes, and other

similar materials, are records that must be maintained to ensure adequate and proper

documentation if":

(1) They were circulated or made available to employees, other than the creator,
    for official purposes such as approval, comment, action, recommendation,
    follow-up, or to communicate with agency staff about agency business; and
(2) They contain unique information, such as substantive annotations or comments
    that adds to a proper understanding of the agency's formulation and execution
    of basic policies, decisions, actions, or responsibilities.

36 C.F.R. § 1222.12(c).

31.     As applied to the operations of DOGE, the FRA imposes duties on the heads of the agency and the Archivist of the United States.

32.     To comply with the statute, the agency head "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

33.     An agency head is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

34.     Under the FRA, "[a]n officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee (1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." *Id.* § 2911(a).

35.     When records are handled in a manner that contravenes the FRA or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency . . . ." *Id.* § 3106(a).

36.    The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency . . . ." *Id.*

37.    If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time after being notified of any such unlawful action, or is participating in, or believed to be participating in any such unlawful action," the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b).

38.    The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to the discretion of the agency head nor the Archivist. *See Armstrong v. Bush*, 924 F.2d 282, 295–96 (D.C. Cir. 1991).

39.    Where both the agency head and the Archivist have "failed to initiate remedial action in a timely manner, private litigants may sue under the APA to require them to do so." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

40.    Furthermore, "the APA authorizes judicial review of a claim—properly pleaded, of course—that the [agency's] recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA." *Id.* at 111.

41.    "The APA also authorizes the Court to entertain a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *Id.*

*Freedom of Information Act*

42.    Under FOIA, any document is an agency record subject to FOIA if it was "create[d] or obtaine[d]" by the agency and the agency is "in control of the requested materials at the time the FOIA request is made." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144–45 (1989).

43.    FOIA requires all federal agencies to make agency records available to the public unless one of its specified exemptions applies. *See id*. at 150–51; 5 U.S.C. § 552(b).

44.    Within 20 working days of receiving a FOIA request, agencies are required to tell the requestor the scope of records that will be produced or withheld, and the reasons for such withholdings. *See* 5 U.S.C. § 552(a)(6)(A)(i).

45.    Agencies are further required to make such records "promptly available to any person" who reasonably describes the records they seek. *Id.* § 552(a)(3)(A).

46.    An agency may not "destroy[] a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009).

*Presidential Records Act*

47.    Protections under the Presidential Records Act ("PRA") are limited to documents "created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2).

48.    The PRA provides the President broad discretion over the preservation or disposal of presidential records.

49.    In comparing the FRA with the PRA, the D.C. Circuit emphasized that "[w]hereas federal records are subject to a strict document management regime supervised by the Archivist, .

. . the PRA 'accords the President virtually complete control over his records during his term of office.' . . . . Neither the Archivist nor an agency head can initiate any action through the Attorney General to effect recovery or ensure preservation of presidential records." *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1290–91 (D.C. Cir. 1993) (internal quotation and citation omitted).

50.    Although the Archivist may "request congressional advice regarding the President's intention to dispose of presidential records . . . , neither the Archivist nor the Congress has the authority to veto the President's disposal decision." *Id.* at 1291 (internal quotation omitted).

## STATEMENT OF FACTS

### *DOGE's Formation*

51.    In November 2024, a week after the presidential election, then President-elect Donald Trump announced that Elon Musk would be named the head of the newly created Department of Government Efficiency, which Trump referred to as "DOGE."[2]

52.    The acronym appears to reference the Musk-backed cryptocurrency DOGE coin.[3]

53.    DOGE's structure and function were initially unclear, including whether it would be housed within the federal government or as an external entity.[4]

54.    During the presidential transition period, the DOGE team operated out of the Washington, D.C. office of Tesla, Inc.[5]

---

[2] Elena Moore *et al.*, *Trump Taps Musk to Lead a 'Department of Government Efficiency' with Ramaswamy*, NPR (Nov. 12, 2024, 9:03 PM), https://www.npr.org/2024/11/12/g-s1-33972/trump-elon-musk-vivek-ramaswamy-doge-government-efficiency-deep-state.
[3] *Id.*
[4] Moore *et al.*, *supra* note 2.
[5] Eric Katz, *DOGE Agency Deployments Raise Ethical and Influence Concerns*, Gov't Exec., (Jan. 15, 2025), https://www.govexec.com/management/2025/01/doge-agency-deployments-raise-ethical-and-influence-concerns/402204/.

55.    Musk is Tesla's Chief Executive Officer and largest shareholder.[6]

56.    During the presidential transition period, Musk and DOGE representatives communicated with federal agencies concerning DOGE's plans for those agencies in the new administration.[7]

57.    These communications happened via Signal in at least some instances.[8]

58.    Upon taking office, Trump issued an executive order "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

59.    This first DOGE executive order renames the U.S. Digital Service as the U.S. DOGE Service and creates a temporary organization within it called the "U.S. DOGE Service Temporary Organization," "headed by the USDS Administrator" and "dedicated to advancing the President's 18-month DOGE agenda." *Id*. Under the executive order, the U.S. DOGE Service Temporary Organization sunsets on July 4, 2026. *See id*.

60.    The first DOGE executive order further requires each "Agency Head" to establish a DOGE Team within each agency of the executive branch. *See id*.[9]

---

[6] Theo Leggett, *Tesla's Challenges Run Deeper Than 'Toxic' Controversy Around Elon Musk*, BBC (Mar. 19, 2025), https://www.bbc.com/news/articles/cz61vwjel2zo.
[7] Faiz Siddiqui *et al*., *DOGE is Dispatching Agents Across U.S. Government*, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-doge-federal-agencies/.
[8] *See* Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html.
[9] "Agency Head" is defined as "the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director." *Id.* § 2(b).

61.    Whereas the legacy U.S. Digital Service was a component within the Office of Management and Budget ("OMB")—a standalone entity within the Executive Office of the President ("EOP") that is subject to the FRA and FOIA—the first executive order moved the U.S. DOGE Service out of OMB to make it a separate entity within EOP. *See id.*

62.    Trump issued a second DOGE executive order on February 11, 2025, that directs Agency Heads to develop "a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas," and requires that new career appointment hiring decisions "be made in consultation with the agency's DOGE Team Lead." *See Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, Exec. Order No. 14,210 at § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-02-14/pdf/2025-02762.pdf ("Second DOGE EO").

63.    Trump's third DOGE-related executive order, issued February 26, 2025, provides further evidence of DOGE's agency status. *See Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Exec. Order No. 14,222, 90 Fed. Reg. 11095 (Feb. 26, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-03-03/pdf/2025-03527.pdf. It requires each Agency Head to work with their embedded DOGE Team Leads to: "build a centralized technological system" with the capability to "pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification"; review existing contracts and terminate or modify them "to promote efficiency and advance the policies of [the] Administration"; provide monthly reports to the USDS Administrator justifying "non-essential travel" expenditures; and freeze all credit cards held by agency employees for 30 days. It

also requires each DOGE Team Lead to report monthly to the USDS Administrator on "contracting activities," including "all payment justifications." *Id.*

64.    DOGE's agency status is being litigated in multiple lawsuits in this district.[10]

65.    At least two judges in this district have preliminarily found that DOGE is likely an agency.[11]

### *Leadership of DOGE*

66.    On information and belief, the Administration has purposefully obscured the leadership structure of DOGE.

67.    As described more fully below, at all times relevant to this action, there are at least three individuals who may be the functional head of DOGE or have shared responsibilities for co-leading DOGE: Elon Musk, who has been the public face of DOGE since its announcement in November 2024; Amy Gleason, who the Administration has named as the Acting Administrator of the U.S. DOGE Service; and Steve Davis, a longtime aide to Musk and the person reportedly running DOGE's day-to-day operations.

68.    Elon Musk was named as head of DOGE at its inception prior to Trump's inauguration.

---

[10] *See, e.g.*, First Am. Compl., *Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 25-cv-409 (D.D.C. Mar. 5, 2025); Compl., *Citizens for Resp.& Ethics in Washington v. U.S. DOGE Service*, No. 25-cv-511 (D.D.C. Feb. 20, 2025); Am. Compl., *Ctr. for Biological Diversity v. Off. of Mgmt. & Budget*, No. 25-cv-00165 (D.D.C. Feb. 27, 2025); Am. Compl., *Project on Gov't. Oversight v. Trump*, No. 25-cv-527 (D.D.C. May 9, 2025).
[11] *AFL-CIO v. Dep't of Lab.*, No. 25-cv-339 (JDB), 2025 WL 542825, at *3–*4 (D.D.C. Feb. 14, 2025) (noting that "USDS appears to do much more than advise and assist the President," and its actions as an entity reflect those of an "agency" as defined under FOIA, the Privacy Act, the Administrative Procedures Act, and the Economy Act); *Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 23 (D.D.C. 2025) ("The Court concludes that, on this preliminary record, CREW will likely succeed in demonstrating that USDS wields the requisite substantial independent authority" to be an agency subject to FOIA.).

69.     Musk directed DOGE's work upon Trump's inauguration.

70.     On information and belief, at all times relevant to this action, Musk has directed at least some of DOGE's work and was responsible for overseeing the President's "DOGE Agenda."

71.     Trump, White House officials, and Musk himself have repeatedly and publicly emphasized Musk's control over DOGE.

72.     On February 5, 2025, White House Press Secretary Karoline Leavitt stated that Trump "was elected with a mandate from the American people to make this government more efficient. He campaigned across this country with Elon Musk vowing that Elon was going to head up the Department of Government Efficiency."[12]

73.     In the same February 5 press conference, Leavitt, when asked about Musk's potential conflicts of interest, stated that "if Elon Musk comes across a conflict of interest with the contracts and the funding that DOGE is overseeing, then Elon will excuse himself from those contracts."[13]

74.     The White House told U.S. District Judge Tanya S. Chutkan on February 17, 2025, that Musk is neither the DOGE Administrator nor a DOGE employee and "has no actual or formal authority to make government decisions himself—including personnel decisions at individual agencies."[14]

---

[12] White House, *Press Secretary Karoline Leavitt Briefs Members of the Media*, YouTube (Feb. 5, 2025), https://www.youtube.com/live/0QJrwxIZGW8?t=1450s [24:10 – 24:21].
[13] *Id.*
[14] Notice by Elon Musk *et al*. at 1, and Decl. of Joshua Fisher, *State of New Mexico et al. v. Elon Musk et al*., D.D.C. Case No. 1:25-cv-00429-TSC, Feb. 17, 2025, ECF 24.

