**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 25-1251(RC) |
| U.S. DEPARTMENT OF | ) | |
| GOVERNMENT EFFICIENCY, *et al*., | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.      COURTS STRONGLY DISFAVOR AND ROUTINELY DENY STAYS BASED ON PROCEEDINGS IN A SEPARATE, UNRELATED CASE, LIKE THE ONE DEFENDANTS SEEK HERE. .............................................................................. 5

II.     A STAY WILL SIGNIFICANTLY HARM AMERICAN OVERSIGHT, BUT DEFENDANTS WILL SUFFER NO HARDSHIP IF THE CASE PROCEEDS. . 7

       A.    American Oversight Will Suffer Significant Harm..................................... 8

            1.    A Stay Improperly Denies American Oversight the Right to Litigate Its Case ............................................................................. 9

            2.    Defendants Improperly Seek an Indefinite Stay That Harms American Oversight ................................................................... 10

            3.    American Oversight Will Also Be Harmed by the Delay in Adjudication of its FOIA Requests ............................................... 13

            4.    American Oversight Will be Harmed by Ongoing Destruction of Records as a Result of Defendants' Deficient Recordkeeping Policies and Practices .................................................................. 14

       B.    Defendant's Failure to Demonstrate Hardship or Inequity in Being Required to Go Forward Is Fatal to Their Request for a Stay.................. 18

       C.    A Stay Will Not Promote Judicial Economy Because the Issues at Stake in CREW's Case Differ Significantly From Those Presented Here. ........ 19

CONCLUSION.................................................................................................. 21

## <u>TABLE OF AUTHORITES</u>

**Page(s)**

**Cases**

*Asylumworks v. Mayorkas*,
  2021 WL 2227335 (D.D.C. June 1, 2021) ............................................................. 18

*Allina Health Servs. v. Sebelius*,
  756 F. Supp. 2d 61 (D.D.C. 2010) .......................................................................... 7

*Armstrong v. Exec. Off. of the President, Off. of Admin.*,
  1 F.3d 1274 (D.C. Cir. 1993) ................................................................................. 16

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  668 F.3d 724 (D.C. Cir. 2012) ..................................................................... 4, 8, 9, 18

*Beltronics USA, Inc. v. Midwest Inventory Distribution LLC*,
  545 F. Supp. 2d 1188 (D. Kan. 2008) ...................................................................... 6

*Blumenthal v. Trump*,
  2019 WL 3948478 (D.D.C. Aug. 21, 2019) .............................................................. 6

*Bray v. QFA Royalties, LLC*,
  2007 WL 2688858 (D. Colo. Sept. 12, 2007) ........................................................... 6

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*,
  498 F. Supp. 3d 87 (D.D.C. 2020) .......................................................................... 13

*Carroll v. Wilson McColl & Rasmussen, Att'ys at L.*,
  2009 WL 315610 (D. Idaho Feb. 9, 2009) ................................................................ 6

*Citizens for Resp. & Ethics in Washington v. Off. of Admin.*,
  565 F. Supp. 2d 23 (D.D.C. 2008) .......................................................................... 15

*Clinton v. Jones*,
  520 U.S. 681 (1997) .............................................................................................. 4, 8

*Cntr. for Biological Diversity v. Office of Management and Budget*,
  No. 25-cv-165 (D.D.C. July 10, 2025) ...................................................................... 7

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ................................................................................................ 1

*CREW v. U.S. DOGE Serv.*,
  349 F.R.D. 1 (D.D.C. 2025) ................................................................................... 10

*Ctr. for Biological Diversity v. Ross*,
   419 F. Supp. 3d 16 (D.D.C. 2019) ............................................................................ Passim

*Ctr. for Pub. Integrity v. United States Dep't of Def.*,
   411 F. Supp. 3d 5 (D.D.C. 2019) ..................................................................................... 13

*Dawoudi v. Nationstar Mortg., LLC*,
   2016 WL 8711604 (N.D. Ill. Sept. 16, 2016) ..................................................................... 6

*Dellinger v. Mitchell*,
   442 F.2d 782 (D.C. Cir. 1971) ....................................................................................... 19

*Fowler-Bey v. Johnson*,
   2018 WL 11476084 (D. Md. Nov. 30, 2018) ..................................................................... 6

*Greenlaw v. United States*,
   554 U.S. 237 (2008) ....................................................................................................... 18

*Hisler v. Gallaudet Univ.*,
   344 F. Supp. 2d 29 (D.D.C. 2004) ................................................................................. 20

*In re U.S. DOGE Serv.*,
   2025 WL 1393222 (D.C. Cir. May 14, 2025) ................................................................. 10

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................. Passim

*Meyer v. Bush*,
   981 F.2d 1288 (D.C. Cir. 1993) ..................................................................................... 11

*Minnesota Voters All. v. Walz*,
   494 F. Supp. 3d 610 (D. Minn. 2020) .............................................................................. 6

*MSW Media v. U.S. DOGE Service*,
   No. 25-cv-1933 (D.D.C. July 14, 2025) ............................................................................ 7

*Nat'l Indus. for Blind v. Dep't of Veterans*,
   296 F. Supp. 3d 131 (D.D.C. 2017) ........................................................................... Passim

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ....................................................................................................... 13