75.    However, that statement is contradicted by Musk's public statements and other evidence, including that Musk directed mass "What did you do last week?" emails to federal employees requiring them to respond or face termination.[15]

76.    The White House's representation on February 17 is also contradicted by Trump's own public statements.

77.    Just three days after the White House's representations to Judge Chutkan, Trump told an audience of investors and company executives in Miami, "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge."[16]

78.    President Trump and Press Secretary Leavitt have repeatedly talked about Musk as the functional leader of DOGE.

79.    On February 22, 2025, Trump posted on the site Truth Social, "ELON IS DOING A GREAT JOB, BUT I WOULD LIKE TO SEE HIM GET MORE AGGRESSIVE."[17]

80.    Musk responded on X (formerly Twitter) by posting a screenshot of Trump's message and adding, "Will do, Mr. President!"[18]

---

[15] Andrea Hsu, *A Pattern Emerges in Elon Musk's Federal Shakeup: 'Break First, Ask Questions Later'*, NPR (Feb. 26, 2025), https://www.npr.org/2025/02/26/nx-s1-5308659/federal-employees-musk-trump-chaos.

[16] Andrea Shalal & Nandita Bose, *Trump Appears to Contradict White House, Says Elon Musk in Charge of DOGE*, Reuters (Feb. 20, 2025 12:27 PM), https://www.reuters.com/world/us/trump-appears-contradict-white-house-says-elon-musk-charge-doge-2025-02-20/.

[17] Rachel Wolf, *Trump Says Elon Musk Should Be 'More Aggressive' on DOGE Cuts, Musk Responds*, FOX Business (Feb. 22, 2025 11:32 AM), https://www.foxbusiness.com/politics/trump-says-elon-musk-should-more-aggressive-doge-cuts.

[18] *Id.*; *see also* Elon Musk (@elonmusk), X (formerly Twitter) (Feb. 22, 2025 11:08 AM), https://x.com/elonmusk/status/1893332118752706661.

81.    On February 25, 2025, Leavitt reiterated Trump's desire for Musk to be "more aggressive," explaining that this was "because DOGE thus far has proven incredibly successful in making our government more efficient."[19]

82.    In the same February 25 briefing, when asked to identify the USDS Administrator, Leavitt stated that "the President tasked Elon Musk to oversee the DOGE effort."[20]

83.    On February 26, 2025, Musk attended and spoke at length at the first Cabinet meeting of the new administration.[21]

84.    In explaining Musk's attendance at the Cabinet meeting, Leavitt stated that "Elon is working with the Cabinet secretaries and their staff every single day to identify waste and fraud and abuse at these respective agencies. All of the Cabinet secretaries take the advice and direction of DOGE."[22]

85.    On March 4, 2025, President Trump in an address to Congress confirmed that Musk leads DOGE, stating ". . . I have created the brand new Department of Government Efficiency . . . [w]hich is headed by Elon Musk, who is in the gallery tonight."[23]

---

[19] White House, *Press Secretary Karoline Leavitt Briefs Members of the Media*, YouTube (Feb. 25, 2025), https://www.youtube.com/live/Vl-_9pOiAl0?feature=shared&t=1000 [16:40-16:45].
[20] *Id.*
[21] Katherine Doyle, *Trump and Elon Musk Dominate His First Cabinet Meeting*, NBC News (Feb. 26, 2025, 1:04 PM), https://www.nbcnews.com/politics/trump-administration/trump-elon-musk-dominate-first-cabinet-meeting-rcna193836.
[22] Caitlyn Frolo, *5 Things to Know About Trump's First Cabinet Meeting*, ABC 4 News (updated Feb. 26, 2025 11:38 PM), https://abcnews4.com/news/nation-world/trump-holds-first-cabinet-meeting-of-second-term-with-elon-musk-in-attendance-doge-politics-email-waste-policy-administration.
[23] *Full Speech: President Trump's Joint Address to Congress*, YouTube (Mar. 4, 2025), https://www.youtube.com/watch?v=WVOvmHUu8Vw (highlighting DOGE and Musk's role from 22:26-22:49); *see also Full Transcript of President Trump's Speech to Congress*, NY Times (Mar. 5, 2025, 4:08 AM), https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html.

86.     Some Republican senators were given Musk's phone number so they could have direct access to seek his help getting "problematic cuts" made by DOGE "quickly reversed."[24]

87.     On April 28, 2025, Musk posted on X (formerly Twitter): "Knock, knock … it's @DOGE." The post included a photo of Musk himself holding a badge meant to look like a law enforcement badge; the badge read "THE DOGEFATHER" above a logo, "DOGE" below the logo, and included the "badge number" 69420.[25]

88.     However, in late February, the White House announced that Amy Gleason was the Acting Administrator of USDS.[26]

89.     Gleason filed a sworn declaration in another action in this District on March 14, 2025, stating that she "serve[s] as the Acting Administrator of USDS" and is a "full-time, government employee at USDS," and as such, she "oversee[s] all of USDS's employees and detailees to USDS from other agencies."[27]

90.     In a message to a 300-person group chat obtained by the *San Francisco Chronicle*, Gleason attempted to explain that she "currently serve[s] as acting administrator of the U.S. Doge [sic] Service (formerly U.S. Digital Service)," which is separate from the Agency DOGE Teams,

---

[24] Liz Goodwin et al., *Musk Promises Better Communication Between Republican Lawmakers, DOGE*, Wash. Post (updated Mar. 5, 2025), https://www.washingtonpost.com/politics/2025/03/05/musk-congress-anger-doge/.

[25] Elon Musk (@elonmusk), X (formerly Twitter) (Apr. 28, 2025 10:50 pm), https://x.com/elonmusk/status/1917048786633036129.

[26] Joe Hernandez, *Amy Gleason is the Acting Administrator of DOGE, the White House Says. Who is She?*, NPR (Feb. 26, 2025, 8:07 PM), https://www.npr.org/2025/02/26/nx-s1-5310634/amy-gleason-doge-administrator.

[27] Decl. of Amy Gleason ¶¶ 2-4, *Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv.*, No. 25-CV-511 (D.D.C. March 14, 2025), ECF No. 20-2, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277646/gov.uscourts.dcd.277646.20.2_1.pdf.

and is also separate from "the broader Doge [sic] policy agenda that Elon Musk advises the President on."[28]

91.     However, a sworn declaration in a different case—which the Government initially sought to file under seal and is dated three days prior to Gleason's March 14 declaration—states that Gleason was detailed from USDS to the Department of Health and Human Services ("HHS") in February 2025 and then converted to a direct, presumably full-time HHS hire on March 4, 2025.[29]

92.     The third candidate for leader of DOGE is Musk's longtime aide Steve Davis, who "effectively [became] the day-to-day leader of DOGE," and wielded "more power than Amy Gleason," who has "sometimes been in the dark about Mr. Davis's decisions."[30]

93.     Among other actions demonstrating his role and DOGE's authority, Davis called the leaders of the Social Security Administration ("SSA") to demand that a DOGE programmer be given access to databases containing sensitive information, "slashed diversity initiatives," met with lawmakers, and pushed Trump administration officials to let him email all government employees

---

[28] Shira Stein, *DOGE Head Denies Responsibility for Mass Firings in Private Group Chat Message*, S.F. Chronicle (Apr. 8, 2025), https://www.sfchronicle.com/politics/article/doge-amy-gleason-group-chat-20258581.php.

[29] *See* Decl. of Garey Rice ¶¶ 6-8, Principal Deputy Assistant Secretary of HHS, *Am. Fed'n of Lab. & Cong. of Indus. Organizations* [hereinafter *AFL-CIO*], *v. Dep't of Lab.*, No. CV 25-0339 (D.D.C. March 11, 2025) ECF No. 51-3, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.51.3_2.pdf; Appointment Affidavit (OPM Form SF-61) of Amy Gleason, *AFL-CIO v. Dep't of Lab.* (D.D.C March 18, 2025), ECF No. 65-1, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.65.1_1.pdf; Order, *AFL-CIO v. Dep't of Lab.* (D.D.C March 17, 2025), ECF No. 59, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.59.0.pdf (denying government's motion to seal the SF-61s or redact from the SF-61s the affiants' names).

[30] Ryan Mac *et al.*, *Meet Elon Musk's Top Lieutenant Who Oversees DOGE*, N.Y. Times (updated Mar. 21, 2025), https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html.

simultaneously, leading to "a January email blast known as the 'Fork in the Road,' which included a governmentwide resignation offer."[31]

94.    "The exact chain of command at DOGE is not clear to most federal employees who brush up against the team," but Gleason "does not appear to be running the budget-slashing group," and day-to-day operations are run by Davis and sometimes "Musk himself," who "issues commands from inside the Secretary of War Suite in the Eisenhower Executive Office Building."[32]

95.    Between February 5 and February 18, DOGE lacked "a formal acting administrator," but "at the time, Steve Davis was the senior-most political advisor," so Davis made decisions that "Gleason later ratified."[33]

96.    The White House announced that Davis left government service on May 29, 2025.[34]

97.    However, even after the announced departure, Davis remained in touch with DOGE staffers, continuing to act as DOGE's leader.[35]

98.    For example, in June 2025, Davis called and ran a DOGE meeting in a government building at which he purported to announce "DOGE 2.0."

99.    Some DOGE staff were so concerned about Davis's continued involvement that they sought guidance from DOGE general counsel Austin Raynor.[36]

---

[31] *Id.*

[32] Christopher Bing *et al.*, *Who's Running the Doge Wrecking Machine: The World's Richest Man or a Little-Know Bureaucrat?*, ProPublica (Mar. 14, 2025, 1:30 PM), https://www.propublica.org/article/doge-leadership-elon-musk-amy-gleason-trump-ethics-conflict-of-interest.

[33] Dep. of DOGE through Kendall Lindemann at 14:18-15:23, *AFL-CIO v. Dep't of Labor*, No. 25-cv-0339 (JDB) (D.D.C. Apr. 7, 2025), ECF No. 80-4, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277150/gov.uscourts.dcd.277150.80.4.pdf.

[34] Sophia Cai, *DOGE Lead Steve Davis Did Not Go Quietly*, Politico (July 14, 2025 6:30 pm), https://www.politico.com/news/2025/07/14/doge-lead-steve-davis-did-not-go-quietly-00452257.

[35] *Id.*

[36] *Id.*

100.    Davis communicated with DOGE staff concerning official government business through the Signal messaging app.[37]

101.    The White House's announcement about Davis's departure coincided with reports that Musk had also left the government.[38]

102.    However, shortly thereafter, President Trump claimed that Musk was "not really leaving."[39]

103.    Thus, the leadership structure of DOGE—like much about its operations—continues to be shrouded in mystery.

### DOGE Wields Substantial Independent Authority Across the Executive Branch

104.    As alleged more fully below, DOGE's authority extends across the executive branch.

105.    DOGE enjoys substantial free rein to implement the "DOGE agenda" as it sees fit, issuing commands to entities and persons within the executive branch—commands that agency officials and Cabinet secretaries treat as legally authoritative.

106.    DOGE exercises this authority independent of the President and senior White House officials, who often are unaware of DOGE's actions until they are made public.[40]

---

[37] Shalini Ramachandran *et al.*, *The Fight Between Musk Acolytes and the White House for Control of DOGE*, Wall St. J. (July 8, 2025, 9:00 PM), https://www.wsj.com/politics/policy/doge-elon-musk-left-control-92770407?st=cLCaAW.

[38] *See, e.g.*, Christal Hayes & Brandon Drenon, *Elon Musk Leaves White House But Says Doge Will Continue*, BBC, May 28, 2025, https://www.bbc.com/news/articles/cz9y4exj822o.