*OCA - Asian Pac. Am. Advocs. v. Rubio*,
   2025 WL 1393153 (D.D.C. May 14, 2025) ........................................................... 5, 18, 20

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ........................................................ 13

*Philipp v. Fed. Republic of Germany*,
    253 F. Supp. 3d 84 (D.D.C. 2017) .................................................... 6

*Project on Gov't Oversight v. Trump*,
    No. 25-cv-527 (D.D.C. July 18, 2025) .............................................. 7

*Project on Gov't Oversight v. U.S. DOGE Service*,
    No. 25-cv-1295 (D.D.C. July 18, 2025) ............................................ 7

*Ready to Win v. Fed. Election Comm'n*,
    2023 WL 10512144 (D.D.C. July 28, 2023) ....................................... 6

*Sprint Comms., Inc. v. Jacobs*,
    571 U.S. 69 (2013) ........................................................................... 1

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ......................................................................... 1

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ..................................................................... 1

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ....................................................................... 13

*U.S. Dep't of Just. v. Tax Analysts*,
    492 U.S. 136 (1989) ....................................................................... 15

*U.S Doge Serv. v. Crew*,
    slip op. at 1, no. 24A1222 (U.S. June 6, 2025)................................ 11

*United States v. Honeywell Int'l*,
    20 F. Supp. 3d 129 (D.D.C. 2013)............................................. 18, 20

*Univ. of Colorado Health at Mem'l Hosp. v. Burwell*,
    233 F. Supp. 3d 69 (D.D.C. 2017).................................................... 7

**Statutes**

44 U.S.C. § 2201(2) ............................................................................ 16

44 U.S.C. § 3301(a)(1)(A)................................................................... 16

**Other Authorities**

Mot. to Expedite Disc.,
*CREW v. U.S. DOGE Serv.*, No. 25-cv-511 (D.D.C. March 27, 2025)........................................ 10

## INTRODUCTION

Federal courts decide the cases before them. They do not put a plaintiff's lawsuit on hold simply because a different plaintiff is litigating a similar issue against the same defendant in another case. The Supreme Court has repeatedly emphasized that principle across multiple doctrinal areas. *See, e.g.*, *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (a federal court should not abstain "simply because a pending state-court proceeding involves the same subject matter"); *Taylor v. Sturgell*, 553 U.S. 880, 884–85 (2008) (rejecting defendants' claim that a judgment against one plaintiff binds another, unrelated plaintiff raising a similar issue in another case); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (highlighting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). And when (as here) defendants seek to stay proceedings in one case pending resolution of separate litigation by another, unrelated plaintiff, the Court has emphasized that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

The fact that the defendants are part of the U.S. government does not change this principle. Every day, in federal courts across the country, unrelated plaintiffs sue the federal government on legal claims that may share legal or factual issues. Conflicting decisions may be resolved on appeal, but if the rule were that all litigation must wait for resolution of any other litigation raising similar issues, the business of the federal courts would grind to a halt. Indeed, just this Term the U.S. Supreme Court held that—outside of class actions or other special circumstances—when a plaintiff seeks an injunction against the federal government, it sues only for itself. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 & n.1 (2025). If unrelated plaintiffs cannot obtain *relief* for each other, then it makes no sense to force their cases to *wait* for each other.

1

Here, in the wake of sweeping changes the Department of Government Efficiency ("DOGE") made across the executive branch, Defendants seek an indefinite, and potentially years-long, stay of American Oversight's case—a stay that will prevent transparency into the destruction DOGE has wrought. Their motion to stay all proceedings in this case "until a final decision is rendered on whether [DOGE] is an agency subject to the Freedom of Information Act (FOIA)" in *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, No. 25-cv-511 (D.D.C. Feb. 20, 2025) [hereinafter *CREW*] should be denied for three reasons. Defs.' Mot. Stay Proceedings & Mem. Supp., ECF No. 15, at iii, [hereinafter "Defs.' Mot."]. First, courts strongly disfavor requests for a stay based on proceedings between parties in different litigations, and Defendants have not met their heavy burden to show any compelling need for such extraordinary relief, nor the requisite "clear case of hardship or inequity in being required to move forward . . . ." *Landis*, 299 U.S. at 255. Second, American Oversight would suffer significant harm from a stay due to (1) deprivation of its right to litigate its own case; (2) the requested stay's improperly indefinite duration; (3) delay of an adjudication on the merits of its Freedom of Information Act ("FOIA") claims that will indefinitely postpone receipt of records responsive to those requests; and (4) ongoing deficiencies in Defendants' recordkeeping policies and practices at the heart of this lawsuit, leading to a risk of irrevocable destruction of public records. Third, judicial economy is not served by a stay because the issue of DOGE's agency status is not now before this Court, nor is it currently pending before any court in *CREW*.

Defendants' motion should be denied and the Court should order Defendants to respond to the Amended Complaint within fourteen (14) days.

## BACKGROUND

Since January 20, 2025, the Department of Government Efficiency and its components the U.S. DOGE Service and U.S. DOGE Service Temporary Organization (collectively, "DOGE")

have operated in secrecy and at breakneck speed to overhaul agencies across the Executive Branch—dismantling entire agencies, canceling previously approved grants and contracts, overruling instructions from Senate-confirmed Cabinet members, directing the termination of tens of thousands of federal employees, and more. Am. Compl., ECF No. 14, ¶¶ 1–2, 58–59, 123–158. Meanwhile, DOGE has obfuscated even the most basic information about its internal operations, including the identity of the person or people directing its actions, *id.* ¶¶ 66–103, and its staff and officials have used nongovernmental, ephemeral messaging platforms like Signal and electronic document collaboration platforms like Google Docs—applications that lack the effective controls or safeguards necessary to ensure that public records are maintained as required under the Federal Records Act ("FRA")—to communicate about official government matters. *Id.* ¶¶ 3–4, 180–221.