[39] *See, e.g.*, Bernd Debusmann Jr., *In Oval Office Farewell, Trump Says Elon Musk Is 'Not Really Leaving'*, BBC, May 30, 2025, https://www.bbc.com/news/articles/c4ger3gxdjro.

[40] *See* Gabriel Sherman, *Is Donald Trump Afraid of Elon Musk?*, Vanity Fair (Feb. 7, 2025), https://www.vanityfair.com/news/story/is-donald-trump-afraid-of-elon-musk ("According to one Trump ally, Musk is not fully briefing White House chief of staff Susie Wiles about his plans and the White House is effectively in the dark."); Katherine Faulders & Will Steakin, *Musk's Whirlwind Approach Sparks Rift in the White House and in Trump's Orbit: Sources*, ABC News (Feb. 25, 2025, 3:50 PM), https://abcnews.go.com/Politics/musks-whirlwind-approach-sparks-

107.    For instance, even after White House Chief of Staff Susie Wiles instructed Musk to keep her informed of his plans, Musk used Office of Personnel Management ("OPM") systems to send an email to 2.3 million federal employees without clearing his plan through any White House officials.[41]

108.    The message instructed federal employees to send an email documenting their accomplishments for the previous week and said that any nonresponse would be considered a resignation.[42]

109.    In just the first three weeks of the new administration, DOGE staffers accessed the offices of at least 15 executive branch agencies.[43]

110.    They have since accessed the offices and/or computer systems of many more agencies.

111.    With respect to these agencies, DOGE staff have shuttered and dramatically shrunk federal agencies, rendered decisions related to agency payments or agency personnel, ordered agency supervisors or staff to take various actions, and gained access to computer systems previously available only to agency employees.

---

rift-white-house-trumps/story?id=119179219 ("When billionaire Elon Musk posted on X last weekend that all federal employees would soon receive an email demanding details of their work from the past week, senior White House officials—who had not been fully briefed on the plan— were initially caught off guard.")

[41] *See* Nandita Bose *et al.*, *Ultimatum to Federal Workers Raises Tensions Between Musk, White House Staff*, Reuters (Feb. 27, 2025 6:09 AM), https://www.reuters.com/world/us/ultimatum-federal-workers-raises-tensions-between-musk-white-house-staff-2025-02-27/.

[42] *See id.*

[43] *See, e.g.*, Wash. Post Staff, *Elon Musk's DOGE Has Swept into 15 Federal Agencies. Here's What to Know*, Wash. Post, (Feb. 8, 2025), https://www.washingtonpost.com/business/2025/02/08/elon-musk-doge-federal-agencies-cuts-employees/.

*DOGE Gains Access to and Shutters or Dramatically Shrinks Agencies*

112.    One of DOGE's first targets was USAID. On or around February 1, 2025, DOGE personnel insisted that they be granted access to systems at USAID, threatening to call law enforcement when officials at USAID refused.[44]

113.    DOGE staffers did subsequently gain access to USAID systems, including those containing classified information.[45]

114.    DOGE personnel halted certain agency payments, overruling Secretary of State Marco Rubio, who has also been serving as the Acting USAID Administrator.

115.    On January 28, Rubio issued an "Emergency Humanitarian Waiver to Foreign Assistance Pause," to allow continued payments for "life-saving humanitarian assistance programs."[46]

116.    But despite Rubio's—as well as USAID managers' and the White House's—express authorization for these payments, DOGE personnel blocked the payments.[47]

117.    Musk then publicly boasted about the independent power DOGE exerted over USAID.

---

[44] *See, e.g.,* Jennifer Hansler *et al.*, *Elon Musk Said Donald Trump Agreed USAID Needs to Be 'Shut Down',* CNN (Feb. 3, 2025, 7:48 AM), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge/index.html.
[45] *See id.*
[46] Secretary Marco Rubio, Dep't of State, *Emergency Humanitarian Waiver to Foreign Assistance Pause* (Jan. 28, 2025), https://www.state.gov/wp-content/uploads/2025/01/Final-Signed-Emergency-Humanitarian-Waiver.pdf
[47] Matt Bai, *The Blinding Contempt of the DOGE Bros,* Wash. Post, Feb. 24, 2025, http://wapo.st/3XrTgyn.

118.    On Monday, February 3, 2025, at 1:54 AM, Musk posted on X (formerly Twitter), "We spent the weekend feeding USAID into the wood chipper. Could gone [sic] to some great parties. Did that instead."[48]

119.    As his X post indicates, Musk, as head of DOGE, and by his own admission, directed the reduction of USAID's workforce and freezing of funds.

120.    Another early DOGE target was the Consumer Financial Protection Bureau ("CFPB"), where DOGE staff gained access to systems that "manage the agency's human resources, procurement, and finance systems" and have "taken control of the bureau's social media accounts, locking out career staff."[49]

121.    Three "Musk deputies" were added to CFPB's internal staff directory.[50]

122.    DOGE has effectively dismantled USAID and has worked to dismantle the CFPB and the Department of Education, as well.[51]

*DOGE Shrinks Additional Federal Agencies*

123.    DOGE directed the mass layoffs of employees at the U.S. Department of Agriculture ("USDA"), including employees working on the federal government's response to H5N1 avian flu.[52]

---

[48] Elon Musk (@elonmusk), X (formerly Twitter) (Feb. 3, 2025 1:54 AM), https://x.com/elonmusk/status/1886307316804263979.

[49] Bobby Allyn *et al.*, *Musk's Team Takes Control of Key Systems at Consumer Financial Protection Bureau*, NPR (Feb 7, 2025, 11:48 PM), https://www.npr.org/2025/02/07/g-s1-47322/musks-team-takes-control-of-key-systems-at-consumer-financial-protection-bureau.

[50] *Id.*

[51] *See, e.g.,* Laurel Wamsley, *New CFPB Chief Closes Headquarters, Tells All Staff They Must Not Do 'Any Work Tasks'*, NPR (Feb. 10, 2025, 10:47 AM), https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk; Tierney Sneed, *DOGE's Efforts to Dismantle Consumer Finance Agency Have Slowed, Official Testifies*, CNN (Mar. 10, 2025, 6:48 PM EDT), https://www.cnn.com/2025/03/10/politics/doge-cfpb/index.html.

[52] *See, e.g.*, Allan Smith *et al.*, *USDA Says It Accidentally Fired Officials Working on Bird Flu and Is Now Trying to Rehire Them*, NBC News (updated Feb. 18, 2025 6:31 PM),

124.    The USDA subsequently described some of those layoffs as "accidental," and tried to rescind those terminations.[53]

125.    DOGE staffers at OMB are working on software called "AutoRIF" that will automate the mass firing of federal workers across the federal government.[54]

126.    DOGE has taken control of the United States Institute for Peace, a nonpartisan, independent body created by Congress in 1984, and directed mass layoffs of staff that were initially halted by another court in this District but later allowed to proceed when the Court of Appeals for the D.C. Circuit stayed the lower court's ruling.[55]

127.    The Trump Administration is now attempting to reverse DOGE's terminations of federal workers across multiple federal agencies, including the State Department, Food and Drug Administration, Internal Revenue Service, and Department of Housing and Urban Development.[56]

*DOGE Issues Directives to Additional Agencies*

128.    DOGE staff have gained access to Social Security Administration databases that contain the private financial information of hundreds of millions of people.

129.    Prior to DOGE's access, fewer than 50 people had access to SSA's databases.[57]

---

https://www.nbcnews.com/politics/doge/usda-accidentally-fired-officials-bird-flu-rehire-rcna192716.

[53] *Id.*

[54] *See, e.g.*, Makena Kelly, *DOGE Is Working on Software that Automates the Firing of Government Workers*, WIRED (Feb. 25, 2025, 12:02 PM), https://www.wired.com/story/doge-autorif-mass-firing-government-workers/.

[55] Shania Shelton, *US Institute of Peace Employees Experience Another Round of Mass Firings Following Court Ruling*, CNN (July 12, 2025, 5:46 PM), https://www.cnn.com/2025/07/12/politics/us-institute-of-peace-employees-experience-mass-firings.

[56] Hannah Natanson *et al.*, *Trump Administration Races to Fix a Big Mistake: DOGE Fired Too Many People*, Wash. Post (June 6, 2025), https://www.washingtonpost.com/business/2025/06/06/doge-staff-cuts-rehiring-federal-workers/.

[57] *See, e.g.*, Stephen Fowler & Jenna McLaughlin, *DOGE Says It Needs to Know the Government's Most Sensitive Data, But Can't Say Why*, NPR (Mar. 26, 2025, 9:00 AM),

130.    In a closed-door meeting, the Trump Administration's then-Acting SSA commissioner Leland Dudek told a group of attorneys and advocates for the disabled and elderly that he was "receiving decisions that are made without my input. I have to effectuate those decisions," and that "DOGE people are learning and they will make mistakes, but we have to let them see what is going on at SSA."[58]

131.    In other words, the nominal head of the SSA received instructions from DOGE that he was obliged to, and did, follow.

132.    DOGE staff planned to eliminate or significantly reduce telephone service and identity verification for Social Security recipients, which could have caused processing delays and prevented many Americans from receiving benefits.[59]

133.    The administration abandoned this plan, but maintained other DOGE measures for phone service at SSA that have slowed retirement claim processing by 25%.[60]

134.    DOGE staff are also rewriting the code base to critical Social Security systems, with few guardrails to guide their work as they do so.[61]

---

https://www.npr.org/2025/03/26/nx-s1-5339842/doge-data-access-privacy-act-social-security-treasury-opm-lawsuit.

[58] Lisa Rein *et al.*, *DOGE is Driving Social Security Cuts and Will Make Mistakes, Acting Head Says Privately*, Wash. Post (Mar. 6, 2025), https://www.washingtonpost.com/politics/2025/03/06/doge-is-driving-social-security-cuts-will-make-mistakes-acting-head-says-privately/.

[59] *See* Judd Legum, *Exclusive: Memo Details Trump Plan to Sabotage the Social Security Administration*, Popular Info. (Mar. 17, 2025), https://popular.info/p/exclusive-memo-details-trump-plan.

[60] Natalie Alms, *DOGE Went Looking for Phone Fraud at SSA – And Found Almonst None*, NextGov/FCW (May 15, 2025), https://www.nextgov.com/digital-government/2025/05/doge-went-looking-phone-fraud-ssa-and-found-almost-none/405346/.

[61] Makena Kelly, *Senators Warn DOGE's Social Security Administration Work Could Break Benefits*, WIRED (June 11, 2025, 10:32 AM), https://www.wired.com/story/doge-social-security-administration-benefits/.