In response to media reporting that DOGE staff were using ephemeral messaging systems in its operations to conduct government business, American Oversight sent a letter to Elon Musk as DOGE's leader, the National Archives and Records Administration ("NARA"), and other agencies, warning them of the likely unlawful destruction or removal of federal records protected by the FRA. *Id.* ¶ 230. Neither Musk nor anyone else from DOGE responded, but NARA's Chief Records Officer replied to assert only that "[t]he issues raised in your letter are now before the United States District Court for the District of Columbia Circuit, see *CREW v. U.S. DOGE Service*, 1:25-cv-00511. The National Archives and Records Administration (NARA) is a party to that litigation, and will work closely with the Department of Justice to respond appropriately through that process." *Id.* ¶¶ 231–32.

American Oversight has submitted more than 40 FOIA requests to DOGE since January 20, 2025, five of which are at issue in this case. *See id.* ¶ 242. These requests were submitted between February 24, 2025, and June 17, 2025, and seek records regarding, *inter alia*: DOGE's involvement

with the dismantling or attempted dismantling of multiple federal agencies, *id.* ¶¶ 247–50; USDS Administrator Amy Gleason's communications, *id.* ¶¶ 251–54; DOGE's directives to agencies regarding how to respond to requests for oversight, *id.* ¶¶ 255–56; DOGE's involvement with the firing of probationary employees at agencies across the executive branch, *id.* ¶¶ 257–58; and former USDS official Steve Davis's communications and Signal messages relaying instructions to agency DOGE teams, *id.* ¶¶ 259–60. In response to four of the FOIA requests at issue in this lawsuit, DOGE denied that it is an agency subject to FOIA and the FRA. *Id.* ¶ 249. DOGE has neither acknowledged nor responded to the fifth request. *Id.* ¶ 260.

American Oversight filed its original complaint in this matter on April 23, 2025, alleging violations of both FOIA and the FRA. *See generally* Compl., ECF No. 1. It filed an Amended Complaint on July 22, 2025, ECF No. 14, adding factual allegations and additional claims under the FRA. In lieu of filing a responsive pleading on their deadline to respond to the Amended Complaint, Defendants filed this motion to stay proceedings, ECF No. 15.

## LEGAL STANDARD

Although a federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), it "must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties," *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727, 732–33 (D.C. Cir. 2012) (citation modified) (reversing stay as exceeding district court's discretion and quoting *Landis*, 299 U.S. at 254–55). Although courts routinely stay proceedings pending interlocutory appeals in the *same* case, "it is well established that a stay pending the resolution of *unrelated* legal proceedings is an extraordinary remedy." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (denying stay) (emphasis added). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant

in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. In addition, a stay is "immoderate and hence unlawful" if it is "to continue by its terms for an immoderate stretch of time . . . ." *Id*. at 257.

Finally, "the party seeking a stay bears the burden of showing that the stay is needed and warranted," and if there is "even a fair possibility" that the nonmovant would be "adversely affect[ed]" by a stay, "the movant . . . must demonstrate a 'clear case of hardship or inequity in being required to go forward.'" *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38 (quoting *Landis*, 299 U.S. at 255); *see also Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) ("[I]f it determines that there is a fair possibility that the stay will work damage to Plaintiffs' interests, [the movant]'s burden becomes even heavier, for it must then show a clear case of hardship or inequity in being required to go forward." (citation modified)).

ARGUMENT

## I. COURTS STRONGLY DISFAVOR AND ROUTINELY DENY STAYS BASED ON PROCEEDINGS IN A SEPARATE, UNRELATED CASE, LIKE THE ONE DEFENDANTS SEEK HERE.

Defendants ignore nearly a century of Circuit and Supreme Court precedent restricting and rejecting stays based on proceedings between unrelated parties. As the Supreme Court explained nearly 90 years ago, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. "The default . . . is for the litigation to continue as usual, and 'the burden of making out the justice and wisdom of a departure from the beaten track lay[s] heavily on the' movants." *OCA - Asian Pac. Am. Advocs. v. Rubio*, No. CV 25-287 (TJK), 2025 WL 1393153, at *1 (D.D.C. May 14, 2025) (denying stay and quoting *Landis*, 299 U.S. at 256).

Defendants do not cite *a single case* from this Circuit where a matter was stayed over the objection of a litigant pending resolution of some other case involving an unrelated party.[1]

First, most of the cases from this District on which Defendants rely involve stays pending interlocutory appeals in the *same case*, between *the same parties. See* Defs.' Mot. at 7–8; *see also Ready to Win v. Fed. Election Comm'n*, No. CV 22-3282 (RDM), 2023 WL 10512144, at *2 (D.D.C. July 28, 2023) (granting stay pending interlocutory appeal of order on preliminary injunction); *Blumenthal v. Trump*, No. CV 17-1154 (EGS), 2019 WL 3948478, at *3 (D.D.C. Aug. 21, 2019) (granting stay pending interlocutory appeal of denial of motion to dismiss); *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 86 (D.D.C. 2017) (granting stay pending interlocutory appeal of motion to dismiss). But those cases are irrelevant. There, no litigant was deprived of its right to advance its own legal interests; rather, the question was merely whether certain aspects of the litigation should pause while others continue.