135.    U.S. Senators Elizabeth Warren and Ron Wyden warned that these efforts "[are] a recipe for disaster" that, as Senator Warren explained, "risks people's private data, creates security gaps, and could result in catastrophic cuts to all benefits."[62]

136.    A DOGE staffer deployed to the Nuclear Regulatory Commission instructed the NRC's chair and senior staff that the commission would be expected to "rubber stamp" new nuclear reactors that were tested by the Department of Energy or Department of Defense ("DOD").[63]

137.    DOGE also tasked a college student with using AI to rewrite the Department of Housing and Urban Development's regulations.[64]

138.    At the Department of Veterans Affairs ("VA"), DOGE staff used AI with flawed, unclear, and conflicting instructions to flag contracts as cancelable.[65]

139.    Secretary of Defense Pete Hegseth has credited DOGE with cutting nearly $6 billion in spending from DOD.[66]

*DOGE Gains Wide-ranging, Unexplained Access to Highly Sensitive Data Systems*

140.    DOGE staff have gained access to data systems containing highly sensitive data at many more agencies.

---

[62] *Id.*

[63] Francisco "A.J." Camacho & Peter Behr, *DOGE Told Regulator to 'Rubber Stamp' Nuclear*, Politico (July 14, 2025 1:33 pm), https://www.politico.com/news/2025/07/14/doge-to-regulator-rubber-stamp-nuclear-00450658.

[64] David Gilbert & Vittoria Elliott, *DOGE Put a College Student in Charge of Using AI to Rewrite Regulations*, WIRED (Apr. 30, 2025 3:34 PM), https://www.wired.com/story/doge-college-student-ai-rewrite-regulations-deregulation/.

[65] Brandon Roberts & Vernal Coleman, *Inside the AI Prompts DOGE Used to "Munch" Contracts Related to Veterans' Health*, ProPublica (June 6, 2025, 5:05 AM), https://www.propublica.org/article/inside-ai-tool-doge-veterans-affairs-contracts-sahil-lavingia.

[66] *See* Khaleda Rahman, *DOGE Cuts Update: Pete Hegseth Announces $5.1 Billion DOD Contract Cuts*, Newsweek (Apr. 11, 2025, 10:12 AM), https://www.newsweek.com/doge-cuts-pete-hegseth-dod-contracts-2058508.

141.    For example, DOGE members gained access to sensitive systems at the U.S. Department of the Treasury, including the Payment Automation Manager and Secure Payment System, which process over $5 trillion annually.[67]

142.    The payment system "handles tax refunds, Social Security benefits, veterans' benefits and much more," and includes "an expansive network of Americans' personal and financial data."[68]

143.    A threat intelligence team at the Treasury Department recommended that DOGE staffers' access to these systems be monitored as an "insider threat," urging that their access be suspended because of reports from other agencies that DOGE members had "performed unauthorized changes and locked civil servants out of the sensitive systems they gained access to."[69]

144.    Three of the DOGE staff at the National Institutes of Health ("NIH") "are employed in the department that controls the NIH's central electronic business system, which includes finance, budget, procurement, a property-management system, and a grant-tracking system."[70]

---

[67] Andrew Duehren *et al.*, *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html; Vittoria Elliott *et al.*, *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025, 1:02 AM), https://www.wired.com/story/elon-musk-associate-bfs-federal-payment-system/.

[68] Assoc. Press, *Federal Judge Blocks DOGE from Accessing Sensitive U.S. Treasury Department Material*, NPR (updated Feb 8, 2025, 2:01 AM), https://www.npr.org/2025/02/08/g-s1-47350/states-sue-to-stop-doge-accessing-personal-data.

[69] Vittoria Elliott & Leah Feiger, *A US Treasury Threat Intelligence Analysis Designates DOGE Staff as 'Insider Threat'*, WIRED (Feb. 7, 2025, 2:47 PM), https://www.wired.com/story/treasury-bfs-doge-insider-threat/.

[70] Matt Reynolds, *DOGE Is Inside the National Institutes of Health's Finance System*, WIRED (Feb. 24, 2025, 1:36 PM), https://www.wired.com/story/doge-is-inside-the-national-institutes-of-health-nih/.

145.    DOGE staff have also gained editor access to systems at the National Oceanic and Atmospheric Administration.[71]

146.    DOGE staff also obtained access to HHS's Unaccompanied Alien Children portal, which includes detailed information about minor children who enter the United States without a parent or guardian, and which contains mental health and therapy records, reports of trauma such as physical or sexual abuse, immigration records, photos, and addresses of family members.[72]

147.    DOGE staff have also accessed sensitive systems at the Department of Labor.[73]

148.    DOGE staff have also gained access to 12 sensitive HHS systems that include the Medicare and Medicaid payment databases, contracts, acquisitions, and grants both at NIH and HHS more broadly.[74]

149.    Additionally, DOGE staff have gained access to data systems at the U.S. Citizenship and Immigration Services that include asylee and refugee data, data on naturalization applicants, U.S. citizens sponsoring immigrants' applications, and more.[75]

---

[71] *See, e.g.*, Tim Marchman & Matt Giles, *This DOGE Engineer Has Access to the National Oceanic and Atmospheric Administration*, WIRED (Feb. 5, 2025, 2:58 PM), https://www.wired.com/story/doge-engineer-noaa-data-google-musk-climate-project-2025/.

[72] *See, e.g.,* Nick Robins-Early, *Doge Gained Access to Sensitive Data of Migrant Children, Including Reports of Abuse*, The Guardian (Apr. 3, 2025, 11:00 AM), https://www.theguardian.com/us-news/2025/apr/03/doge-data-migrant-children.

[73] *See* Stephen Fowler & Jenna McLaughlin, *DOGE Staffer Who Shared Treasury Data Now Has More Access to Government Systems*, NPR (Mar. 31, 2025, 12:30 PM), https://www.npr.org/2025/03/31/nx-s1-5345708/doge-data-access-labor-cfpb-hhs.

[74] *See, e.g., id.*; Kyle Cheney & Josh Gerstein, *DOGE's Marko Elez Is Back on the U.S. Payroll*, Politico (Mar. 29, 2025, 6:29 PM), https://www.politico.com/news/2025/03/29/doge-marco-elez-software-engineer-us-payroll-00259303.

[75] *See, e.g.*, Rebecca Heilweil, *DOGE Granted Access to Naturalization-Related IT Systems, Memo Shows*, FedScoop (Apr. 2, 2025), https://fedscoop.com/doge-granted-access-to-naturalization-immigration-it-systems/.

150.    DOGE staff are combining data from the Department of Homeland Security ("DHS") and SSA to build a master database that could be used to track and surveil undocumented immigrants.[76]

151.    DOGE staffer Jordan Wick has received read and write access to a database at the USDA—the National Payment Service—that controls tens of billions of dollars of payments and loans to farmers and ranchers and contains extensive personal and financial details about those individuals.[77]

152.    No other individual at the USDA has access to the National Payment Service as extensive as Wick does.[78]

153.    Wick's level of access allows him to modify all data within the system, cancel payments, deny loans, and withhold conservation incentives or disaster assistance.[79]

154.    The data to which Wick has access also includes demographic information about farmers and ranchers who applied for financial assistance after experiencing discrimination and information about farms and ranches who employ seasonal workers under temporary immigration status.[80]

155.    Such data could be used to target people for law enforcement or other purposes based on their race or immigration status.[81]

---

[76] *See* Makena Kelly & Vittoria Elliott, *DOGE Is Building a Master Database to Surveil and Track Immigrants*, WIRED (Apr. 18, 2025 5:48 PM), https://www.wired.com/story/doge-collecting-immigrant-data-surveil-track/.

[77] Jenna McLaughlin, *DOGE Keeps Gaining Access to Sensitive Data. Now, It Can Cut Off Billions to Farmers*, NPR (updated July 10, 2025 4:02 PM), https://www.npr.org/2025/07/10/nx-s1-5455779/doge-usda-farmers-data.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

156.    Two DOGE staffers, Luke Farritor and Adam Ramada, have accounts on two classified data systems at the National Nuclear Security Administration that contain detailed information about the nation's nuclear weapons systems and are used to communicate with DOD about nuclear weapons.[82]

157.    DOGE is using artificial intelligence to surveil federal workers in at least one agency, the Environmental Protection Agency, where employees were told that DOGE would be using AI to monitor workers for language suggesting hostility towards Trump, Musk, or the administration's priorities.[83]

158.    In sum, DOGE's far-reaching activities across dozens of federal agencies demonstrate its substantial authority independent of the President.

### *DOGE's Deployment of the Same Staffers to Multiple Agencies Demonstrates that Its Work Is a Coordinated, Centralized Effort*

159.    Individual DOGE staffers have access to data systems at multiple agencies and are detailed to or on staff at multiple agencies simultaneously or sequentially.

160.    The fact that individual DOGE staffers are employed by and detailed to multiple agencies simultaneously demonstrates that DOGE's work is a coordinated, central effort.

161.    For example, Marko Elez is an employee of the Department of Labor, who is detailed to HHS and to USDS.

---

[82] Geoff Brumfiel & Jenna McLaughlin, *DOGE Employees Gain Accounts on Classified Networks Holding Nuclear Secrets*, NPR (Apr. 28, 2025, 7:26 PM), https://www.npr.org/2025/04/28/nx-s1-5378684/doge-energy-department-nuclear-secrets-access.
[83] *See* Alexandra Ulmer *et al.*, *Exclusive: Musk's DOGE Using AI to Snoop on U.S. Federal Workers, Sources Say*, Reuters (Apr. 8, 2025, 11:36 AM), https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/.

162.    Elez is employed by or detailed to at least four other agencies in addition to the Department of Labor and USDS.[84]

163.    Luke Farritor is an employee of the General Services Administration ("GSA"), who is detailed to HHS as well as USDS.

164.    Farritor has been granted access to at least a dozen sensitive data systems at HHS.[85] He was previously also detailed to the CFPB.[86]

165.    Farritor has also been granted access to the Department of Energy's IT system, over the objections of the department's general counsel and chief information officer.[87]

166.    Farritor was also put on staff at the NIH, along with three other DOGE staff.[88]

167.    Kyle Schutt is an employee of the GSA, who has also been detailed to HHS and USDS.[89]

168.    Schutt was also embedded at the Cybersecurity and Infrastructure Security Agency ("CISA").[90]

---

[84] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 13, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[85] *Id.* at 9.

[86] *Id.* at 14.

[87] Ella Nilsen & Sean Lyngaas, *Trump Energy Secretary Allowed 23-Year-Old DOGE Rep to Access IT Systems Over Objections from General Counsel*, CNN (updated Feb. 7, 2025, 2:54 PM), https://www.cnn.com/2025/02/06/climate/doge-energy-department-trump/index.html.

[88] *See* Matt Reynolds, *DOGE is Inside the National Institutes of Health's Finance System*, WIRED (Feb. 24, 2025 1:36 PM), https://www.wired.com/story/doge-is-inside-the-national-institutes-of-health-nih/.

[89] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 11, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[90] *See* Kim Zetter, *DOGE Now Has Access to the Top US Cybersecurity Agency*, WIRED (Feb. 19, 2025, 8:59 PM), https://www.wired.com/story/doge-cisa-coristine-cybersecurity/.