---

[1] Indeed, even the out-of-circuit cases cited by Defendants are of no help to them. Most involve stays pending appeals between the same litigants. *See, e.g.*, *Minnesota Voters All. v. Walz*, 494 F. Supp. 3d 610, 611 (D. Minn. 2020) (granting stay pending interlocutory appeal); *Carroll v. Wilson McColl & Rasmussen, Att'ys at L.*, No. CV 08-22-CWD, 2009 WL 315610, at *1 (D. Idaho Feb. 9, 2009) (granting stay pending appeal to Idaho Supreme Court in related litigation between same parties); *Beltronics USA, Inc. v. Midwest Inventory Distribution LLC*, 545 F. Supp. 2d 1188, 1189 (D. Kan. 2008) (granting stay pending interlocutory appeal); *Bray v. QFA Royalties, LLC*, No. 06-CV-02528-JLK, 2007 WL 2688858, at *1 (D. Colo. Sept. 12, 2007) (granting stay pending interlocutory appeal).

The only two cases Defendants cite involving stays based on different proceedings are inapposite here. In *Dawoudi v. Nationstar Mortg., LLC*, No. 16-CV-2356, 2016 WL 8711604, at *2 (N.D. Ill. Sept. 16, 2016), plaintiffs sought a stay because, unlike here, the "central issue being considered" in a pending consolidated appeal was identical to their claims; the court granted the stay because defendant/nonmovant showed no hardship and resolution by the circuit could be "entirely dispositive" and would save the parties' and court's resources. In *Fowler-Bey v. Johnson*, No. CV PX-18-1235, 2018 WL 11476084, at *2 (D. Md. Nov. 30, 2018), the court considered a *pro se* habeas petition, where a central question of statutory interpretation controlling whether the claim was time-barred was already pending in the Fourth Circuit in different proceedings; the court thus stayed proceedings *sua sponte* to allow resolution of the question by the circuit.

Second, the only cases Defendants cite involving a stay based on proceedings between different parties involved *consent* requests for a stay, where all parties agreed that a stay pending appellate resolution of a related case was in their interests and appellate resolution was imminent. *See Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (consent request for stay pending case set for argument in D.C. Circuit and decision anticipated within three months and which parties agreed would likely be dispositive of case); *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 87 (D.D.C. 2017) (consent request for stay *by the plaintiff* was appropriate because cases pending in D.C. Circuit would have "preclusive effect"). Again, that scenario is inapposite—where both parties agree to a stay pending resolution of a core legal issue, no party is deprived of its right to advance its interests. Similarly, the stays in the four other FOIA and FRA cases against DOGE were unopposed. *See* Minute Order, *Cntr. for Biological Diversity v. Office of Management and Budget*, No. 25-cv-165 (D.D.C. July 10, 2025) (ECF No. 26) (granting *consent* order for partial stay); Order, *MSW Media v. U.S. DOGE Service*, No. 25-cv-1933 (D.D.C. July 14, 2025) (ECF No. 41) (same); Response to Mot. to Stay, *Project on Gov't Oversight v. Trump*, No. 25-cv-527 (D.D.C. July 18, 2025) (ECF No. 26) (plaintiff agreeing to government's requested stay); Minute Order, *Project on Gov't Oversight v. U.S. DOGE Service*, No. 25-cv-1295 (D.D.C. July 18, 2025) (granting unopposed motion for stay). The plaintiffs in those cases, like the plaintiff in this case, have the right to litigate their cases as they choose. Their decisions to consent to a stay have no bearing on this Court's consideration of the present motion.

## II.   A STAY WILL SIGNIFICANTLY HARM AMERICAN OVERSIGHT, BUT DEFENDANTS WILL SUFFER NO HARDSHIP IF THE CASE PROCEEDS.

Defendants must show that American Oversight does not risk a "fair possibility" of harm from a stay, and that Defendants themselves *will* suffer hardship absent a stay. *See Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38. They cannot make a showing on either ground, and thus on each

ground independently, their motion should be denied. *See* Defs.' Mot. at 6–10 (addressing only judicial economy and not hardship to the parties). Defendants' entire argument boils down to one assertion: that "judges in this District have routinely stayed proceedings to promote judicial economy and efficiency where the D.C. Circuit's ruling in the same or a related matter will bear on further proceedings before the District Court." Defs.' Mot. at 7. But in so arguing, Defendants misapprehend the standard that governs this motion and fail to demonstrate that without a stay, they will suffer hardship or inequity. *See Landis*, 299 U.S. at 255; *Clinton*, 520 U.S. at 706. They have thus failed to carry their burden and their motion should be denied.

In deciding whether the movant has met its heavy burden in moving for a stay, the Court must balance three factors: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the [C]ourt's resources." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20. Defendants' motion fails as to all three.