169.    Jordan Wick was a USDS employee detailed to CFPB; at some point this status reversed, and he became a CFPB employee detailed to USDS. Wick is "an employee at one other agency and detailed to at least six agencies besides CFPB and USDS."[91]

170.    Wick is also on staff at USDA.[92]

171.    Edward Coristine is an employee of the GSA, who has also been detailed to both HHS and USDS.[93] Like Schutt, Coristine has also gained physical access to CISA and has an email address from DHS.[94]

172.    Elez, Farritor, Schutt, Coristine, and Wick are all part of Musk's key DOGE team and are core staffers of DOGE itself.[95]

173.    DOGE staff deployed to agencies primarily take direction from DOGE's leaders, not agency heads.

---

[91] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 13, 19, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[92] McLaughlin, *supra* note 77.

[93] Defs.' Objs. and Resps. to Ps' Reqs. for Expedited Disc. at 9, *AFL-CIO v. Dep't of Labor*, 25-cv-0339 (JDB) (D.D.C. Mar. 29, 2025), ECF No. 73-2, *available at* https://www.documentcloud.org/documents/25873564-aflcio-v-labor-doge-employee-access-exhibit/.

[94] David DiMolfetta, *DOGE Employee Edward Coristine Lands at CISA with DHS Email*, NextGov (Feb. 19, 2025), https://www.nextgov.com/cybersecurity/2025/02/doge-employee-edward-coristine-lands-cisa-dhs-email/403126/. Coristine sometimes uses the online alias "Big Balls." *See, e.g.,* Raphael Satter, *Exclusive: DOGE Staffer, 'Big Balls', Provided Tech Support to Cybercrime Ring, Records Show*, USA Today (Mar. 26, 2025), https://www.usatoday.com/story/news/politics/2025/03/26/doge-staffer-big-balls-edward-coristine/82667607007/.

[95] James Bickerton, *Who Is Helping DOGE? List of Staff Revealed*, Newsweek (updated Feb. 14, 2025, 6:14 PM), https://www.newsweek.com/doge-list-staff-revealed-2029965; *see also* Vittoria Elliott, *The Young, Inexperienced Engineers Aiding Elon Musks's Government Takeover*, WIRED (Feb. 2, 2025, 2:02 PM), https://www.wired.com/story/elon-musk-government-young-engineers/.

174.    For example, at the end of May, a former DOGE staffer, Sahil Lavingia, separated from government service and spoke publicly about his time working with DOGE.[96]

175.    While working for DOGE, Lavingia was assigned to work at the VA.[97]

176.    At the VA, Lavingia received work instructions from Steve Davis, who dictated what the DOGE Team at the VA should prioritize.[98]

### DOGE's Funding

177.    The Trump Administration funded DOGE by invoking the Economy Act.[99]

178.    As of February 20, 2025, DOGE received nearly $40 million in funding that was transferred from other agencies.[100]

179.    The Economy Act may only be invoked by "[t]he head of an agency or major organizational unit within an agency." 31 U.S.C. § 1535(a); *see also* 48 C.F.R. § 17.502-2(a) ("The Economy Act (31 U.S.C. 1535) authorizes agencies to enter into agreements to obtain supplies or services from another agency. . . . The Economy Act also provides authority for placement of orders between major organizational units within an agency[.]").

### DOGE's Use of Ephemeral Messaging Platforms

180.    Electronic communications "made or received by a Federal agency under Federal law or in connection with the transaction of public business" are records that must be preserved under the FRA. 44 U.S.C. § 3301(a).

---

[96] Vittoria Elliot, *WIRED Talked to a Fired DOGE Staffer About Who Was Really in Charge*, WIRED (May 29, 2025 8:07 PM), https://www.wired.com/story/fired-doge-staffer-who-is-in-charge/.
[97] *Id.*
[98] *Id.*
[99] Avi Asher-Schapiro *et al.*, *DOGE's Millions: As Musk and Trump Gut Government, Their Ax-Cutting Agency Gets Cash Infusion*, ProPublica (Feb. 20, 2025, 3:55 PM), https://www.propublica.org/article/doge-trump-musk-funding-foia-congress-transparency.
[100] *Id.*

181.    This includes messages sent on ephemeral messaging platforms.

182.    On information and belief, the former U.S. Digital Service set up a Slack platform that was configured to ensure that the agency was able to comply with its records preservation obligations under FOIA and the FRA.

183.    In February 2025, however, DOGE employees were instructed to stop using Slack in order to migrate communications to a platform that would be administered within the Executive Office of the President.[101]

184.    Instead, DOGE has used ephemeral messaging platforms such as Signal and Mattermost, an open-source alternative to Slack.

185.    For example, the instructions the VA DOGE team received from Steve Davis, *see supra* ¶¶ 174-76, were primarily transmitted using Signal.[102]

186.    Signal is an open-source, encrypted messaging service that allows users to send text, audio, video, and picture messages to other users.

187.    Signal includes a function that allows users to set time limits by which their sent messages will disappear and be deleted from both the sender's and recipient's devices.[103]

188.    Upon information and belief, Signal messages are stored only on an individual's device, with no copy or back-up of the messages retained on the Signal's servers; this means that

---

[101] Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025, 11:49 AM), https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/.

[102] *See* Elliot, *supra* n. 96.

[103] For an explanation of ephemeral messaging, *see*, *e.g.*, Set and Manage Disappearing Messages, Signal, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages; Stories, Signal, https://support.signal.org/hc/en-us/articles/5008009166234-Stories; Disappearing Messages with a Linked Device, Signal, https://support.signal.org/hc/en-us/articles/5532268300186-Disappearing-Messages-with-a-Linked-Device.

Signal messages can be preserved by the individual users through screenshots or other means, but, once deleted, messages may not be able to be restored or retrieved.[104]

189.    Upon information and belief, DOGE has not established effective controls or safeguards to ensure that messages sent on Signal concerning official government business are forwarded to and preserved in a federal records management program.

190.    Upon information and belief, DOGE has not established effective controls or safeguards to prohibit personnel from enabling Signal's auto-deletion features that violate federal recordkeeping requirements.

191.    Mattermost is another open-source messaging platform.

192.    Mattermost can be configured to auto-delete messages after a certain period of time.[105]

193.    On information and belief, DOGE staff, including Musk and Davis, have used open-source, ephemeral messaging platforms such as Signal to communicate regarding official federal government matters since at least December 2024.[106]

---

[104] *See Backup and Restore Messages*, Signal (last visited July 22, 2025), https://support.signal.org/hc/en-us/articles/360007059752-Backup-and-Restore-Messages.

[105] *See* Data Retention Policy, Mattermost, https://docs.mattermost.com/comply/data-retention-policy.html (discussing the ability of Mattermost Enterprise customers to set custom retention policies); *see also* How to Delete Old Messages Automatically in a Channel?, Mattermost Discussion Forums, https://forum.mattermost.com/t/how-to-delete-old-messages-automatically-in-a-channel/13397; Disappearing Messages, Mattermost Discussion Forums, https://forum.mattermost.com/t/disappearing-messages/15091.

[106] *See, e.g.*, Ken Thomas *et al.*, *Inside the Early Days of DOGE,* Wall St. J. (Jan. 17, 2025, 5:00 AM), https://www.wsj.com/politics/policy/doge-federal-reform-musk-ramaswamy-118a3833?reflink=desktopwebshare_permalink; Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html?partner=slack&smid=sl-share; *see also* Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025, 11:49 AM), https://www.404media.co/doge-

194.     On information and belief, DOGE staff, including Musk, have continued to use Signal since January 20, 2025, to send messages regarding official government matters that were only visible to the recipients and/or were automatically deleted after hours, days, or weeks.[107]

195.     On information and belief, at least some of these Signal messages were not preserved before they were deleted.

196.     On information and belief, DOGE staff also use the messaging platform Mattermost for some official communications.[108]

197.     Upon information and belief, DOGE has not established effective controls or safeguards to ensure that messages sent on Mattermost concerning official government business are forwarded to and preserved in a federal recordkeeping program.

198.     Upon information and belief, DOGE has not established effective controls or safeguards to prohibit personnel from enabling auto-deletion features on Mattermost that violate federal recordkeeping requirements.

---

employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/.

[107] *See* Schleifer & Ngo, *supra* note 106; Alexandra Ulmer *et al.*, *Exclusive: Musk's DOGE Using AI to Snoop on U.S. Federal Workers, Sources Say*, Reuters (Apr. 8, 2025, 11:36 AM), https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/.

[108] DOGE attached a document dated March 25, 2025, and titled United States DOGE Service Records Retention Policy, as an exhibit in *American Oversight v. Department of Government Efficiency*, 25-cv-0409 (BAH) (D.D.C. Mar. 27, 2025), ECF No. 13-2.  This policy references Mattermost as a type of electronic communication that is subject to the retention policy. Mattermost is used at Elon Musk-controlled companies like Tesla. *See, e.g.*, Casey Newton & Zoë Schiffer, *Twitter Shut Off its Internal Slack, and Now 'Everyone is Barely Working'*, The Verge (Feb. 24, 2023, 9:00 AM), https://www.theverge.com/2023/2/24/23613288/twitter-slack-jira-outages-performance-degradation.

199.    On information and belief, federal records responsive to Plaintiff's FOIA requests—including Signal and Slack communications—have already been removed or destroyed or may soon be.

200.    On information and belief, the use of open-source accounts and ephemeral messaging without adequate procedures and safeguards to retain those records on official government recordkeeping programs emanated from DOGE leadership, including Musk and Davis.

201.    On information and belief, DOGE leadership's use of ephemeral messaging platforms necessitates that lower-level DOGE staff also use those platforms, also without adequate safeguards to retain messages on official government recordkeeping programs.

202.    As such, the use of ephemeral messaging platforms without adequate procedures to retain messages on official government recordkeeping programs reflects an agency policy or practice.

### *DOGE's Use of Google Docs*

203.    DOGE staffers are "bypassing . . . chains of custody for official government documents by working simultaneously out of Google Docs instead of circulating single copies of drafts," with "multiple people in one Google Doc editing things simultaneously."[109]

204.    Work product created by DOGE staffers on Google Docs and all drafts thereof are federal records that must be preserved under the FRA. The FRA requires working drafts to be individually preserved where they were "circulated or made available to employees, other than the creator" for "approval, comment, action, recommendation, follow-up, or to communicate with

---

[109] *See* Ulmer *et al.*, *supra* note 83.

agency staff about agency business," and "contain unique information, such as substantive annotations or comments." 36 C.F.R. § 1222.12(c).

205.    The nature of Google Docs, and the fact that multiple DOGE staffers work in a single document simultaneously, means that draft documents are necessarily circulated or made available to employees.

206.    Furthermore, on information and belief, many draft Google Docs contain unique information, such as substantive annotations or comments.

207.    Other uses of Google Docs include using a single shared document as a shared message pad—like a physical whiteboard on which people write notes to one another, erasing previous notes along the way—as an alternative to email.

208.    Only certain paid Google product suites have the ability to show who edited which part of a document.[110]

209.    Moreover, Google Docs does not necessarily save all prior versions of a document, but may instead "merge [previous versions] to save storage space."[111]

210.    On information and belief, DOGE has not established effective controls or safeguards within its version of Google Docs to ensure that all federal records are captured and preserved.