### A.    American Oversight Will Suffer Significant Harm.

In deciding whether to grant a stay, courts first consider "'the injury to the party being stayed.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Belize Soc. Dev. Ltd.*, 668 F.3d at 732). If, as here, there is even a "fair possibility" that the nonmovant would be harmed, the movant must then show "'a clear case of hardship or inequity in being required to go forward.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Landis*, 299 U.S. at 255). Importantly, the party opposing a stay motion need not show that it will "*necessarily* suffer" harm, because the "burden of demonstrating a hardship that warrants staying properly filed legal proceedings *is on the movant . . . .*" *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 140 (D.D.C. 2017) (emphasis in original).

8

A stay would harm American Oversight in several ways. The government seeks what amounts to an indefinite stay, because the *merits* question of DOGE's agency status (as opposed to the propriety of CREW's discovery requests) is not pending in any court in *CREW* and could take years to resolve in that litigation. Such a stay harms American Oversight by (1) denying American Oversight the right to litigate its case as it sees fit; (2) seeking an improperly indefinite stay; (3) delaying the ultimate resolution of *this* case and American Oversight's receipt of records responsive to its FOIA requests at issue; and (4) allowing Defendants' ongoing destruction of federal records due to inadequate recordkeeping policies and practices, in violation of the FRA. As alleged in the Amended Complaint, those records go to the heart of one of the biggest agency-created crises in American government to date. *See generally* Am. Compl. Any further delay— much less the indefinite one proposed by Defendants—harms American Oversight and the public it serves by depriving them of access to the requested records and risking continued destruction and removal of federal records that may shed light on the government's role in creating that crisis.

1. *A Stay Improperly Denies American Oversight the Right to Litigate Its Case*

American Oversight has a right to litigate its own case, in its own way, to determine its rights, and courts have long recognized that depriving a party of this right by staying proceedings must be the "rare" exception. *Landis*, 299 U.S. at 255; *Belize Soc. Dev. Ltd.*, 668 F.3d at 732. Here, that means American Oversight should have the right to determine (based on whatever responsive pleading the defendants file) whether to serve its own discovery requests, which would differ from CREW's, to litigate the merits question of whether DOGE exercises substantial authority independent of the President in its own way, using its own evidence, and make case strategy decisions so that American Oversight can "settle[] the rule of law that will define" its rights. *See Landis*, 299 U.S. at 255. Only where the movant has carried its heavy burden to demonstrate a

"clear case of hardship or inequity in being required to go forward" is a stay proper, and Defendants here have failed to do so. *See id.*

   2.   *Defendants Improperly Seek an Indefinite Stay That Harms American Oversight*

A summary of the proceedings in *CREW* reveals the unreasonableness of the grounds asserted by Defendants' motion and the indefinite nature of the stay they seek. In the district court, following DOGE's motion for summary judgment on the sole grounds that DOGE is not an agency subject to FOIA and the FRA, CREW filed a motion pursuant to Federal Rule of Civil Procedure 56(d) for expedited discovery to ascertain facts necessary to determine whether DOGE wields substantial authority independent of the President. Mot. to Expedite Disc., *CREW v. U.S. DOGE Serv.*, No. 25-cv-511 (D.D.C. March 27, 2025) (ECF No. 27). The district court granted that motion, Min. Order (D.D.C. Apr. 2, 2025), and Defendants sought a writ of mandamus from the Court of Appeals to halt the district court's order, 349 F.R.D. 1, 4 (D.D.C. 2025); *In re U.S. DOGE Serv.*, No. 25-5130, 2025 WL 1393222, at *1 (D.C. Cir. May 14, 2025). The Court of Appeals denied the petition for mandamus, *In re U.S. DOGE Serv.*, 2025 WL 1393222, at *1, and the government filed an emergency application to stay the orders of the circuit and district courts with the U.S. Supreme Court.

The government's application to the Supreme Court argued, in essence, that (1) DOGE's agency status is a question of law that depends solely on the text of the executive orders establishing it and delineating its purported responsibilities; (2) the separation of powers doctrine precludes any discovery against any entity within the Executive Office of the President ("EOP"); and (3) in the alternative, allowing discovery into DOGE's "recommendations" was overbroad and intrusive and that any discovery must be more narrowly tailored. Although the Supreme Court did grant a stay, it effectively rejected the government's first two arguments: the only substantive limitation the Court placed on discovery was to instruct the D.C. Circuit to narrow CREW's requests

regarding DOGE's "recommendations and whether those recommendations were followed" because "inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." *U.S Doge Serv. v. Crew*, slip op. at 1, no. 24A1222 (U.S. June 6, 2025), *available at* https://www.supremecourt.gov/orders/courtorders/060625zr_5426.pdf. The Court thus remanded to the Court of Appeals to "take appropriate action to narrow the April 15 discovery order consistent with this order," and ordered that "[t]he April 15, 2025, and May 20, 2025, orders of the United States District Court for the District of Columbia, case No. 25-cv-511, are stayed pending remanded consideration at the Court of Appeals, and disposition of the petition for a writ of certiorari, if such writ is timely sought."[2] *Id.*, slip op. at 2.