211.    Accordingly, DOGE's use of Google Docs runs a substantial risk that federal records have been wrongfully disposed of already, because prior drafts have likely been lost, along

---

[110] Google Docs Editors Help, *Find what's changed in a file*, https://support.google.com/docs/answer/190843 (stating that seeing "who changed a part of a document in Google Docs" is "available to only Google Workspace Business Standard, Business Plus, Enterprise Standard, Enterprise Plus, and Education Plus customers") (last visited July 22, 2025).

[111] *Id.*

with records showing which staffers contributed which sections to drafts of documents and commentary included in comment bubbles or other annotations.

212.    For the same reasons, DOGE's use of Google Docs also threatens the imminent wrongful destruction of additional federal records.

213.    Google Docs threatens the imminent and wrongful destruction for a second, independent reason.

214.    The Google Docs program contains an internal chat feature that allows all users working simultaneously on a document to chat directly within the document itself.[112]

215.    However, communications within these chats are not saved.

216.    Google states both in its instructions and directly within these chats themselves (sample screenshot below) that those communications are not saved:[113]



217.    On information and belief, DOGE is using Google Docs internal chats.

218.    On information and belief, DOGE has not established effective controls or safeguards within its version of Google Docs to preserve Google Docs internal chats in federal records management programs.

---

[112] Google Docs Editors Help, Chat with others in a file, https://support.google.com/docs/answer/2494891 (last accessed July 22, 2025).
[113] *Id.*

219.    Google Docs internal chats are "recorded information . . . made or received by [DOGE] in connection with the transaction of public business." *See* 44 U.S.C. § 3301.

220.    Chats within a Google Doc are federal records that must be preserved.

221.    On information and belief, DOGE uses Google Docs on the instructions of DOGE leadership. As such, DOGE's use of Google Docs without adequate procedures to retain messages on official government records management programs reflects an agency policy or practice.

### DOGE's Records Retention Policy

222.    In a separate FOIA action against DOGE brought by American Oversight in this District, DOGE produced a Records Retention Policy. *See* United States DOGE Service Records Retention Policy, *Am. Oversight v. Dept. of Govt. Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Mar. 27, 2025), ECF No. 13-2.

223.    The Records Retention Policy is dated March 25, 2025.

224.    March 25 is one day after American Oversight filed a Motion for a Preservation Order that asked the court to order DOGE to preserve all records responsive to the FOIA requests at issue in that lawsuit. Pl.'s Mot. for Preservation Order, *Am. Oversight v. Dept. of Govt. Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Mar. 24, 2025), ECF No. 12.

225.    The Records Retention Policy purports to be in accord with the PRA, not the FRA or FOIA.

226.    The Records Retention Policy advises, but does not require, that DOGE employees, "disabl[e] auto-delete features" on messaging services like Signal.

227.    The policy also states that "the easiest way to comply" with recordkeeping obligations "is to use work devices for all work-related activities," but stops short of *requiring* DOGE employees to do so.

228.    The policy states further that some materials need not be preserved, such as "certain materials without historical value, such as notes, drafts, or similar documents that are not circulated or that are not created or saved for purposes of documenting the activities or deliberations of the Administration," because those materials "are not covered by the PRA."

229.    As such, the policy fails to require the preservation of materials mandated by the FRA.

### American Oversight Puts DOGE and NARA on Notice of FRA Violations

230.    On January 22, 2025, American Oversight sent a letter to Elon Musk in his capacity as DOGE's apparent leader, notifying him of the likely unlawful destruction or removal of federal records protected by the FRA.[114] That same day, American Oversight sent similar letters to the Departments of Defense, Health and Human Services, Homeland Security, Treasury, and Veterans Affairs, as well as OMB and NARA, regarding the likely destruction or removal of DOGE communications.[115]

231.    To date, American Oversight has received no response from Musk or anyone else associated with DOGE to the letter sent January 22.

232.    American Oversight received a response to one of the January 22 agency letters from William Fischer, Chief Records Officer of NARA. This letter stated only that "[t]he issues raised in your letter are now before the United States District Court for the District of Columbia Circuit, *see CREW v. U.S. DOGE Service*, 1:25-cv-00511. The National Archives and Records

---

[114] Letter from Ron Fein, Chief Counsel, American Oversight, to Elon Musk, DOGE, *Potential Unlawful Destruction or Removal of DOGE Communications* (Jan. 22, 2025), https://americanoversight.org/featureddocument/american-oversight-letters-to-elon-musk-and-multiple-federal-agencies-warning-against-the-unlawful-destruction-or-removal-of-doge-communications/.

[115] *Id.*

Administration (NARA) is a party to that litigation, and will work closely with the Department of Justice to respond appropriately through that process." A true and correct copy of this letter is attached as Exhibit 1.

### *DOGE's Evasion of Access Logging Systems at the NLRB*

233.    In early March 2025, a DOGE team accessed confidential data on the computer systems of the National Labor Relations Board ("NLRB").[116]

234.    Based on these events, a whistleblower, Daniel Berulis, a technical expert at the NLRB, submitted an official disclosure to Congress and the Office of Special Counsel.[117]

235.    The DOGE team demanded the highest level of access to NLRB computer systems—"tenant owner level" accounts "with essentially unrestricted permission to read, copy and alter data."

236.    But the DOGE team rebuffed NLRB staff's offer to grant such access in a manner that would log DOGE activity consistent with the NLRB's cybersecurity policies.[118]

237.    DOGE programmer Jordan Wick wrote code to access NLRB's internal case management system, NxGen.[119]

238.    DOGE programmers insisted that their activities not be logged.[120]

---

[116] *See* Jenna McLaughlin, *A Whistleblower's Disclosure Details How DOGE May Have Taken Sensitive Labor Data*, NPR (Apr. 15, 2025, 5:00 AM), https://www.npr.org/2025/04/15/nx-s1-5355896/doge-nlrb-elon-musk-spacex-security.
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Id.*

239.    While DOGE programmers were accessing the NLRB's systems, an unusually large amount of data exited the NLRB's network. NLRB technical staff were sufficiently concerned that they launched a formal breach investigation and sought assistance from CISA.[121]

240.    DOGE programmers deleted access logs, records of the data exfiltration, and other records of their activities from the NLRB's computer systems.[122]

241.    Deleting access logs from a government computer system in this manner violates the FRA.[123]

### *American Oversight's FOIA Requests*

242.    American Oversight has submitted more than 40 FOIA requests to DOGE since January 20, 2025.

243.    American Oversight will continue to submit FOIA requests to DOGE.

244.    American Oversight has already filed one previous lawsuit against DOGE seeking to compel DOGE to produce records responsive to American Oversight's FOIA requests. *See Am. Oversight v. Dep't of Gov't Efficiency*, No. 25-cv-0409 (BAH) (D.D.C. Feb. 11, 2025).

245.    DOGE's use of Google Docs means that records responsive to a number of American Oversight's FOIA requests have already or may imminently be disposed of unlawfully.

246.    Likewise, DOGE's use of Signal and Mattermost mean that records responsive to American Oversight's FOIA requests have already or may imminently be disposed of unlawfully.

---

[121] *Id.*

[122] *Id.*

[123] *Id.*

*Agency Dismantling FOIA Request*

247.    On February 24, 2025, American Oversight submitted a FOIA request to USDS@omb.eop.gov,[124] bearing internal tracking number USDS-25-0491 ("Agency Dismantling Request"), seeking the following records from January 29, 2025, through the date the search is conducted for part 1, and from January 20, 2025 through the date the search is conducted for part 2:

1.    **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) sent or received by any of the USDS officials listed below and containing any of the following key terms, also listed below.

     USDS Officials:
     i.    Elon Musk
     ii.   Anyone serving as Elon Musk's chief of staff, secretary, scheduler, assistant, senior adviser, and/or special adviser

     Key Terms:
     a.    "clean house"
     b.    Gemini
     c.    "shut down"
     d.    shutter
     e.    resign*
     f.    dismantl*
     g.    eliminat*
     h.    freez*
     i.    froz*
     j.    reduc*
     k.    separat*
     l.    gut
     m.    death
     n.    die
     o.    pause
     p.    RIP
     q.    RIF
     r.    "admin leave"
     s.    "admin. leave"
     t.    "administrative leave"
     u.    Rubio
     v.    Bessent
     w.    USAID
     x.    U.S.A.I.D.
     y.    "Agency for International Development"
     z.    CFPB
     aa.   "Consumer Financial Protection"
     bb.   Benz
     cc.   "foreign aid"

---

[124] This email address, historically, was the government's preferred method for requesters to submit FOIA requests to the former U.S. Digital Service, which was restructured into the U.S. DOGE Service. DOGE has not published new instructions for how to contact the agency or submit records requests.

dd. "foreign assistance"
ee. Humanitarian
ff. Education
gg. "stop work"
hh. "stop-work"

ii. Rohit
jj. Chopra
kk. cessation
ll. Vought

2. **All email communications** (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) **and text messages** (including complete text message threads or conversations) **or messages on messaging platforms** (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) <u>sent or received</u> by any of the USDS officials listed below <u>and</u> containing any of the following key terms, also listed below.

<u>USDS Officials</u>:
i.      Steve Davis
ii.     Brad Smith
iii.    Katie Miller
iv.     Riccardo Biasini
v.      Akash Bobba
vi.     Edward Coristine
vii.    Luke Farritor
viii.   Gautier "Cole" Killian
ix.     Gavin Kliger
x.      Nikhil Rajpal
xi.     Anthony Armstrong
xii.    Stephanie Holmes

<u>Key Terms</u>:
a. "clean house"
b. Gemini
c. "shut down"
d. shutter
e. resign*
f. dismantl*
g. eliminat*
h. freez*
i. froz*
j. reduc*
k. separat*
l. gut
m. death
n. die
o. pause
p. RIP

q. RIF
r. "admin leave"
s. "admin. leave"
t. "administrative leave"
u. Rubio
v. Bessent
w. USAID
x. U.S.A.I.D.
y. "Agency for International Development"
z. CFPB
aa. "Consumer Financial Protection"
bb. Benz
cc. "foreign aid"

| | |
|---|---|
| dd. "foreign assistance" | kk. cessation |
| ee. Humanitarian | ll.  Vought |
| ff.  Education | mm.        purg* |
| gg. "stop work" | nn. remov* |
| hh. "stop-work" | oo. terminat* |
| ii.  Rohit | pp. dismiss* |
| jj.  Chopra | qq. fir* |

*See* Exhibit 2.

248.    After submitting this request, American Oversight received correspondence from the email address admin@DOGE.eop.gov related to FOIA requests not at issue in this lawsuit. Accordingly, on April 17, 2025, American Oversight resubmitted 17 separate FOIA requests to that email address that had previously been sent to USDS@omb.eop.gov, including the Agency Dismantling Request.