On July 14, 2025, on CREW's motion for summary disposition, the Court of Appeals narrowed the scope of discovery in accord with the guidance from the Supreme Court. The district court subsequently issued a discovery order modifying the discovery as ordered by the Court of Appeals, but stayed its schedule "pending disposition of any petition for a writ of certiorari, if such writ is timely sought." *CREW*, ECF No. 49. On July 25, the district court then denied DOGE's motion for summary judgment, which relied solely on the argument that DOGE is not an agency subject to FOIA and the FRA, "as premature, given the potential for discovery following the

---

[2] Defendants wrongly suggest that the Supreme Court's holding was premised on the principle that "an Executive Branch entity's status under FOIA turns on its *formal* legal authority . . . ." Defs.' Mot. at 4. The Supreme Court made no such finding. Nothing in the Court's order did anything to overturn or undermine decades of D.C. Circuit precedent which instructs that a determination of an EOP entity's agency status is a mixed question of law and fact requiring a functional examination into not only the entity's formal delegated authority, but also the authority it has *actually* wielded. *See, e.g.*, *Meyer v. Bush*, 981 F.2d 1288, 1294 (D.C. Cir. 1993) (looking beyond the executive order establishing the entity to also analyze its real-world actions, determining there was "no indication that [the agency in question] directed anyone . . . to do anything.").

disposition of any petition for a writ of certiorari that may be filed in this case." Minute Order, *CREW* (D.D.C. July 25, 2025).

The D.C. Circuit's July 14 order regarding the scope of CREW's discovery is the operative order that may be the subject of a petition for writ of certiorari. Accordingly, the Supreme Court's administrative stay remains in place in *CREW* until at least October 13, the expiration of the government's 90-day window to file a petition, or whenever any such petition is dismissed or decided. In sum, (1) the Supreme Court declined to hold that discovery was inappropriate or unavailable to examine whether DOGE is an agency, (2) the Supreme Court, faced with the full breadth of discovery propounded by CREW, required that discovery to be narrowed in one respect, and (3) the operative D.C. Circuit order in *CREW* that determines the timeline of the stay in that case is one that limits discovery precisely as instructed by the Supreme Court.

In seeking to tie the stay to adjudication of DOGE's agency status, Defendants are asking this Court to stand aside and wait for the resolution of a question that is not even *pending* in *CREW*, excusing Defendants here—without any showing of hardship or inequity— from filing a response to the Amended Complaint in this case for an indefinite period of time. Consideration of DOGE's agency status in *CREW* will almost certainly not happen for months or years even at the district court level. Even if the government declines to petition for a writ of certiorari on the D.C. Circuit's July 14 order, discovery in *CREW* cannot resume until after October 13. And after that date, discovery will likely take months, with the strong possibility of motions practice and potential additional interlocutory appeals before any merits briefing can occur, much less any hypothetical appeals from any final determination by the district court. Such an unjustified, indefinite stay thus would cause significant harm to American Oversight and should be denied.

3.  *American Oversight Will Also Be Harmed by the Delay in Adjudication of its FOIA Requests*

FOIA exists "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989) ("FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny . . . ." (italics omitted)). Furthermore, it is axiomatic in the FOIA context that "stale information is of little value," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), and courts have thus sometimes "concluded that a delay in processing of a FOIA request would cause irreparable harm" where it involves "ongoing proceedings of national importance," *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020) (citing *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019)).

American Oversight's FOIA requests seek records vital to ongoing national discussions and debates on issues of high public, media, and congressional interest regarding DOGE's involvement in the dismantling of federal agencies, its instructions to agencies on how to respond to oversight attempts, and more.  The government's bald claim that "a stay is unlikely to delay a final decision regarding" American Oversight's FOIA requests, Defs.' Mot. at 10, is baseless. There is far too much uncertainty regarding the course each of these separate lawsuits might take to know whether that is true or which suit may first reach the merits question of DOGE's agency status. A stay here thus likely *could* delay a final ruling on the merits of American Oversight's FOIA claims and thus delay American Oversight's receipt of any records responsive to those requests. This delay further harms American Oversight and thwart's FOIA's purpose and premise.

4.    *American Oversight Will be Harmed by Ongoing Destruction of Records as a Result of Defendants' Deficient Recordkeeping Policies and Practices*

Lastly, Defendants have not met their burden to show "no fair possibility" that American Oversight will be harmed by the deficiencies of Defendants' recordkeeping policies and practices, which risk the ongoing destruction of important federal records and records responsive to American Oversight's FOIA requests. *See Ctr. for Biological Diversity*, 419 F. Supp. at 20 (recognizing "fair possibility" of harm to plaintiffs whose organizational interests included protection of endangered species put at risk by potential ongoing violations of federal law by agency).

Under the "no fair possibility" standard, the party seeking a stay bears the burden of demonstrating that "that there is no fair possibility that the stay will work damage to [the non-movant's] interests." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (citation modified). In *Center for Biological Diversity*, plaintiffs alleged that a Biological Opinion issued by the National Marine Fisheries Service (NMFS) represented an ongoing violation of the Endangered Species Act ("ESA") because it would permit lobster fishery that would jeopardize the endangered North Atlantic right whale. *See id.* at 19. NMFS sought a stay on the grounds that in nine months, it intended to issue a new Biological Opinion and Take Reduction Plan that would moot plaintiffs' claims. *Id.* The court agreed with the plaintiffs that "NMFS's alleged ongoing violations of the ESA and Marine Mammal Protection Act would continue unabated during the pendency of a stay, further endangering North Atlantic right whales and thus harming Plaintiffs' interests in conserving the ever-diminishing right whale population." *Id.* at 20 (internal quotation omitted). Thus, the court concluded that NMFS had "failed to convince the Court that there is no fair possibility that the stay will work damage to Plaintiffs' interests." *Id.* (citation modified).