249.    On April 17, 2025, American Oversight received an email response to one of the resubmitted requests not at issue in this lawsuit that appeared to be a blanket denial of all 17 requests, stating: "As set forth in Executive Order 14158, Establishing and Implementing the President's "Department of Government Efficiency," USDS sits within the Executive Office of the President, and the USDS Administrator reports to the President's Chief of Staff. We write now to inform you that USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 *et seq.*, and is not subject to FOIA.  We therefore decline your requests." *See* Exhibit 3.

250.    Google Docs chats and Signal messages that included the listed keywords are responsive to this request.

### *Gleason Communications Request*

251.    On  March  7,  2025,  American  Oversight  submitted  a  FOIA  request  to USDS@omb.eop.gov,    bearing    internal    tracking    number    USDS-25-0607    ("Gleason

Communications Request"), seeking the following records from January 20, 2025, through the date the search is conducted:

1.  All records reflecting communications (including emails, email attachments, text messages, messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler), telephone call logs, calendar invitations, calendar entries, meeting notices, meeting agendas, informational material, draft legislation, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) received by Amy Gleason notifying her of her appointment to serve as the Acting Administrator of USDS.

2.  All calendars or calendar entries for Amy Gleason, including any calendars maintained on her behalf, from January 20, 2025, through the date the search is conducted.

    American Oversight requests that the calendars be produced in a format that includes all invitees, any notes, and all attachments.

    Please do not limit your search to electronic calendars; we request the production of any calendar — paper or electronic, whether on government-issued or personal devices — used to track or coordinate how Gleason allocates her time on agency business.

    This search should include any calendars associated with Gleason's email accounts, as well as any official calendars maintained for him, including by an aide, assistant, or scheduler.

3.  All text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) sent or received by Amy Gleason.

4.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by Amy Gleason — and/or anyone communicating on her behalf, including a chief of staff, assistant, and/or secretary — to any email address ending in .com, .co, .us, .net, .org, .mail, .edu, .law, .ch, and/or .me.

    In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part four of this request to emails sent by Amy

Gleason — and/or anyone communicating on her behalf, including a chief of staff, assistant, and/or secretary. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both Gleason's response to an email from an email address ending in .com and the initial received message are responsive to this request and should be produced.

5. All records reflecting guidance — including directives, instructions, directions, memoranda, and/or any other written guidance — issued by Amy Gleason in her role as Acting Administrator of USDS.

*See* Exhibit 4.

252. American Oversight resubmitted this request to [admin@DOGE.eop.gov](mailto:admin@DOGE.eop.gov) on April 17, 2025, as part of the batch of 17 resubmitted requests, and understands the blanket denial to apply to this request as well. *See supra* ¶¶ 248-49.

253. Google Docs chats and Signal messages are responsive to parts 1 and 3 of the Gleason Communications Request.

254. Prior versions and drafts of any guidance documents referenced in Part 5 of the Gleason Communications Request are responsive to this request.

### *Oversight Guidance Request*

255. On March 11, 2025, American Oversight sent a FOIA request to [USDS@omb.eop.gov](mailto:USDS@omb.eop.gov), bearing internal tracking number USDS-25-0610 ("Oversight Guidance Request"), seeking the following records from January 20, 2025, through the date the search is conducted:

All records reflecting guidance — including directives, instructions, directions, memoranda, informal email guidance, and/or any other informal written guidance — created and/or issued by U.S. DOGE Service regarding oversight of the executive branch – including congressional oversight (both specific congressional oversight of specific matters and general policies, concerns, and considerations related to congressional oversight of the executive branch), requests from agency's Inspectors General, requests from the Governmental Accountability Office (GAO), and/or FOIA requests.

*See* Exhibit 5.

256.    DOGE has not acknowledged receipt of this request nor otherwise communicated about this request with American Oversight.

*Probationary Employee Firing Request*

257.    On March 11, 2025, American Oversight sent another request to USDS@omb.eop.gov, bearing internal tracking number USDS-25-0636 ("Probationary Employee Firings Request"), seeking the following records from February 1, 2025, through the date the search is conducted:

1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) between (a) the U.S. DOGE Service (USDS) officials listed below, and (b) the external individuals listed below.

    USDS Officials:
    1. Elon Musk
    2. Amy Gleason
    3. Steve Davis
    4. Brad Smith
    5. Katie Miller
    6. Stephanie Holmes
    7. Chris Young
    8. Amanda Scales
    9. Kendall Lindemann
    10. Stephanie Holmes
    11. Christina Hanna
    12. Stephen Duarte
    13. Bryanne-Michelle Mlodzianowksi

    External Individuals:
    a. Linda McMahon, Department of Education Secretary
    b. Denise Carter, Department of Education Former Acting Secretary
    c. James Bergeron, Department of Education Deputy Under Secretary
    d. Anyone serving in the capacity of Department of Education General Counsel
    e. Candice Jackson, Department of Education Deputy General Counsel
    f. Rachel Oglesby, Department of Education Chief of Staff
    g. Steve Warzoha, Department of Education White House Liaison
    h. Doug Burgum, Department of the Interior Secretary

    i.  Walter Cruickshank, Department of the Interior Former Acting Secretary
    j.  Bivan Patnaik, Department of the Interior Director of the Office of the Executive Secretariat and Regulatory Affairs
    k.  Preston Heard, Department of the Interior Deputy Director of Secretarial Correspondence
    l.  Kelly Loeffler, Small Business Administration Administrator
    m.  Wesley Coopersmith, Small Business Administration Chief of Staff
    n.  Tyler Teresa, Small Business Administration White House Liaison
    o.  Wendell Davis, Small Business Administration General Counsel
    p.  Julie Brill, Small Business Administration Acting Chief Human Capital Officer
    q.  Charles Ezell, Office of Personnel Management Acting Director
    r.  Amanda Scales, Office of Personnel Management Chief of Staff
    s.  Riccardo Biasini, Office of Personnel Management Senior Advisor
    t.  Noah Peters, Office of Personnel Management Senior Advisor

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent</u> by the USDS officials listed above in part 1, <u>and</u> containing any of the key terms listed below.

    <u>Key Terms</u>:
    a.  "SF-50"
    b.  Probationary
    c.  "further employment"

In an effort to accommodate your agency and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited its request to emails sent by the listed officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means, for example, that both a listed official's response to an email containing any of the key terms listed above and the initial received message are responsive to this request and should be produced.

3. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to your agency regarding the termination of probationary employees.

*See* Exhibit 6.

258.    American Oversight resubmitted this request to admin@DOGE.eop.gov on April 17, 2025, as part of the batch of 17 resubmitted requests, and understands the blanket denial to apply to this request as well. *See supra* ¶¶ 248-49.

<u>*Steve Davis Signal Communications Request*</u>

259.    On June 17, 2025, American Oversight submitted a FOIA request to admin@DOGE.eop.gov, bearing internal tracking number USDS-25-1567, seeking the following records from January 20, 2025, through the date the search is conducted:

1.  All email communications                (including emails, complete email chains, calendar invitations, and attachments thereto) sent or received by Steven Davis, or anyone communicating on his behalf, such as an assistant or scheduler, that contain any of the following terms:

    Key Terms:
    a.  Signal
    b.  "group chat"
    c. "E-meeting"
    d. "E meeting"

2.  All messages sent or received by Steven Davis related to official government business (including complete message threads or conversations) on the messaging app Signal, including any app that can interface with Signal or otherwise borrow its technology (including but not limited to TeleMessage).

*See* Exhibit 7.

260.    DOGE has not acknowledged receipt of this request nor otherwise communicated about this request with American Oversight.

### DOGE's Use of Signal, Mattermost, and Google Docs Violates FOIA and the FRA

261.    Upon information and belief, Defendants have used Signal, without implementing adequate safeguards to preserve and prevent destruction of messages, to communicate about matters that may otherwise have been discussed via email, to avoid creating and preserving records responsive to American Oversight's FOIA requests for emails.

262.     Upon information and belief, Defendants have used Mattermost platforms, without implementing adequate safeguards to preserve and prevent destruction of messages, to communicate about matters that may otherwise have been discussed via official government communications platforms, thereby avoiding creating and preserving records responsive to American Oversight's FOIA requests.

263.     Upon information and belief, Defendants have used Google Docs, without implementing adequate safeguards to preserve and prevent destruction of communications, to communicate about matters that may otherwise have been discussed via email, thereby avoiding creating and preserving records responsive to American Oversight's FOIA requests.

264.     Upon information and belief, Defendants have used Google Docs to avoid creating and separately preserving individual drafts of documents with commentary and that reflect which individuals created which sections, thereby avoiding creating and preserving records responsive to American Oversight's FOIA requests.

265.     Upon information and belief, Defendants Musk, Davis, and Gleason (the "Individual Defendants"), in their capacities as heads of DOGE, have not taken steps to preserve messages sent or received in Signal chats or to recover any that have been lost or deleted.

266.     Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve messages sent or received in Mattermost chats or to recover any that have been lost or deleted.

267.     Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve messages sent or received in Google Docs chats or to recover any that have been lost or deleted.

268.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve all prior drafts of federal records produced in Google Docs with their commentary and reflecting which individuals contributed which sections to documents, nor taken steps to recover any prior drafts that have been lost or deleted.

269.    Upon information and belief, the Individual Defendants, in their capacities as heads of DOGE, have not taken steps to preserve records in other electronic communication systems that permit ephemeral messaging or can be configured or used not to preserve records.

*Exhaustion of FOIA Administrative Remedies*

270.    As of the date of this Complaint, the DOGE Defendants have failed to: (a) notify American Oversight of a final determination regarding any of the FOIA requests at issue here, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

271.    More than 20 working days have passed since all FOIA requests at issue in this lawsuit were filed.

272.    Through Defendants' failures to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

273.    Further, as the DOGE Defendants claim not to be subject to FOIA and denied some of American Oversight's FOIA requests on that ground, the DOGE Defendants have failed to establish any procedures for administrative review. Thus, any attempt to administratively appeal the denials would be futile and American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

## CLAIMS FOR RELIEF

### Count I – as to Defendants Musk, Davis, and Gleason
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
### for declaratory and injunctive relief
### DOGE Records Retention Policy—Ephemeral Messaging Systems

274.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

275.    Messages in Signal chats, Mattermost, Google Docs chats, or other ephemeral messaging systems responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id.* § 2904(c)(1), 2911, and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

276.    Individual Defendants, in their capacities as agency heads, know or reasonably should know that the communications in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats constitute "records" under the FRA.

277.    The DOGE Records Retention Policy fails to require measures that would prevent the automatic deletion of messages in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats, which violates the Individual Defendants' obligations under the FRA.

278.    Through its failure to provide for measures that would prevent the deletion of messages, automatic or otherwise, sent on ephemeral messaging platforms, the DOGE Records Retention Policy fails to provide "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105, in violation of the Individual Defendants' obligations under the FRA.

279.    The formal retention policy therefore violates the FRA and its implementation by the Individual Defendants is a final agency action for which there is no other adequate remedy in a court of law.