As in *Center for Biological Diversity*, American Oversight has alleged ongoing violations of important federal law—namely, the Federal Records Act. Specifically, the Amended Complaint alleges that DOGE's use of ephemeral messaging systems such as Signal and document platforms such as Google Docs, absent adequate policies to ensure preservation of all federal records, threatens the ongoing loss of those records. Am. Compl. ¶¶ 180–221, ECF No. 14. Indeed, every day this litigation continues, more records may be destroyed. Where the documents at risk of loss include those that may be subject to pending FOIA requests by American Oversight, *id.* ¶¶ 247–60, and where Plaintiff is an organization "committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials" through research and FOIA requests, *id.* ¶ 9, American Oversight (and the American public) will be harmed by the destruction of these records, *see Citizens for Resp. & Ethics in Washington v. Off. of Admin.*, 565 F. Supp. 2d 23, 30 (D.D.C. 2008) (finding a "clear" case of irreparable harm if plaintiff "could not ultimately access the documents responsive to its FOIA request because they had not been preserved" because it "would have absolutely no recourse in the event that records potentially responsive to its FOIA requests were destroyed").

Defendants claim that their purported compliance with the *Presidential* Records Act means that American Oversight cannot "show any other prejudice." Defs.' Mot. at 10. But even if DOGE is fully complying with the Presidential Records Act ("PRA"), that does *not* ensure compliance with the FRA. Federal law distinguishes "agency records," "federal records," and "presidential records." "Agency records" under FOIA is the broadest category. Under FOIA, any document is an agency record subject to FOIA if it was "created or obtained" by the agency and the agency is "in control of the requested materials at the time the FOIA request is made." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144–45 (1989). The definition of "records" under the FRA is somewhat

narrower, but still robust. *See* 44 U.S.C. § 3301(a)(1)(A) (defining "records" as those "made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them"). And the definition of "presidential records" under the PRA is narrower still: only those documents "created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2). For example, all of Steve Davis's Signal messages relating to government business would qualify as agency records under FOIA and as federal records under the FRA, but they may not be "presidential records" under the PRA to the extent they do not relate to carrying out the President's "constitutional, statutory, or other official or ceremonial duties."

Furthermore, the PRA's records preservation requirements are much looser and less enforceable than those that apply to DOGE as an agency. In comparing the FRA with the PRA, the D.C. Circuit emphasized that "[w]hereas federal records are subject to a strict document management regime supervised by the Archivist, . . . the PRA 'accords the President virtually complete control over his records during his term of office.'" *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1290–91 (D.C. Cir. 1993) (internal quotation and citation omitted). That is, a sitting President has unreviewable authority to order the destruction of presidential records. "Neither the Archivist nor an agency head can initiate any action through the Attorney General to effect recovery or ensure preservation of presidential records." *Id.* at 1291.

Moreover, although the Archivist may "request congressional advice regarding the President's intention to dispose of presidential records. . . . neither the Archivist nor the Congress has the authority to veto the President's disposal decision." *Id.* (internal quotation omitted).

As explained in the Amended Complaint, DOGE's Records Retention policy fails to ensure the adequate preservation of records in at least three key ways. Am. Comp. ¶¶ 222–29, ECF No. 14. *First*, it advises, but does not require, that DOGE employees disable auto-delete features on messaging platforms like Signal. *Id.* ¶ 226. *Second*, it does not require employees to use work devices for all work-related activities. *Id.* ¶ 227. *Third*, it fails to require the preservation of "notes, drafts, or similar documents that are not circulated or that are not created or saved for purposes of documenting the activities or deliberations of the Administration." *Id.* ¶ 228. But even if its policy did not bear these flaws, DOGE's insistence that it is only subject to the PRA means that, *even while this litigation is pending*, the President might order the destruction of these records.

The government does not address these risks, instead quoting a ruling in an unrelated matter by an unrelated plaintiff that did not oppose a stay in its proceeding. Defs.' Mot. at 10 (quoting June 17, 2025 Mem. Op. in *POGO v. Trump*, Civ. A. No. 25-0527 that "Defendants have given the Court ample reasons to believe that they are complying with the PRA"). However, whatever risk of harm the plaintiff in *that* case may or may not be subject to, that decision does not address (through some form of non-mutual issue preclusion, or otherwise) the harm that *American Oversight* would face.

In sum, there is far more than a "fair possibility"—and, at minimum, the government has failed to meet its burden of demonstrating that there is *no* fair possibility—that American Oversight will be harmed by a stay because DOGE will be permitted to maintain its FRA-noncompliant policies and practices that threaten the continued destruction of federal records.