280.    Moreover, the Individual Defendants' implementation of the DOGE Records Retention Policy is an agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count II – as to Defendants Musk, Davis, and Gleason**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief**
**DOGE Records Retention Informal Policy—Ephemeral Messaging Systems**

281.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

282.    Messages in Signal chats, Mattermost, Google Docs chats, or other ephemeral messaging systems responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1), 2911, and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

283.    Individual Defendants, in their capacities as agency heads, know or reasonably should know that the communications in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats constitute "records" under the FRA.

284.    By permitting and engaging in the use of Signal, Mattermost, Google Docs chats or other ephemeral messaging systems, without adequate measures to preserve all records in official recordkeeping systems or prevent the deletion, automatic or otherwise, of messages, to

communicate regarding agency business, Defendants have failed to establish a records management program providing "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

285.    The use of ephemeral messaging systems, that on information and belief lack FRA-compliant retention measures, by agency heads Musk and Davis to message their subordinates within DOGE necessitates that lower-level staffers use noncompliant messaging systems and thus reflects an informal agency policy or practice.

286.    The informal recordkeeping policy and practices Individual Defendants have in place at DOGE—namely, the use of ephemeral messaging systems that either do not forward all records to official recordkeeping systems or are set to auto-delete messages—are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

287.    Through their failure to require measures that would prevent the deletion of messages, automatic or otherwise, sent on ephemeral messaging platforms, Individual Defendants have implemented informal recordkeeping policy and practices at DOGE that fail to provide "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105, in violation of the FRA.

288.    The informal recordkeeping policy and practices therefore violate the FRA and are final agency action for which there is no other adequate remedy in a court of law.

289.    Moreover, the informal recordkeeping policy and practices are agency actions that are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count III – as to Defendants Musk, Davis, and Gleason**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief**
**Failure to Notify Archivist or Initiate Recovery Action—Ephemeral Messaging**

290.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

291.    Upon information and belief, messages in Signal, Mattermost, Google Docs chats or other ephemeral messaging system chats have not been and are not being maintained in accordance with the FRA.

292.    Upon information and belief, messages in Signal, Mattermost, Google Docs chats, or other ephemeral messaging system chats responsive to American Oversight's FOIA requests are being or will imminently be destroyed in contravention of the FRA.

293.    Individual Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

294.    Individual Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

295.    Each Defendant is on notice of the unlawful removal or destruction of agency records, at minimum because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein. *See supra* ¶ 230.

296.    Each Defendant is further on notice of the unlawful removal or destruction of agency records because of public reporting detailing concerns about DOGE's recordkeeping practices and concerns over the wider use of Signal across the executive branch.[125]

297.    Where, as here, the actual, impending, or threatened unlawful removal, deletion, erasure, or other destruction of records is known to Individual Defendants, each Individual Defendant, in their respective capacities as agency heads, has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist.

298.    Where, as here, the unlawful removal of records is known to Individual Defendants, each Individual Defendant, in their respective capacities as agency heads, has a nondiscretionary duty under the FRA to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

299.    Individual Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

300.    Individual Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

301.    Individual Defendants' failures to act constitute final agency actions for which there is no other adequate remedy in a court of law. Moreover, they are agency actions unlawfully

---

[125] *See, e.g.*, Jason Koebler & Joseph Cox, *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025, 11:49 AM), https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/; Maggie Miller & Amy MacKinnon, *Inside the Hazy, Fractured Mess of Signal Use in the Government*, Politico (updated Apr. 2, 2025 2:18 PM), https://www.politico.com/news/2025/04/02/inside-the-hazy-fractured-mess-of-signal-chats-in-the-government-00264466.

withheld or unreasonably delayed, and are also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**<u>Count IV – as to Defendants Musk, Davis, and Gleason</u>**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief**
**DOGE Records Retention Policy—Prior Versions of Google Docs**

302.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

303.    Prior versions of documents created in Google Docs responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

304.    Individual Defendants, in their capacities as agency heads, know or reasonably should know that prior versions of documents created in Google Docs constitute "records" under the FRA.

305.    The DOGE Records Retention Policy fails to require the preservation of all such prior versions of documents created in Google Docs.

306.    The DOGE Records Retention Policy also fails to prevent the use of Google Docs as a shared transient message pad because it does not require all communications to be conducted on FRA-compliant platforms.

307.    Through its failure to require measures that would preserve all prior versions of documents created in Google Docs, the DOGE Records Retention Policy fails to provide "effective

control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

308.    The Individual Defendants' implementation of the formal retention policy therefore violates the FRA and is a final agency action for which there is no other adequate remedy in a court of law.

309.    Moreover, it is an agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

<b><u>Count V – as to Defendants Musk, Davis, and Gleason</u></b><br><b>Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 <i>et seq.</i>,</b><br><b>for declaratory and injunctive relief</b><br><b>DOGE Records Retention Informal Policy—Google Docs</b>

310.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

311.    Prior versions of documents created in Google Docs responsive to American Oversight's FOIA requests, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1), 2911, and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

312.    Individual Defendants, in their capacities as agency heads, know or reasonably should know that prior versions of documents created in Google Docs constitute "records" under the FRA.

313.    By permitting and engaging in the use of Google Docs without adequate safeguards to preserve all prior versions, Individual Defendants have failed to establish a records management

program providing "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

314.    DOGE staffers' typical use of Google Docs was to, *inter alia*, allow multiple people to use the same document simultaneously and avoid recordkeeping obligations. This pattern of use does not reflect isolated instances of noncompliance with the FRA, but reflects an informal agency policy or practice.

315.    The informal recordkeeping policies and practices Individual Defendants have in place at DOGE are inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

316.    Through its failure to require measures that would preserve all prior versions of records created in Google Docs, DOGE's informal recordkeeping policies and practices fail to provide "effective control[] over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records," *id.* § 3105.

317.    The Individual Defendants' implementation of the informal recordkeeping policies and practices are therefore not in accordance with the FRA, and such implementation is a final agency action for which there is no other adequate remedy in a court of law.

318.    Moreover, the informal recordkeeping policies and practices are an agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count VI – as to Defendants Musk, Davis, and Gleason**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief**
**Failure to Notify Archivist or Initiate Recovery Action—Google Docs Prior Versions**

319.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

320.    Upon information and belief, prior versions of records created in Google Docs have not been and are not being maintained in accordance with the FRA.

321.    Upon information and belief, prior versions of records created in Google Docs responsive to American Oversight's FOIA requests are being or will imminently be destroyed in contravention of the FRA.

322.    Individual Defendants' failure to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

323.    Individual Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

324.    Each Individual Defendant is on notice of the likely unlawful removal or destruction of agency records, at minimum because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein. *See supra* ¶ 230.

325.    Where, as here, the actual, impending, or threatened unlawful removal, deletion, erasure, or other destruction of records is known to Individual Defendants, each Individual Defendant, in their respective capacities as agency heads, has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist.

326.    Where, as here, the unlawful removal of records is known to Individual Defendants, each Individual Defendant, in their respective capacities as agency heads, has a nondiscretionary

duty under the FRA to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

327.    Individual Defendants have failed to perform their nondiscretionary duties to notify the Archivist of the above-described known FRA violations.

328.    Individual Defendants have failed to perform their nondiscretionary duties to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

329.    Individual Defendants' failures and violations have injured American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

330.    Individual Defendants' failures to act constitute final agency actions for which there is no other adequate remedy in a court of law. Moreover, they are agency actions unlawfully withheld or unreasonably delayed, and are also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

## Count VII – as to Defendants NARA and Acting Archivist Rubio
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, for declaratory and injunctive relief

331.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

332.    Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so.

333.    Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records because of their receipt of the January 22, 2025, letter from American Oversight Chief Counsel Ron Fein, which was acknowledged by NARA on March 27, 2025. *See supra* ¶ 232; Ex. 1.

334.    Defendants NARA and Rubio have also been made aware of the unlawfully alienated agency records because of the widespread public reporting of this alienation.

335.    Defendant Rubio, as Acting Archivist, knows or reasonably should know that Defendants Musk, Davis, and Gleason failed to take appropriate action to preserve and recover records from the Signal chat.

336.    However, Defendant Rubio has also failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

337.    This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count VIII – as to the DOGE Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

338.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

339.    American Oversight properly requested records within Defendants' possession, custody, and control.

340.    Defendant Department of Government Efficiency has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA requests.

341.    Defendant USDS has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA requests.

342.    Defendant U.S. DOGE Service Temporary Organization has failed to promptly review agency records for the purpose of locating those records that are responsive to American Oversight's FOIA requests.

343.    Each Defendant's failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

344.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly search for and produce records responsive to American Oversight's FOIA requests.

**Count IX – as to the DOGE Defendants**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

345.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

346.    American Oversight properly requested records within Defendants' possession, custody, and control.

347.    Defendant Department of Government Efficiency is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

348.    Defendant USDS is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

349.    Defendant U.S. DOGE Service Temporary Organization is subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials within no more than twenty (20) working days of receipt of each of American Oversight's requests.

350.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to American Oversight's FOIA requests.

351.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA requests.

352.    Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

353.    Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to American Oversight's FOIA requests and provide *Vaughn* indexes justifying the withholding of any responsive records withheld under claim of exemption.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    Declare that messages and communications sent through the Signal and Mattermost applications in the course of conducting agency business are agency records subject to the FRA;

(2)     Declare that messages and communications sent through the Google Docs chat feature in the course of conducting agency business are agency records subject to the FRA;

(3)     Declare that prior drafts of documents created in Google Docs in the course of conducting agency business are agency records subject to the FRA;

(4)     Declare that the failure to ensure such messages and communications are preserved, as required by 44 U.S.C. § 2911, comprises an unlawful removal of federal records in violation of the FRA;

(5)     Declare that Defendants' formal and informal records retention policies violate the FRA;

(6)     Declare that Defendants have violated their respective duties under the FRA and APA;

(7)     Order Defendants to comply with their respective duties under the FRA and APA, including by notifying the Archivist of the actual or potential unlawful removal, deletion, or destruction of federal records and by referring the matter to the Attorney General to initiate proceedings for the recovery of unlawfully removed records and the recovery or restoration of any deleted or destroyed materials to the extent possible;

(8)     Order Defendants to preserve all materials relating to Plaintiff's claims under the FRA;

(9)     Order Defendants to conduct a search reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(10)     Order Defendants to produce, within 20 days of the Court's order, any and all non-exempt records responsive to American Oversight's FOIA requests, and *Vaughn* indexes of any responsive records withheld under claim of exemption;

(11)    Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(12)    Order Defendants to preserve all records potentially responsive to American Oversight's FOIA requests;

(13)    Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

(14)    Grant Plaintiff any other relief this Court deems appropriate.


Dated: July 22, 2025                          Respectfully submitted,

                                              /s/ David Kronig
                                              David Kronig
                                              D.C. Bar No. 1030649
                                              Elizabeth Haddix
                                              D.C. Bar No. 90019750
                                              Joanna Swomley*
                                              N.Y. Bar No. 1989763
                                              AMERICAN OVERSIGHT
                                              1030 15th Street NW, B255
                                              Washington, DC 20005
                                              (202) 897-3915
                                              david.kronig@americanoversight.org

                                              *Counsel for Plaintiff*

                                              *Admitted *pro hac vice*

60