17

**B.    Defendant's Failure to Demonstrate Hardship or Inequity in Being Required to Go Forward Is Fatal to Their Request for a Stay.**

Because there is "a fair possibility that the stay will injure" American Oversight in at least four different ways, Defendants must "demonstrate clearly a justification for the potential harm to the Plaintiff[] (presumably rooted in Defendants' own hardship) . . . ." *See Nat'l Indus. for Blind*, 296 F. Supp. 3d at 141. Incredibly, Defendants' only attempt to demonstrate harm and carry their burden is a single sentence stating that "requiring Defendants to continue to defend this action in District Court without waiting for appellate resolution of the issues raised here would be a wasteful and inefficient exercise for both Defendants and the Court . . . ." Mot. at 10. But it is well settled that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (citation modified); *see also OCA - Asian Pac. Am. Advocs.*, 2025 WL 1393153, at *2 (same); *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *6 (D.D.C. June 1, 2021) (agency's "expenditure of resources in proceeding with the litigation" was "wholly insufficient to warrant a stay"); *United States v. Honeywell Int'l*, 20 F. Supp. 3d 129, 133 (D.D.C. 2013) ("[T]he time it will take for its witnesses to sit for depositions" was insufficient demonstration of hardship.). "This is 'particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court].'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)) (alteration in original).

Additionally, as discussed *supra*, the stay sought by the government is likely to last months, if not years, because an ultimate merits determination on DOGE's agency status in the *CREW* case could require years of litigation and likely multiple rounds of appeals. Thus, it is "sufficiently indefinite to require a finding of a pressing need under [the Supreme Court's decision in] *Landis*."

*Belize Soc. Dev. Ltd.*, 668 F.3d at 732. Having made no showing of cognizable harm, much less a "pressing need," Defendants' motion must fail.

<h3 style="text-align:center">C.    A Stay Will Not Promote Judicial Economy Because the Issues at Stake in CREW's Case Differ Significantly From Those Presented Here.</h3>

Defendants' motion rests on the false premise that the legal questions at issue in *CREW* will be outcome-determinative or significantly narrow the issues in the instant case and confuses what is at stake in CREW's case with what is before the Court here. *See* Defs.' Mot. at 9 ("[A] stay pending further proceedings in *CREW* may narrow the issues before the Court in this case and the scope of any discovery."). Again, the only pending issue in CREW's case is whether CREW's discovery requests, as narrowed and approved by the D.C. Circuit on July 14 and ordered by the district court on July 15, are properly scoped. They appear to be, based on the Supreme Court's June 6, 2025 order, but that order stalls discovery from going forward *only in CREW's case* until disposition of a hypothetical petition for certiorari.

Here, Defendants have not even filed a responsive pleading. American Oversight has not filed any motion to take discovery, let alone served actual discovery requests.[3] This renders nonsensical even Defendants' fallback position, that a stay should issue at least until resolution of the discovery questions in *CREW*. Defendants' assertion that a stay serves judicial economy because it "may narrow the issues before the Court in this case and the scope of any discovery," *see* Defs.' Mot. at 9, ignores the basic fact that until this case reaches the stage where discovery can be and has been sought, it is impossible to know whether the same issues would even arise here. Defendants thus fall far short of showing the requisite certainty that proceedings on which the stay is premised will reach the same questions of law. Where there is uncertainty about whether

---

[3] American Oversight reserves the right to seek discovery, but whether or how it exercises that right would depend, at minimum, on reviewing the government's responsive pleadings to the Amended Complaint.

the proceedings upon which the stay is premised will reach the same questions of law, there is no benefit to judicial economy. *See, e.g.*, *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (it is not "unseemly or lacking in respect for a court of coordinate jurisdiction" to take up a question pending in another court where it is uncertain that the other court will reach the issue); *Nat'l Indus. For Blind*, 296 F. Supp. 3d at 142–43 (rejecting request for stay where there was "considerable uncertainty" regarding whether Federal Circuit would "reach the legal issue that is common to these cases"); *United States v. Honeywell*, 20 F. Supp. 3d 129, 132 (D.D.C. 2013) (rejecting stay of discovery where government failed to "specify what questions of fact or law that the dispositive motions raise, or provide any analysis of how resolution of each question one way or the other would simplify discovery or narrow issues in this case, or state how Honeywell would be bound by resolution of an issue in a case to which it is not a party").

As discussed *supra*, the merits question of DOGE's agency status is not yet even pending in *CREW* at the district court level, much less in the D.C. Circuit or Supreme Court, and is not likely to be pending for many months or years. Of course, it would always be helpful to have meaningful guidance from the Supreme Court on important questions, but to stay a case based on a question that might be pending on an indeterminate timeline in unrelated proceedings is simply not how our court system is set up, nor what stays are meant to enable. *See OCA - Asian Pac. Am. Advocs.*, 2025 WL 1393153, at *2 ("the risk of inconsistent opinions between courts when one does not bind the other is no reason to force Plaintiff to 'stand aside'") (quoting *Landis*, 299 U.S. at 255)); *cf. also Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) ("[S]tating a possibility of inconsistencies in rulings on the same issue, without any explanation on how her claim will suffer any harm, does not establish, in itself, a clear case of hardship." (quotations

omitted)); *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 141 (possibility of "inconsistent judgments" is not hardship).

## CONCLUSION

For the foregoing reasons, American Oversight respectfully requests that the Court deny Defendants' motion to stay these proceedings and order Defendants to respond to the Amended Complaint within 14 days.

Dated: August 19, 2025

Respectfully submitted,

*/s/ David Kronig*
David Kronig
D.C. Bar No. 1030649
Elizabeth Haddix
D.C. Bar No. 90019750
Joanna Swomley*
N.Y. Bar No. 1989763
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3915
david.kronig@americanoversight.org

*Counsel for Plaintiff*

*Admitted *pro hac vice*